# Exhibit B

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

UNITED STATES OF AMERICA,      )
           )
          Plaintiff,        )
           )
v.                           )      Case No. 2:22-CV-04022-BCW
           )
STATE OF MISSOURI, et al.,       )
           )
          Defendants.     )

## OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. #8), Defendants'

Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) (Doc. #13), and Defendants' Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6) (Doc. #15). The Court, being duly advised of the premises, denies

Defendants' motions to dismiss (Docs. #13 & #15) and grants Plaintiff's motion for summary

judgment (Doc. #8).

## BACKGROUND

On February 16, 2022, Plaintiff the United States of America filed a complaint in this Court

against Defendants the State of Missouri, Michael L. Parson in his official capacity as the Governor

of the State of Missouri, and Andrew Bailey[1] in his official capacity as the Attorney General of

the State of Missouri (collectively, "Defendants"). The United States challenges the

constitutionality of Missouri General Assembly House Bill No. 85, signed into law on June 12,

2021, and codified in Mo. Rev. Stat. §§ 1.410 – 1.485 ("SAPA").

---

[1] Andrew Bailey in his official capacity as Missouri Attorney General is substituted for former Missouri Attorney General Eric Schmitt. Fed. R. Civ. P. 25(d).

1

The United States seeks declaratory and injunctive relief against Defendants' implementation and enforcement of SAPA through three claims for relief: (I) Supremacy Clause; (II) preemption; and (III) violation of intergovernmental immunity. (Doc. #1).

The United States seeks a declaratory judgment that SAPA is invalid, null, void, and of no effect, and further seeks a declaration "that state and local officials may lawfully participate in joint federal task forces, assist in the investigation and enforcement of federal firearm crimes, and fully share information with the Federal Government without fear of [SAPA's] penalties." (Doc. #1 at 26-27). Further, the United States seeks injunctive relief against SAPA's implementation and enforcement by Defendants, as well as costs in pursuing this action and any other just and proper relief. (Doc. #1 at 27).

On February 28, 2022, the United States filed the instant motion for summary judgment that there is no genuine issue of material fact and it is entitled to declaratory and injunctive relief as a matter of law. (Doc. #8). In the course of the summary judgment briefing, Defendants filed two motions to dismiss, one under Fed. R. Civ. P. 12(b)(1), and one under Fed. R. Civ. P. 12(b)(6). (Docs. #13 & #16). These three motions are fully briefed and ripe for consideration, alongside the amici curiae briefs filed in this matter. (Docs. #7, #15-1, #21-1, #30, #38, #42, #44, #46, #53, #55, #58, #60, #61, #63-#76, #78-#83).

## A. Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) (Doc. #13) is denied.

The Court first considers Defendants' motion to dismiss for lack of subject matter jurisdiction. Kronholm v. Fed. Deposit Ins. Corp., 915 F.2d 1171, 1174 (8th Cir. 1990) (citing Barclay Square Props. v. Midwest Fed. Sav. & Loan, 893 F.2d 968, 969 (8th Cir. 1990)) ("Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case.").

2

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 2 of 24
Appellate Case: 23-1457   Page: 3   Date Filed: 03/13/2023 Entry ID: 5254573

Defendants argue the United States' complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for two reasons: (1) lack of standing; and (2) lack of cause of action.

Because Defendants challenge subject matter jurisdiction on the face of the complaint, "all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)).

### 1. The United States has standing.

Defendants argue that because the United States does not demonstrate any of the three requirements for standing, the complaint should be dismissed for lack of subject matter jurisdiction. (Doc. #13).

 "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). "To establish standing, a plaintiff must show that he has suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and will likely be redressed by a favorable decision." Digit. Recognition Network, Inc. v. Hutchinson, 803 F.3d 952, 956 (8th Cir. 2015) (citing Lujan, 504 U.S. at 560-61) (internal citations and quotations omitted) (standing requires (1) "an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct" of which plaintiff complains that is "fairly traceable" to the defendant; and (3) a likelihood, "as opposed to merely speculat[ion]" that the injury will be redressed by a favorable decision)).

First, Defendants rely on Muskrat v. United States, 219 U.S. 346 (1911) to argue that there is no case or controversy, nor any harm or threat of harm to the United States that is attributable

3

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 3 of 24
Appellate Case: 23-1457   Page: 4   Date Filed: 03/13/2023 Entry ID: 5254573

to SAPA. (Doc. #13 at 109). Second, Defendants argue the United States cannot show causation because Defendants do not enforce SAPA; rather, the statutory scheme is enforced through private civil action. Third, Defendants argue the United States cannot show redressability because declaratory and/or injunctive relief against Defendants would not redress the United States' alleged harm.

### a. The United States demonstrates injury in fact.

Defendants argue the United States has no injury in fact for two reasons: (1) the United States alleges no case or controversy under Muskrat; and (2) only state actors, and not the United States, are subject to regulation under SAPA.

Muskrat involved a congressional act relating to plaintiffs' rights to Cherokee lands and funds. 219 U.S. at 349-350. The legislation conferred jurisdiction "upon the court of claims with the right of appeal, by either party, to the Supreme Court of the United States, to hear, determine, and adjudicate each of said suits." Id. at 350. When subsequent legislation potentially increased the number of individuals with rights to the lands and funds at issue, plaintiffs sued. Id. at 348-49.

The Supreme Court of the United States dismissed the Muskrat plaintiffs' claims for lack of jurisdiction because, while the legislation authorized plaintiffs' suit, plaintiffs had incurred no injury; therefore, plaintiffs' suit sought only "to settle the doubtful character of the legislation in question . . . ." Id. at 361. Because the Muskrat plaintiffs did not present a "justiciable controversy within the authority of the court, acting within the limitations of the Constitution under which it was created," the Supreme Court reversed and remanded with instructions to dismiss for lack of jurisdiction. Id. at 363.

Here, in contrast with Muskrat, the United States demonstrates an injury in fact attributable to Defendants' implementation and enforcement of SAPA. The United States has standing to

4

challenge state laws that interfere with the federal government's operations and objectives. United States v. Arizona, 703 F. Supp. 2d 980, 1007 (D. Ariz. 2010) (citing Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 379-80 & n. 14 (2000); Am. Ins. Ass'n v. Garamendi, 539 U.S. 396, 413 (2003)), aff'd, 641 F.3d 339 (9th Cir. 2011), aff'd in part, 567 U.S. 387 (2012) (federal enforcement undermined by state's enforcement of interfering state legislation)); United States v. Sup. Ct. of N. Mexico, 839 F.3d 888, 899 (10th Cir. 2016) (United States had standing to challenge state rule that "impair[ed] the United States's interest in the effective conduct of federal criminal investigations and prosecutions"). The United States' law enforcement operations have been affected through withdrawals from and/or limitations on cooperation in joint federal-state task forces, restrictions on sharing information, confusion about the validity of federal law in light of SAPA, and discrimination against federal employees and those deputized for federal law enforcement who lawfully enforce federal law.

Based on the complaint and attendant declarations, the United States has a concrete injury, attributable to Defendants' implementation and enforcement of SAPA, that is particularized and actual. Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (citing Lujan, 504 U.S. at 560). The United States demonstrates injury in fact relative to SAPA's interference with the function of federal firearms regulations and public safety objectives. The injury in fact requirement is satisfied.

### b. The United States demonstrates causation.

Defendants argue the United States cannot show causation because SAPA is enforced not by Defendants, but through private civil action. For causation to exist for purposes of standing, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Agred Found. v. U.S. Army Corps of Eng'r, 3 F.4th 1069, 1073 (8th Cir. 2021) (citing Lujan, 504 U.S. at 560).

5

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 5 of 24
Appellate Case: 23-1457   Page: 6   Date Filed: 03/13/2023 Entry ID: 5254573

SAPA requires state and local law enforcement officials to cease enforcement of federal firearms regulations deemed infringements under § 1.420 and imposes a duty on state courts and state law enforcement agencies to protect citizens against the infringements identified. Mo. Rev. Stat. § 1.440. State law enforcement entities have withdrawn personnel from joint task forces and restricted what information can be shared with federal law enforcement agencies. (Docs. ##8-2, 8-3, 8-4). In addition, "any person" can file suit against a law enforcement entity knowingly enforcing § 1.420's "infringements," which includes Missouri's Attorney General on the State's behalf. Mo. Rev. Stat. § 27.060; § 1.020(12). Missouri law otherwise authorizes the Defendants' enforcement of SAPA by other means. Mo. Rev. Stat. § 106.220 (state official may be removed for knowing or willful failure to perform any official act or duty). For these reasons, the United States' injury in fact is fairly traceable to Defendants. The causation requirement for the United States' standing is satisfied.

### c. The United States demonstrates redressability.

Defendants argue the United States does not show the "capable of redress" requirement of standing because SAPA is enforced by private individuals.

Redressability means "a favorable decision will likely redress" the injury alleged. United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 834 (8th Cir. 2009). "[A] party satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." 281 Care Comm. v. Arneson, 638 F.3d 621, 631 (8th Cir. 2011) (citing Minn. Citizens Concerned for Life v. FEC, 113 F.3d 129, 131 (8th Cir. 1997)).

State and local law enforcement personnel are withdrawing from federal joint task forces and refusing to share investigative information based on SAPA. (Docs. ##8-2, 8-3, 8-4). Moreover,

6

SAPA purports to regulate and/or discriminate against state and local law enforcement officials who are deputized to lawfully enforce federal law. Additionally, and as referenced in the previous section, Defendants may enforce SAPA. "When a statute is challenged as unconstitutional, the proper defendants are the officials whose role it is to administer and enforce the statute." 281 Care, 638 F.3d at 631 (citing Mangual v. Rotger-Sabat, 317 F.3d 45, 58 (1st Cir. 2003)). The United States satisfies the redressability requirement, notwithstanding the SAPA's private cause of action provisions.

For these reasons, the United States has standing for its claims for declaratory and injunctive relief against Defendants. The motion to dismiss for lack of jurisdiction (Doc. # 13) based on standing is denied. The Court considers Defendants' second argument - that the United States lacks a cause of action - in the context of the United States' motion for summary judgment and Defendants' motion to dismiss for failure to state a claim below.

### B. The United States' motion for summary judgment (Doc. #8) is granted and Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. #16) is denied.

The United States argues there is no genuine issue of material fact and it is entitled to judgment as a matter of law that SAPA is unconstitutional. (Doc. #8). Defendants argue the United States' complaint should be dismissed because SAPA regulates only state actors and not the federal government, and under Printz v. United States, 521 U.S. 898 (1997), Defendants cannot be compelled to enforce a federal regulatory scheme.

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Because the United States' motion for summary judgment applies a more stringent standard than that applicable to Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), and

7

because there exist no genuine issues of material fact on this record, disposition of the United States' motion for summary judgment (Doc. #8) is dispositive of Defendants' motion to dismiss for failure to state a claim and the remainder of Defendants' motion to dismiss for lack of subject matter jurisdiction.

## UNCONTROVERTED MATERIAL FACTS

In 1934, Congress enacted the National Firearms Act, 26 U.S.C. §§ 5811-22, 5841 ("NFA"). In 1968, Congress enacted the Gun Control Act, 18 U.S.C. §§ 921 – 924 ("GCA"). These regulatory schemes deal with the sale, manufacture, and possession of firearms and ammunition.

The NFA provides for registration and taxation requirements on the manufacture and transfer of certain firearms, including machineguns, certain types of rifles, shotguns, silencers, and "destructive devices," like grenades. The NFA does not regulate most handguns, nor does it prohibit ownership of regulated firearms.

The GCA defines "firearm," to include "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." (Doc. #40 at 9) (citing 18 U.S.C. § 921(a)(3)). The GCA also bans the transfer or possession of machineguns not already lawfully possessed prior to 1986, and the manufacture or sale or transfer of any firearm that is not detectable by "walk-through metal detector," or x-ray inspection commonly used at airports.

The GCA imposes licensing requirements on anyone "engaged in the business of importing, manufacturing, or dealing firearms, or importing or manufacturing ammunition," and requires those involved in these activities, i.e. "Federal Firearms Licensees", to receive a license from the Attorney General and pay certain fees. Id. (citing 18 U.S.C. § 923(a)). Federal Firearms

8

Licensees ("FFL") must maintain "records of importation, production, shipment, receipt, sale, or other disposition of firearms," and may not transfer a firearm to an unlicensed person unless they complete a Firearms Transaction Record. These records must be available at the FFL's business premises for compliance inspections conducted by the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). FFLs are also required to verify, in the context of an over-the-counter sale of a firearm, the purchaser's identity and conduct a background check using the National Instant Criminal Background Check System ("NICS") administered by the Federal Bureau of Investigation ("FBI"). In addition, FFLs are required to ensure every firearm manufactured or imported is identified by a serial number and mark indicating the firearm's model, as well as the Licensee's name and location. FFLs also must report the theft or loss of any firearm to ATF and local law enforcement and must respond to requests made by the Attorney General made in the course of a criminal investigation relating to the disposition of a firearm.

The GCA also prohibits the possession of firearms by certain categories of individuals, including those who have been convicted of a felony, those who have been convicted of a misdemeanor crime of domestic violence, those who have been dishonorably discharged from the military, noncitizens not lawfully in the United States, unlawful users of controlled substances, and others. (Doc. #40 at 11) (citing 18 U.S.C. § 922(g)).

On June 12, 2021, Governor Parson signed SAPA – the "Second Amendment Preservation Act," – into law. SAPA states as follows.

**1.410. Citation of law – findings**
[ . . . .]
2. The general assembly finds and declares that:
    [ . . . .]
    (5) [ . . . .] Although the several states have granted supremacy to laws and treaties made under the powers granted in the Constitution of the United States, such supremacy does not extend to various federal statutes, executive orders, administrative orders, court orders, rules, regulations, or

9

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 9 of 24
Appellate Case: 23-1457   Page: 10   Date Filed: 03/13/2023 Entry ID: 5254573

other actions that collect data or restrict or prohibit the manufacture, ownership, or use of firearms, firearm accessories, or ammunition exclusively within the borders of Missouri; **such statutes, executive orders, administrative orders, court orders, rules, regulations, and other actions exceed the powers granted to the federal government except to the extent they are necessary and proper for governing and regulating the United States Armed Forces or for organizing, arming, and disciplining militia forces actively employed in the service of the United States Armed Forces . . . .**

### 1.420. Federal laws deemed infringements of United States and Missouri Constitutions

The following federal acts, laws, executive orders, administrative orders, rules, and regulations shall be considered infringements on the people's right to keep and bear arms, as guaranteed by Amendment II of the Constitution of the United States and Article I, Section 23 of the Constitution of Missouri, within the borders of this state including, but not limited to:

**(1)** Any tax, levy, fee, or stamp imposed on firearms, firearm accessories, or ammunition not common to all other goods and services and that might reasonably be expected to create a chilling effect on the purchase or ownership of those items by law-abiding citizens;

**(2)** Any registration or tracking of firearms, firearm accessories, or ammunition;

**(3)** Any registration or tracking of the ownership of firearms, firearm accessories, or ammunition;

**(4)** Any act forbidding the possession, ownership, use, or transfer of a firearm, firearm accessory, or ammunition by law-abiding citizens; and

**(5)** Any act ordering the confiscation of firearms, firearm accessories, or ammunition from law-abiding citizens.

### 1.430. Invalidity of federal laws deemed an infringement

All federal acts, laws, executive orders, administrative orders, rules, and regulations, regardless of whether they were enacted before or after the provisions of sections 1.410 to 1.485, that infringe on the people's right to keep and bear arms as guaranteed by the Second Amendment to the Constitution of the United States and Article I, Section 23 of the Constitution of Missouri shall be invalid to this state, shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state.

### 1.440. Protection of citizens against infringement against right to keep and bear arms

It shall be the duty of the courts and law enforcement agencies of this state to protect the rights of law-abiding citizens to keep and bear arms within the borders of this state and to protect these rights from the infringements defined under section 1.420.

10

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 10 of 24
Appellate Case: 23-1457   Page: 11   Date Filed: 03/13/2023 Entry ID: 5254573

**1.450 Enforcement of federal laws that infringe on the right to keep and bear arms prohibited**

No entity or person, including any public officer or employee of this state or any political subdivision of this state, shall have the authority to enforce or attempt to enforce any federal acts, laws, executive orders, administrative orders, rules, regulations, statutes, or ordinances infringing on the right to keep and bear arms as described under section 1.420. Nothing in sections 1.410 to 1.480 shall be construed to prohibit Missouri officials from accepting aid from federal officials in an effort to enforce Missouri laws.

**1.460. Violations, liability and civil penalty – sovereign immunity not a defense**

1. Any political subdivision or law enforcement agency that employs a law enforcement officer who acts knowingly, as defined under section 562.016, to violate the provisions of section 1.450 or otherwise knowingly deprives a citizen of Missouri of the rights or privileges ensured by Amendment II of the Constitution of the United States or Article I, Section 23 of the Constitution of Missouri while acting under the color of any state or federal law shall be liable to the injured party in an action at law, suit in equity, or other proper proceeding for redress, and subject to a civil penalty of fifty thousand dollars per occurrence. Any person injured under this section shall have standing to pursue an action for injunctive relief in the circuit court of the county in which the action allegedly occurred or in the circuit court of Cole County with respect to the actions of such individual. The court shall hold a hearing on the motion for temporary restraining order and preliminary injunction within thirty days of service of the petition.

2. In such actions, the court may award the prevailing party, other than the state of Missouri or any political subdivision of the state, reasonable attorney's fees and costs.

3. Sovereign immunity shall not be an affirmative defense in any action pursuant to this section.

**1.470. Employment of certain former federal employees prohibited, civil penalty – standing – no sovereign immunity**

1. Any political subdivision or law enforcement agency that knowingly employs an individual acting or who previously acted as an official, agent, employee, or deputy of the government of the United States, or otherwise acted under the color of federal law within the borders of this state, who has knowingly, as defined under section 562.016, after the adoption of this section:

(1) Enforced or attempted to enforce any of the infringements identified in section 1.420; or

(2) Given material aid and support to the efforts of another who enforces or attempts to enforce any of the infringements identified in section 1.420;

shall be subject to a civil penalty of fifty thousand dollars per employee hired by the political subdivision or law enforcement agency. Any person residing in a jurisdiction who believes that an individual has taken action that would violate the provisions of this section shall have standing to pursue an action.

11

2. Any person residing or conducting business in a jurisdiction who believes that an individual has taken action that would violate the provisions of this section shall have standing to pursue an action for injunctive relief in the circuit court of the county in which the action allegedly occurred or in the circuit court of Cole County with respect to the actions of such individual. The court shall hold a hearing on the motion for a temporary restraining order and preliminary injunction within thirty days of service of the petition.

3. In such actions, the court may award the prevailing party, other than the state of Missouri or any political subdivision of the state, reasonable attorney's fees and costs.

4. Sovereign immunity shall not be an affirmative defense in any action pursuant to this section.

### 1.480. Definitions – acts not deemed violation

1. For sections. 1.410 to 1.485, the term "law-abiding citizen" shall mean a person who is not otherwise precluded under state law from possessing a firearm and shall not be construed to include anyone who is not legally present in the United States or the state of Missouri.

2. For the purposes of sections 1.410 to 1.480, "material aid and support" shall include voluntarily giving or allowing others to make use of lodging; communications equipment or services, including social media accounts; facilities; weapons; personnel; transportation; clothing; or other physical assets. Material aid and support shall not include giving or allowing the use of medicine or other materials necessary to treat physical injuries, nor shall the term include any assistance provided to help persons escape a serious, present risk of life-threatening injury.

3. It shall not be considered a violation of sections 1.410 to 1.480 to provide material aid to federal officials who are in pursuit of a suspect when there is a demonstrable criminal nexus with another state or country and such suspect is either not a citizen of this state or is not present in this state.

4. It shall not be considered a violation of sections 1.410 to 1.480 to provide material aid to federal prosecution for:

(1) Felony crimes against a person when such prosecution includes weapons violations substantially similar to those found in chapter 570 or1 571 so long as such weapons violations are merely ancillary to such prosecution; or

(2) Class A or class B felony violations substantially similar to those found in chapter 579 when such prosecution includes weapons violations substantially similar to those found in chapter 570 or1 571 so long as such weapons violations are merely ancillary to such prosecution.

5. The provisions of sections 1.410 to 1.485 shall be applicable to offenses occurring on or after August 28, 2021.

### 1.485. Severability clause

If any provision of sections 1.410 to 1.485 or the application thereof to any person or circumstance is held invalid, such determination shall not affect the provisions or applications of sections 1.410 to 1.485 that may be given effect without the

invalid provision or application, and the provisions of sections 1.410 to 1.485 are severable.

Mo. Rev. Stat. §§ 1.410 - 1.485 (2021) ("SAPA") (emphasis added).

Federal joint task forces involve state and local law enforcement officers who are deputized as federal law enforcement officers and voluntarily serve alongside federal officials to enforce federal law. 28 U.S.C. §§ 561(f), 566(c); 28 C.F.R. § 0.112(b). ATF relies on joint task forces to investigate and enforce laws relevant to the illegal use, possession, and trafficking of firearms. The United States Marshal Service has three task forces across Missouri that are primarily devoted to the apprehension of fugitives.

After SAPA was enacted, ATF sent an informational letter to federal firearms licensees to "confirm the continuing applicability of existing federal regulations."

SAPA is the subject to two state court lawsuits: City of St. Louis v. State of Missouri, No. 21AC-CC00237 (Circuit Court of Cole County, Missouri) and City of Arnold v. State of Missouri, No. 22JE-cc00010 (Circuit Court of Jefferson County, Missouri). The Federal Government participated as amicus curiae in the City of St Louis, No. SC99290 (Mo.), in which the Missouri Supreme Court heard argument on February 7, 2022.

## ANALYSIS

The United States argues it is entitled to summary judgment because SAPA is unconstitutional. First, the United States argues SAPA is unconstitutional because it violates the Supremacy Clause of the Federal Constitution in that its "cornerstone" provision, § 1.420, purports to nullify federal law and/or is preempted by federal law. The United States argues because § 1.420 is non-severable from SAPA's other provisions, SAPA is invalid and unconstitutional in its entirety. Second, the United States argues §§ 1.430 – 1.470 are each independently unconstitutional as violations of the doctrine of intergovernmental immunity.

13

**A. Section 1.420 violates the Supremacy Clause.**

The Supremacy Clause provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. "By this declaration, the states are prohibited from passing any acts which shall be repugnant to a law of the United States." M'Culloch v. Maryland, 17 U.S. 316, 361 (1819). "The states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by congress to carry into effect the powers vested in the national government." Id. at 317. Further, "[t]he law of congress is paramount; it cannot be nullified by direct act of any state, nor the scope and effect of its provisions set at naught indirectly." Anderson v. Carkins, 135 U.S. 483, 490 (1890). As such, a state legislature's attempt to "interpos[e]" itself against federal law "is illegal defiance of constitutional authority." United States v. Louisiana, 364 U.S 500, 501 (1960) (citing Bush v. Orleans Parish Sch. Bd., 188 F. Supp. 916, 926 (E.D. La. 1960); Cooper v. Aaron, 358 U.S. 1 (1958)).

SAPA is an unconstitutional "interposit[ion]" against federal law and is designed to be just that. Id. Section 1.410(5) states the Missouri General Assembly's declaration that the Supremacy Clause "does not extend to various federal statutes, executive orders, administrative orders, court orders, rules, regulations, or other actions that collect data or restrict or prohibit the manufacture, ownership, or use of firearms, firearm accessories, or ammunition exclusively within the borders of Missouri . . . ." Mo. Rev. Stat. § 1.410(5). However, the Missouri General Assembly's assertion that the Supremacy Clause does not extend to acts of Congress does not make it so. To the contrary,

14

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 14 of 24
Appellate Case: 23-1457   Page: 15   Date Filed: 03/13/2023 Entry ID: 5254573

"[t]he law of congress is paramount; it cannot be nullified by direct act of any state, nor the scope and effect of its provisions set at naught indirectly." <u>Anderson</u>, 135 U.S. at 490.

The plain language of § 1.420 reiterates and confirms SAPA's unconstitutional design. Section 1.420's introductory language states: "[t]he following federal acts laws, executive orders administrative orders, rules, and regulations shall be considered infringements on the people's right to keep and bear arms, as guaranteed by Amendment II of the Constitution of the United States and [the Missouri Constitution], within the borders of this state . . . ." Mo. Rev. Stat. § 1.420. Section 1.420 then purports to categorize certain enumerated federal regulations set forth in the National Firearms Act and the Gun Control Act as "infringements on the people's right to keep and bear arms, as guaranteed by" the Second Amendment. Yet, notwithstanding § 1.420's recitation of infringements, the National Firearms Act and the Gun Control Act are "presumptively lawful regulatory measures." <u>District of Columbia v. Heller</u>, 554 U.S. 570, 626-27 n.26 (2008); 26 U.S.C. §§ 5811-5822, 5841 (federal firearms licensing, registration, tax requirements); 18 U.S.C. § 922(a)(1)(A), 923(a); 922(g) (federal regulations for manufacture, importation and firearms dealing and imposing licensing, recordkeeping, and marking requirements; limits on possession); <u>see also</u>, <u>United States v. Bena</u>, 664 F.3d 1180, 1184 (8th Cir. 2011); <u>United States v. Joos</u>, 638 F.3d 581, 586 (8th Cir. 2011); <u>United States v. Seay</u>, 620 F.3d 919, 924-25 (8th Cir. 2010); <u>United States v. Fincher</u>, 538 F.3d 868, 873-74 (8th Cir. 2008).

Though § 1.420 purports to invalidate substantive provisions of the NFA and the GCA within Missouri, such an act is invalid under the Supremacy Clause. And, even though Missouri defines certain substantive provisions of the NFA and GCA as "infringements," the regulatory measures are still valid in Missouri through the Supremacy Clause. Thus, to the extent § 1.420 purports to negate the constitutionality or substance of the NFA or GCA, these regulatory schemes

15

Case 2:22-cv-04022-BCW    Document 88    Filed 03/07/23    Page 15 of 24
Appellate Case: 23-1457    Page: 16    Date Filed: 03/13/2023 Entry ID: 5254573

are presumptively lawful, and it is an impermissible nullification attempt that violates the Supremacy Clause.

**B. Section 1.420 is preempted.**

Section 1.420 provides that certain federal firearms regulations are "infringements on the people's right to keep and bear arms, as guaranteed by Amendment II of the Constitution of the United States and Article I, Section 23 of the Constitution of Missouri, within the borders of this state, including, but not limited to," in summary, (1) taxes or fees on firearms, accessories, or ammunition; (2) registration of firearms, accessories, or ammunition; (3) registration or tracking of ownership of firearms, accessories, or ammunition; (4) bans on possession/ownership/transfer of firearms, accessories, or ammunition by law-abiding citizens; and (5) confiscation of firearms, accessories, or ammunition from law-abiding citizens. Mo. Rev. Stat. § 1.420.

A federal law preempts a state law if the two are in direct conflict. <u>Alliance Ins. Co. v. Wilson</u>, 384 F.3d 547, 551 (8th Cir. 2004). A "direct conflict" occurs "[w]hen compliance with both federal and state regulations is a physical impossibility or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . ." <u>Id.</u> If "Congress enacts a law that imposes restrictions or confers rights on private actors," and "a state law confers rights or imposes restrictions that conflict with federal law," then "the federal law takes precedence and the state law is preempted." <u>Murphy v. Nat'l Coll. Athletic Ass'n</u>, 138 S. Ct. 1461, 1480 (2018).

Under the uncontroverted facts, the NFA sets forth taxation requirements on the manufacture and transfer of certain firearms. 26 U.S.C. §§ 5811, 5821. Section 1.420(1) states "[a]ny tax, levy, feel or stamp imposed on firearms, firearm accessories, or ammunition . . . that might reasonably be expected to create a chilling effect on the purchase or ownership of those

16

items by law-abiding citizens," is an "infringement on the people's right to keep and bear arms, as guaranteed by Amendment II of the Constitution of the United States . . . within the borders of [Missouri]." However, that Missouri states that the taxation requirements "create a chilling effect . . ." is immaterial where Congress has lawfully imposed the requirements. Further, such a statement stands as an obstacle to the full purposes and objectives of federal firearms regulatory measures because it creates confusion regarding a Missouri citizen's obligation to comply with the taxation requirements of the NFA. As such, § 1.420 is preempted.

Under the uncontroverted facts, the NFA provides for the registration and tracking of firearms and their possession. 26 U.S.C. § 5841(a). The GCA imposes other requirements on those engaged in the business of dealing or manufacturing or importing firearms or ammunition. These Federal Firearms Licensees (FFL) must receive a license from the Attorney General and pay certain fees. Each FFL is required to maintain "records of importation, production, shipment, receipt, sale, or other disposition of firearms," and may not transfer a firearm to an unlicensed person without completing a Firearms Transaction Record. FFLs must also conduct background checks using the National Instant Criminal Background Check System and verify a purchaser's identify for an over-the-counter sale of a firearm. Moreover, FFLS must ensure each firearm manufactured and imported must be identified by serial number and the licensees' identifying mark.

However, §§ 1.420(2) and 1.420(3) state "[a]ny registration or tracking of firearms, firearm accessories, or ammunition," and/or "[a]ny registration or tracking of the ownership of firearms, firearm accessories or ammunition," is an "infringement on the people's right to keep and bear arms, as guaranteed by Amendment II of the Constitution of the United States . . . within the borders of [Missouri]." Sections 1.420(2) and 1.420(3) create confusion regarding registration of

17

firearms by purporting to invalidate federal registration and tracking requirements. The logical implication is that Missouri citizens need not comply with federal licensing and registration requirements "within the borders of [Missouri]." Since Missouri citizens must comply with federal registration and licensing requirements for firearms notwithstanding SAPA's definition of infringements, §§ 1.420(2) and 1.420(3) stand as obstacles to the full purposes and objectives of federal firearms regulatory measures and are preempted.

Moreover, the GCA also prohibits possession of firearms by certain categories of individuals, including those who have been convicted of a felony, those who have been convicted of a misdemeanor crime of domestic violence, those who have been dishonorably discharged from the military, noncitizens not lawfully in the United States, unlawful users of controlled substances, and others. 18 U.S.C. § 922(g). Sections 1.420(4) and 1.420(5) state "[a]ny act forbidding the possession, ownership, use, or transfer of a firearm, firearm accessory, or ammunition by law-abiding citizens" and/or "[a]ny act ordering the confiscation of firearms, firearm accessories, or ammunition from law-abiding citizens is an "infringement on the people's right to keep and bear arms, as guaranteed by Amendment II of the Constitution of the United States . . . within the borders of [Missouri]." As used in these provisions, "law-abiding citizen" is defined as "a person who is not otherwise precluded under state law from possessing a firearm and shall not be construed to include anyone who is not legally present in the United States or in the state of Missouri." Mo. Rev. Stat. § 1.480. Sections 1.420(4) and (5) refer to as "infringements" limits on who may possess a firearm, as those limits are set forth in the GCA. SAPA's definition of "law-abiding citizen" expands who may lawfully possess a firearm within the state of Missouri and/or whose firearms, firearm accessories, or ammunition may be subject to confiscation. Sections 1.420(4) and 1.420(5) create confusion about the lawful possession, ownership, use, transfer, or

18

confiscation of firearms within Missouri by purporting to reduce the scope of federal regulations pertaining to the possession, ownership, use, transfer, or confiscation of firearms, with which federal regulations Missouri citizens must comply. By attempting to alter the definition of a "law-abiding citizen" who may possess or own or transfer or use a firearm within Missouri, §§ 1.420(4) and 1.420(5) conflict with the GCA's definition of who may possess or own or transfer or use a firearm within Missouri, and as such, §§ 1.420(4) and 1.420(5) stand as obstacles to the full purposes and objectives of federal firearms regulatory measures and are preempted. For all of these reasons, § 1.420 is preempted and unconstitutional on its face.

**C. SAPA is unconstitutional in its entirety.**

The next issue is whether the unconstitutionality of § 1.420 renders SAPA unconstitutional in its entirety because the other provisions are "so essentially and inseparably connected with, and so dependent upon" § 1.420 "that it cannot be presumed the legislature would have enacted the valid provisions without the void one." Priorities USA v. Missouri, 591 S.W.3d 448, 456 (Mo. 2020).

The parties agree that Missouri law governs whether SAPA is severable. The Missouri Supreme Court "employs a two-part test to determine whether valid parts of a statute can be upheld despite the statute's unconstitutional parts." Id. (citing Dodson v. Ferrara, 491 S.W.3d 542, 558 (Mo. 2016)). First, the Court asks "whether, after separating the invalid portions, the remaining portions are in all respects complete and susceptible of constitutional enforcement." Id. Second, the Court asks "whether 'the remaining statute is one that the legislature would have enacted if it had known that the rescinded portion was invalid.'" Id.

Here, SAPA fails Missouri's severability test. First, even if § 1.420 is severed, the remaining portions of the statute cannot be said to be "in all respects complete and susceptible to

19

constitutional enforcement." <u>Priorities USA</u>, 591 S.W.3d at 456. Because § 1.420 defines categorizes certain "federal acts, laws, executive orders, administrative orders, rules, and regulations" as "infringements," SAPA's other provisions are rendered meaningless without this definition.

For example, § 1.430 states that such infringements are invalid as applied to the State of Missouri, §1.440 imbues courts and law enforcement agencies with a duty to protect the citizens of Missouri from such infringements, and § 1.450 specifically prohibits Missouri state actors from enforcing any federal acts, laws, executive orders, etc. that have been deemed infringements by the State of Missouri. Therefore, since each provision of SAPA relies on the definition of an "infringement" as it is defined under § 1.420, SAPA's remaining subsections are "essentially and inseparably connected with, and . . . dependent upon" § 1.420. <u>Id.</u>

Given the governing framework set forth in § 1.420, SAPA fails Missouri's severability test because it cannot be said that the legislature would have enacted SAPA had it known that § 1.420 was unconstitutionally invalid. To say otherwise would suggest the Missouri General Assembly meant to enact a law wherein courts and law enforcement agencies have a duty to protect citizens from "infringements" and citizens of Missouri need not recognize such "infringements"— without actually knowing what an infringement is. Such a result would create a material ambiguity in the statute and lead to absurd results. <u>Missouri v. Nash</u>, 339 S.W.3d 500, 508 (Mo. 2011) ("[s]tatutes cannot be interpreted in ways that yield unreasonable or absurd results . . . ."). Moreover, without § 1.420, SAPA would have no practical or legal effect and the Missouri General Assembly would have had no basis to enact SAPA's other provisions. Therefore, §1.420 is non-severable and SAPA unconstitutional in its entirety.

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 20 of 24
Appellate Case: 23-1457   Page: 21   Date Filed: 03/13/2023 Entry ID: 5254573

**D. Sections 1.430 – 1.470 violate the doctrine of intergovernmental immunity.**

Moreover, SAPA's other substantive provisions are unconstitutional independent of § 1.420 because they violate the doctrine of intergovernmental immunity. "The Constitution's Supremacy Clause generally immunizes the Federal Government from state laws that directly regulate or discriminate against it." United States v. Washington, 596 U.S. – (June 21, 2022) (citing South Carolina v. Baker, 485 U.S. 505, 523 (1988)). The doctrine of intergovernmental immunity "prohibit[s] state laws that *either* 'regulate the United States directly or discriminate against the Federal Government or those with whom it deals (e.g. contractors).'" Id. (emphasis in original) (citing North Dakota v. United States, 495 U.S. 423, 435 (1990)). Additionally, "[a] state law discriminates against the Federal Government" in violation of the doctrine of intergovernmental immunity if the state singles out the Federal Government "for less favorable treatment, or if it regulates [the Federal Government] unfavorably on some basis related to their governmental 'status.'" Id. (citing Washington v. United States, 460 U.S. 536, 546 (1983); North Dakota, 495 U.S. at 438)).

Section 1.430 provides that all federal laws and acts that infringe on the people's right to keep and bear arms under the Second Amendment are invalid in Missouri, are not recognized by Missouri, and are rejected by Missouri. At best, this statute causes confusion among state law enforcement officials who are deputized for federal task force operations, and at worst, is unconstitutional on its face. While Missouri cannot be compelled to assist in the enforcement of federal regulations within the state, it may not regulate federal law enforcement or otherwise interfere with its operations. By declaring federal firearms regulations invalid as to the state, § 1.430 violates intergovernmental immunity on its face.

21

Section 1.440 imposes a duty on Missouri courts and law enforcement agencies to protect against infringements as defined under § 1.420. In creating an affirmative duty to protect against infringements, § 1.440 effectively imposes an affirmative duty to effectuate an obstacle to federal firearms enforcement within the state. In imposing a duty on courts and state law enforcement to obstruct the enforcement of federal firearms regulations in Missouri, § 1.440 violates intergovernmental immunity. Tennessee v. Davis, 100 U.S. 257, 263 (1879) ("No State government can exclude [the Federal Government] from the exercise of any authority conferred upon it by the Constitution, [or] obstruct its authorized officers against its will . . . .").

Section 1.450 regulates the United States directly in violation of the doctrine of intergovernmental immunity. Section 1.450 states that "[n]o entity . . . shall have the authority to enforce or attempt to enforce any federal acts . . ." that are deemed infringements under § 1.420. Though Defendants argue SAPA does not regulate the United States or federal law enforcement directly, this argument is contrary to § 1.450's plain language.

Finally, §§ 1.460 and 1.470 are each independently invalid as discriminatory against federal authority in violation of the doctrine of intergovernmental immunity. Section 1.460 imposes a monetary penalty through civil enforcement action against any political subdivision or law enforcement agency that employs an officer who knowingly violates § 1.450 while acting under color of federal law – that is, any local law enforcement official who assists in federal firearms regulatory enforcement in a deputized capacity. Section 1.470 imposes a monetary penalty through civil enforcement action against any political subdivision or law enforcement agency that employs an officer who formerly enforced the infringements identified in § 1.420 – that is, certain federal firearms regulations – or, an officer who has given material aid and support to others engaged in the enforcement of the infringements identified in § 1.420 – that is, federal

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 22 of 24
Appellate Case: 23-1457   Page: 23   Date Filed: 03/13/2023 Entry ID: 5254573

law enforcement. The exposure to monetary penalties set forth in § 1.460 and 1.470 arise from federally deputized state law enforcement officials' enforcement of federal firearm regulations. Moreover, these enforcement schemes are likely to discourage federal law enforcement recruitment efforts. For these reasons, § 1.460 and § 1.470 violate intergovernmental immunity and are invalid. Davis, 100 U.S. 25 at 263. Therefore, §§ 1.430-1.470 are each independently unconstitutional.

**E. SAPA is unconstitutional in its entirety.**

The unconstitutionality of §§ 1.460 and 1.470 likewise renders SAPA unconstitutional as non-severable. Even assuming SAPA's other provisions are susceptible of constitutional enforcement, which they are not, there is no basis to conclude the Missouri General Assembly would have enacted SAPA without the civil enforcement mechanisms set forth in §§ 1.460 and 1.470. Priorities USA, 591 S.W.3d at 456 (two-part severability test asks first, whether after separating out the unconstitutional provisions, the remaining portions are susceptible of constitutional enforcement and second, whether without the unconstitutional provision, the legislature would have nonetheless enacted the law). Without §§ 1.460 and/or 1.470, SAPA has no practical or legal effect. The Court thus concludes §§ 1.460 and/or 1.470 are non-severable, rendering SAPA is unconstitutional in its entirety.

SAPA's practical effects are counterintuitive to its stated purpose. While purporting to protect citizens, SAPA exposes citizens to greater harm by interfering with the Federal Government's ability to enforce lawfully enacted firearms regulations designed by Congress for the purpose of protecting citizens within the limits of the Constitution. Accordingly, it is hereby

ORDERED the United States' motion for summary judgment (Doc. #8) is GRANTED. It is further

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 23 of 24
Appellate Case: 23-1457   Page: 24   Date Filed: 03/13/2023 Entry ID: 5254573

ORDERED Defendants' motions to dismiss (Docs. #13 & #15) are DENIED. It is further

ORDERED SAPA is invalidated as unconstitutional in its entirety as violative of the Supremacy Clause. H.B. 85 is invalid, null, void, and of no effect. State and local law enforcement officials in Missouri may lawfully participate in joint federal task forces, assist in the investigation and enforcement of federal firearm crimes, and fully share information with the Federal Government without fear of H.B. 85's penalties. The States of Missouri and its officers, agents, and employees and any others in active concert with such individuals are prohibited from any and all implementation and enforcement of H.B. 85. It is further

ORDERED the United States' request for costs is GRANTED.

IT IS SO ORDERED.


DATE: <u>March 6, 2023</u>                    <u>/s/ Brian C. Wimes</u>
                                             JUDGE BRIAN C. WIMES
                                             UNITED STATES DISTRICT COURT

24

Case 2:22-cv-04022-BCW   Document 88   Filed 03/07/23   Page 24 of 24
Appellate Case: 23-1457   Page: 25   Date Filed: 03/13/2023 Entry ID: 5254573