# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

STATE OF MISSOURI, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Missouri

## BRIEF FOR APPELLEE UNITED STATES OF AMERICA

SAYLER A. FLEMING
  *United States Attorney*
  *Eastern District of Missouri*

TERESA A. MOORE
  *United States Attorney*
  *Western District of Missouri*

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

SARAH E. HARRINGTON
  *Deputy Assistant Attorney General*

MARK B. STERN
MICHAEL S. RAAB
ABBY C. WRIGHT
JEFFREY E. SANDBERG
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *202-532-4453*

## SUMMARY OF THE CASE AND
## STATEMENT REGARDING ORAL ARGUMENT

The United States brought this lawsuit to enjoin the State of Missouri and its officials from implementing H.B. 85 & 310, also called the Second Amendment Preservation Act, a state statute that purports to invalidate numerous federal laws; directs law enforcement agencies and state courts to "protect" Missouri citizens against those federal laws; deprives state officers of any authority to enforce or attempt to enforce those federal laws; and encourages adherence to its mandates by authorizing private citizens to sue state and local agencies if they fail to comply. Mo. Rev. Stat. §§ 1.410-1.485. The district court granted summary judgment in favor of the United States, concluding that H.B. 85 is unconstitutional because it improperly attempts to nullify federal law, is preempted by federal law, and violates principles of intergovernmental immunity, and enjoined the State and other Defendants from further implementation and enforcement of the statute in its entirety.

Defendants have requested oral argument. The United States agrees that oral argument is likely to be of assistance to the Court. Although the judgment may readily be affirmed on the grounds set forth in the district court's decision and in this brief, the United States would welcome the opportunity to answer the Court's questions and to further discuss the fundamental legal errors on which both Defendants' appeal and H.B. 85 itself are premised.

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

STATEMENT OF THE ISSUES........................................3

STATEMENT OF THE CASE .........................................4

A.  Legal Background ................................................4

    1.  H.B. 85 .....................................................4

    2.  Federal Firearms Laws ..........................8

B.  H.B. 85's Effects On Federal Enforcement ............11

C.  Procedural History...............................................14

ARGUMENT ....................................................................22

I.  THE UNITED STATES HAS BOTH STANDING AND AUTHORITY TO SUE. ...............................................22

    A.  The United States Has Standing To Redress Existing Harms To Its Law Enforcement And Other Sovereign Interests. ....................................22

    B.  The United States May Sue In Equity...........39

II.  H.B. 85 IS UNCONSTITUTIONAL AND THE DISTRICT COURT PROPERLY ENJOINED DEFENDANTS FROM IMPLEMENTING OR ENFORCING IT.............................................41

    A.  State Legislatures May Not Invalidate Federal Law Or Regulate On The Premise That Federal Law Is Invalid. ...........41

    B.  H.B. 85 Is Also Preempted And Violates Principles Of Intergovernmental Immunity. .......................49

    C.  H.B. 85 Is Entirely Invalid. .........................51

    D.  The District Court Properly Enjoined Defendants, Not "The Laws Themselves."..............................56

CONCLUSION..................................................................58

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Appellate Case: 23-1457    Page: 3    Date Filed: 08/10/2023 Entry ID: 5304853

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Alden v. Maine,*
527 U.S. 706 (1999) .......................................................................27, 29

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
458 U.S. 592 (1982) ........................................................................ 26

*American Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency,*
836 F.3d 963 (8th Cir. 2016) .........................................................22, 37

*Arizona v. United States,*
567 U.S. 387 (2012) ................................................................ 26, 30, 49

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015) .......................................................................39, 40

*California v. Texas,*
141 S. Ct. 2104 (2021) .................................................................... 32

*Calzone v. Hawley,*
866 F.3d 866 (8th Cir. 2017) ..........................................................34, 35

*Church v. Missouri,*
913 F.3d 736 (8th Cir. 2019) ............................................................ 34

*City of Kansas City v. Yarco Co.,*
625 F.3d 1038 (8th Cir. 2010) ............................................................ 23

*City of St. Louis v. State,*
643 S.W.3d 295 (Mo. banc 2022) ............................................... 14, 45, 46

*Cooper v. Aaron,*
358 U.S. 1 (1958) ...........................................................................3, 42

*Correctional Servs. Corp. v. Malesko,*
534 U.S. 61 (2001) ......................................................................... 30

*Curling v. Secretary of Georgia,*
761 F. App'x 927 (11th Cir. 2019) ...................................................... 34

Appellate Case: 23-1457    Page: 4    Date Filed: 08/10/2023 Entry ID: 5304853

*Dakota, Minnesota & E. R.R. Corp. v. South Dakota*,
    362 F.3d 512 (8th Cir. 2004) .................................................................. 57

*Debs, In re*,
    158 U.S. 564 (1895) ...................................................................... 3, 29, 39

*Digital Recognition Network, Inc. v. Hutchinson*,
    803 F.3d 952 (8th Cir. 2015) .................................................................. 33

*Dodson v. Ferrara*,
    491 S.W.3d 542 (Mo. banc 2016) ......................................................52, 53

*Emery v. Wal-Mart Stores, Inc.*,
    976 S.W.2d 439 (Mo. banc 1998) ........................................................... 45

*Espinoza v. Montana Dep't of Revenue*,
    140 S. Ct. 2246 (2020) ............................................................................ 48

*Florida ex rel. Att'y Gen. v. U.S. Dep't of Health & Human Servs.*,
    648 F.3d 1235 (11th Cir. 2011), *rev'd on other grounds by*
    *National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ................. 24, 38

*Fond du Lac Band of Chippewa Indians v. Carlson*,
    68 F.3d 253 (8th Cir. 1995) .................................................................... 57

*Griffin v. United States*,
    168 F.2d 457 (8th Cir. 1948) .................................................................. 40

*Halliday v. Jensen*,
    No. 4:21-cv-1397, 2022 WL 3541680 (E.D. Mo. Aug. 18, 2022) ............. 26

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) ................................................................................ 49

*Horne v. Department of Agric.*,
    576 U.S. 350 (2015) .............................................................................. 48

*Laredo Ridge Wind, LLC v. Nebraska Pub. Power Dist.*,
    11 F.4th 645 (8th Cir. 2021) .................................................................. 22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................... 3, 22, 31

*M'Culloch v. Maryland*,
    17 U.S. (4 Wheat.) 316 (1819) ..........................................................41, 48

Appellate Case: 23-1457    Page: 5    Date Filed: 08/10/2023 Entry ID: 5304853

*McDaniel v. Precythe,*
   897 F.3d 946 (8th Cir. 2018) ..................................................... 33

*Mille Lacs Band of Chippewa Indians v. Minnesota,*
   124 F.3d 904 (8th Cir. 1997), *aff'd*, 526 U.S. 172 (1999) ........................... 47

*Missouri v. Yellen,*
   39 F.4th 1063 (8th Cir. 2022) ..................................................... 28

*Missouri Nat'l Educ. Ass'n v. Missouri Dep't of Labor & Indus. Relations,*
   623 S.W.3d 585 (Mo. banc 2021) ........................................... 54

*Montana Shooting Sports Ass'n v. Holder,*
   727 F.3d 975 (9th Cir. 2013) ..................................................... 43

*Murphy v. National Collegiate Athletic Ass'n,*
   138 S. Ct. 1461 (2018) ..................................................... 49

*Neighborhood Enters., Inc. v. City of St. Louis,*
   644 F.3d 728 (8th Cir. 2011) ..................................................... 45

*New York v. United States,*
   505 U.S. 144 (1992) ..................................................... 47, 57

*North Dakota v. United States,*
   495 U.S. 423 (1990) ..................................................... 38, 51

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ..................................................... 28-29

*Pennsylvania v. West Virginia,*
   262 U.S. 623 (1923) ..................................................... 30

*Printz v. United States,*
   521 U.S. 898 (1997) ..................................................... 46, 47

*Priorities USA v. State,*
   591 S.W.3d 448 (Mo. banc 2020) ................................................. 3, 52, 54

*Sanitary Dist. of Chi. v. United States,*
   266 U.S. 405 (1925) ..................................................... 39-40

*Shrink Mo. Gov't PAC v. Maupin,*
   71 F.3d 1422 (8th Cir. 1995) ..................................................... 52, 54

Appellate Case: 23-1457    Page: 6    Date Filed: 08/10/2023 Entry ID: 5304853

*State v. Russell*,
598 S.W.3d 133 (Mo. banc 2020) ............................................................ 46

*State ex rel. Goldsworthy v. Kanatzar*,
543 S.W.3d 582 (Mo. banc 2018) ............................................................ 45

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ................................................................................. 28

*Tennessee v. Davis*,
100 U.S. 257 (1879) ................................................................................. 25

*281 Care Comm. v. Arneson*,
638 F.3d 621 (8th Cir. 2011) .............................................................. 28, 34

*United States v. Alabama Dep't of Mental Health*,
673 F.3d 1320 (11th Cir. 2012) ............................................................... 30

*United States v. Alabama*,
443 F. App'x 411 (11th Cir. 2011) .......................................................... 30

*United States v. Arizona*,
703 F. Supp. 2d 980 (D. Ariz. 2010), *aff'd*, 641 F.3d 339
(9th Cir. 2011), *aff'd in part and rev'd in part*, 567 U.S. 387 (2012) .............. 30

*United States v. Board of County Comm'rs*,
843 F.3d 1208 (10th Cir. 2016) ............................................................... 40

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ................................................................... 40

*United States v. City of Arcata*,
629 F.3d 986 (9th Cir. 2010) ................................................................... 40

*United States v. City of Jackson*,
318 F.2d 1 (5th Cir. 1963) ...................................................................... 40

*United States v. Cox*,
906 F.3d 1170 (10th Cir. 2018) .......................................................... 43, 44

*United States v. Fitzgerald*,
201 F. 295 (8th Cir. 1912) ...................................................................... 40

*United States v. Ganaway*,
No. 4:20-cr-271, 2022 WL 1617266 (E.D. Mo. May 23, 2022) ................ 26

Appellate Case: 23-1457    Page: 7    Date Filed: 08/10/2023 Entry ID: 5304853

*United States v. Gilliam*,
   No. 4:19-cr-266, 2022 WL 571540 (W.D. Mo. Feb. 3, 2022),
   *report and recommendation adopted*, 2022 WL 567838 (Feb. 24, 2022) ......... 26

*United States v. Louisiana*,
   364 U.S. 500 (1960) (per curiam) ............................................... 3, 17, 42, 48

*United States v. Minnesota*,
   270 U.S. 181 (1926) ................................................................................. 39

*United States v. Mississippi*,
   380 U.S. 128 (1965) .............................................................. 3, 15, 27, 29

*United States v. Missouri*,
   535 F.3d 844 (8th Cir. 2008) ..................................................................... 30

*United States v. Reynolds*,
   235 U.S. 133 (1914) ................................................................................. 42

*United States v. South Carolina*,
   720 F.3d 518 (4th Cir. 2013) ..................................................................... 30

*United States v. State Water Res. Control Bd.*,
   988 F.3d 1194 (9th Cir. 2021) ................................................................... 40

*United States v. Supreme Ct. of N.M.*,
   839 F.3d 888 (10th Cir. 2016) ................................................................... 23

*United States v. Texas*,
   143 U.S. 621 (1892) ............................................................................ 29-30

*United States v. Texas*,
   340 U.S. 900 (1950) ................................................................................. 30

*United States v. Texas*,
   566 F. Supp. 3d 605 (W.D. Tex.), *cert. dismissed*,
   142 S. Ct. 522 (2021) ............................................................................... 31

*United States v. Texas*,
   No. 21-50949, 2021 WL 4786458 (5th Cir. Oct. 14, 2021) ................... 31-32

*United States v. Thomas*,
   No. 4:20-cr-825, 2022 WL 1004828 (E.D. Mo. Mar. 29, 2022),
   *report and recommendation adopted*, 2022 WL 2207783 (June 21, 2022) ...... 26

Appellate Case: 23-1457   Page: 8   Date Filed: 08/10/2023 Entry ID: 5304853

*United States v. Washington*,
142 S. Ct. 1976 (2022) .......................................................... 18, 40, 49, 51

*United States ex rel. Zissler v. Regents of Univ. of Minn.*,
154 F.3d 870 (8th Cir. 1998)..................................................... 29

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*,
535 U.S. 635 (2002) ................................................................. 34

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) ................................................................. 23

*Whole Woman's Health v. Hellerstedt*,
136 S. Ct. 2292 (2016) ............................................................. 57

*Whole Woman's Health v. Jackson*,
142 S. Ct. 522 (2021) ............................................................... 31

*Willson v. City of Bel-Noir*,
924 F.3d 995 (8th Cir. 2019) .................................................... 45

*Wyandotte Transp. Co. v. United States*,
389 U.S. 191 (1967) ................................................................. 39

**U.S. Constitution:**

Art. VI, cl. 2 ........................................................................... 3, 6, 41

Appellate Case: 23-1457    Page: 9    Date Filed: 08/10/2023 Entry ID: 5304853

**Statutes:**

Gun Control Act of 1968:

18 U.S.C. § 921 *et seq.* ............................................................................ 8
    18 U.S.C. § 921(a)(3) ..................................................................... 9
    18 U.S.C. § 922(a)(1)(A) ................................................................ 9
    18 U.S.C. § 922(g) ................................................................... 10, 50
    18 U.S.C. § 922(g)(6) .................................................................... 50
    18 U.S.C. § 922(g)(8) .................................................................... 50
    18 U.S.C. § 922(g)(9) .................................................................... 50
    18 U.S.C. § 922(t) ........................................................................ 10
    18 U.S.C. § 923(a) ......................................................................... 9
    18 U.S.C. § 923(g)(1)(A) .......................................................... 10, 50
    18 U.S.C. § 923(g)(6) ............................................................... 10, 50
    18 U.S.C. § 923(g)(7) .................................................................... 10
    18 U.S.C. § 923(i) ..................................................................... 9, 50

National Firearms Act of 1934:

26 U.S.C. § 5801 *et seq.* ........................................................................ 8
    26 U.S.C. § 5802 ......................................................................... 50
    26 U.S.C. §§ 5811-5822 ............................................................... 11
    26 U.S.C. § 5812 ......................................................................... 50
    26 U.S.C. § 5822 ......................................................................... 50
    26 U.S.C. § 5841 ......................................................................... 11

5 U.S.C. § 3374 ....................................................................................... 8

18 U.S.C. § 3052 ..................................................................................... 8

18 U.S.C. § 3107 ..................................................................................... 8

21 U.S.C. § 878 ...................................................................................... 8

28 U.S.C. § 533 ...................................................................................... 8

28 U.S.C. § 561 ...................................................................................... 8

28 U.S.C. § 566 ...................................................................................... 8

28 U.S.C. § 599A .................................................................................... 8

Appellate Case: 23-1457    Page: 10    Date Filed: 08/10/2023   Entry ID: 5304853

28 U.S.C. § 1291  ........................................................................ 3

28 U.S.C. § 1331  ........................................................................ 3

28 U.S.C. § 1345  ........................................................................ 3

Kan. Stat. Ann. § 50-1204(a) .................................................. 44

Kan. Stat. Ann. § 50-1206(a) .................................................. 44

Missouri H.B. 85 & 310 (Second Amendment Preservation Act):

  Mo. Rev. Stat. §§ 1.410-1.485  ............................................. 4
    Mo. Rev. Stat. § 1.410  ....................................................... 42
    Mo. Rev. Stat. § 1.410.2(4)  ............................................... 4
    Mo. Rev. Stat. § 1.410.2(5)  ............................................... 4
    Mo. Rev. Stat. § 1.410.2(6)-(9)  ......................................... 4
    Mo. Rev. Stat. § 1.420  ................................................ *passim*
    Mo. Rev. Stat. § 1.420(1)-(5)  ........................................... 5
    Mo. Rev. Stat. § 1.430  ..................................... 5, 6, 26, 42
    Mo. Rev. Stat. § 1.440  .................................. 6, 26, 42, 53
    Mo. Rev. Stat. § 1.450  ............................. 6, 26, 36, 42, 53
    Mo. Rev. Stat. § 1.460  ....................................................... 7
    Mo. Rev. Stat. § 1.460.1  ............................... 7, 8, 43, 53
    Mo. Rev. Stat. § 1.460.2  ................................................... 7
    Mo. Rev. Stat. § 1.460.3  ................................................... 7
    Mo. Rev. Stat. § 1.470  ................................................. 7, 18
    Mo. Rev. Stat. § 1.470.1  ................................... 7, 36, 51
    Mo. Rev. Stat. § 1.470.1(1)-(2)  ................................. 7, 54
    Mo. Rev. Stat. § 1.470.2  ................................... 8, 36, 43
    Mo. Rev. Stat. § 1.470.3  ................................................... 7
    Mo. Rev. Stat. § 1.470.4  ................................................... 7
    Mo. Rev. Stat. § 1.480.1  ................................................. 49
    Mo. Rev. Stat. § 1.480.2  ................................................... 7
    Mo. Rev. Stat. § 1.480.4(1)-(2)  ................................. 7, 55
    Mo. Rev. Stat. § 1.480.5  ................................................. 11
    Mo. Rev. Stat. § 1.485  ................................................... 52

Mo. Rev. Stat. § 1.020(12) ........................................................ 17

Mo. Rev. Stat. § 1.140 ............................................................... 52

Appellate Case: 23-1457    Page: 11    Date Filed: 08/10/2023 Entry ID: 5304853

Mo. Rev. Stat. § 27.060 ................................................................. 15, 17, 36

Mo. Rev. Stat. § 106.010 ................................................................. 35

Mo. Rev. Stat. § 106.220 ................................................................. 17, 35

Mo. Rev. Stat. § 115.646 ................................................................. 47

Mo. Rev. Stat. § 188.205 ................................................................. 47

Mo. Rev. Stat. § 571.070.1 ............................................................. 50

Mont. Code Ann. § 30-20-104 ........................................................ 43

**Regulations:**

27 C.F.R. § 478.92(a)(1) ................................................................ 9

27 C.F.R. § 478.102 ...................................................................... 10

27 C.F.R. §§ 478.121-478.125 ...................................................... 10

27 C.F.R. § 478.124 ...................................................................... 10

27 C.F.R. § 478.124(c) ................................................................. 10

28 C.F.R. § 0.85 ........................................................................... 8

28 C.F.R. §§ 0.111-0.112 ............................................................. 8

28 C.F.R. §§ 0.130-0.131 ............................................................. 8

**Other Authority:**

*Encyclopedia of the American Constitution* (Levy & Karst eds., 2d ed. 2000) ......... 4

Appellate Case: 23-1457    Page: 12    Date Filed: 08/10/2023 Entry ID: 5304853

# INTRODUCTION

The United States brought this lawsuit to halt further implementation of Missouri H.B. 85, a state law that purports to invalidate numerous federal firearms laws; directs state courts and agencies to "protect" citizens against those federal laws; deprives state officers of any authority to enforce or attempt to enforce those federal laws; and reinforces those duties and prohibitions with a civil-penalty scheme. The district court properly determined that the statute is unconstitutional in its entirety and enjoined the State and its officials from its further implementation and enforcement.

The State does not seriously dispute that it lacks substantive authority to nullify federal law or to direct its officials to treat federal law as invalid. It instead submits that the United States cannot seek equitable relief to vindicate the United States Constitution. In contesting standing, Defendants mistakenly suggest that the State's past and ongoing implementation of H.B. 85 has caused no cognizable injury to the federal government. That is plainly incorrect: H.B. 85 has impaired the United States' ability to combat violent crime in Missouri by, among other things, disrupting longstanding federal-state task forces and information-sharing relationships. Those harms are directly caused by the State's implementation of H.B. 85, and they are remedied by the district court's judgment. That the United States is not a likely future

defendant under the statute's civil-penalty scheme does nothing to erase the injury caused by implementation of H.B. 85's other core provisions. And the United States has a well-established right in equity to sue to enjoin state laws that unconstitutionally interfere with federal interests.

On the merits, H.B. 85 plainly violates the Supremacy Clause. The statute does not simply express a point of view about federal law; it affirmatively requires state agencies, officials, and courts to conduct themselves in accordance with its declaration that federal law is invalid. The Constitution does not allow States to nullify, impede, or discriminate against federal law. And every provision of H.B. 85 depends upon its cornerstone provision declaring federal laws invalid. The district court therefore properly enjoined Defendants from implementation or enforcement of H.B. 85 in its entirety.

2

## STATEMENT OF JURISDICTION

The district court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1345, App. 20; R. Doc. 1, ¶ 11, and entered final judgment on March 7, 2023. App. 154-55; R. Doc. 89 (judgment); *see* App. 130-53; R. Doc. 88 (opinion). On March 8, 2023, Defendants timely appealed to this Court. App. 15; R. Doc. 92. The district court entered an administrative stay of its judgment pending resolution of Defendants' stay motion in this Court, which remains pending. Appellate jurisdiction rests on 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**1.** Whether the district court correctly determined that the United States has Article III standing and authority to sue.

- *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
- *United States v. Mississippi*, 380 U.S. 128 (1965)
- *In re Debs*, 158 U.S. 564 (1895)

**2.** Whether the district court correctly determined that Missouri H.B. 85 is unconstitutional and properly exercised its discretion in enjoining the State and its officials from implementing and enforcing the law in its entirety.

- U.S. Const. art. VI, cl. 2 (Supremacy Clause)
- *Cooper v. Aaron*, 358 U.S. 1 (1958)
- *United States v. Louisiana*, 364 U.S. 500 (1960) (per curiam)
- *Priorities USA v. State*, 591 S.W.3d 448 (Mo. banc 2020)

3

## STATEMENT OF THE CASE

**A.    Legal Background**

**1.    H.B. 85**

Missouri H.B. 85 & 310, titled the Second Amendment Preservation Act (H.B. 85), was enacted by the Missouri legislature and signed into law by the Governor on June 12, 2021.  Mo. Rev. Stat. §§ 1.410-1.485; *see* App. 80-85; R. Doc. 16-1 (reproducing H.B. 85 as enacted).  As reflected in express legislative findings, H.B. 85 is premised on an assertion that each State has the "equal right to judge for itself" whether duly enacted federal laws are unconstitutional, Mo. Rev. Stat. § 1.410.2(5), and if so, to declare such laws "unauthoritative, void, and of no force," *id.* § 1.410.2(4).[1]  The legislature then purports to find that various federal firearms laws lie beyond the constitutional authority of Congress to "regulate commerce," to "lay and collect taxes," and to otherwise regulate the possession or registration of firearms in any manner deemed inconsistent with the legislature's own interpretation of the United States and Missouri Constitutions.  *Id.* § 1.410.2(6)-(9).

---

[1] Several of H.B. 85's findings are paraphrases of the Virginia and Kentucky Resolutions of 1798, whose claims of state authority to invalidate federal law formed the foundation of pre-Civil War nullification theories in the 19th century as well as States' resistance to federal civil-rights enforcement in the 20th century.  *See, e.g.*, *Encyclopedia of the American Constitution* 1832-33 (Levy & Karst eds., 2d ed. 2000).

4

The cornerstone of H.B. 85 is its declaration of invalidity of five broad categories of federal law. H.B. 85 declares that all "federal acts, laws, executive orders, administrative orders, rules, and regulations" in those five categories "shall be considered infringements on the people's right to keep and bear arms, as guaranteed by [the Second Amendment] and Article I, Section 23 of the Constitution of Missouri, within the borders of this state." *Id.* § 1.420. It further declares that all such federal laws "shall be invalid to this state, shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state." *Id.* § 1.430.

The five categories of federal law "invalid[ated]" by H.B. 85 are:

**(1)** Any tax, levy, fee, or stamp imposed on firearms, firearm accessories, or ammunition not common to all other goods and services and that might reasonably be expected to create a chilling effect on the purchase or ownership of those items by law-abiding citizens;

**(2)** Any registration or tracking of firearms, firearm accessories, or ammunition;

**(3)** Any registration or tracking of the ownership of firearms, firearm accessories, or ammunition;

**(4)** Any act forbidding the possession, ownership, use, or transfer of a firearm, firearm accessory, or ammunition by law-abiding citizens; and

**(5)** Any act ordering the confiscation of firearms, firearm accessories, or ammunition from law-abiding citizens.

*Id.* § 1.420(1)-(5). H.B. 85 defines the term "law-abiding citizen" as any person who is not prohibited by *state* law from possessing firearms. *Id.* § 1.480.1.

5

H.B. 85 then contains numerous provisions that effectuate its asserted invalidation of federal law. First, H.B. 85 prescribes that "[i]t shall be the duty of the courts and law enforcement agencies of this state to protect the rights of law-abiding citizens to keep and bear arms within the borders of this state and to protect these rights from the infringements defined under section 1.420." *Id.* § 1.440. It thus directs state officers to "protect" citizens against the federal laws invalidated by sections 1.420-1.430 and instructs state courts not to apply those laws, notwithstanding the Supremacy Clause's directive that "the Judges in every State shall be bound" by federal law. U.S. Const. art. VI, cl. 2.

Second, H.B. 85 purports to divest all persons and entities, "including" state and local "officer[s] [and] employee[s]," of the authority to enforce those federal laws. Mo. Rev. Stat. § 1.450. Specifically, section 1.450 provides:

> No entity or person, including any public officer or employee of this state or any political subdivision of this state, shall have the authority to enforce or attempt to enforce any federal acts, laws, executive orders, administrative orders, rules, regulations, statutes, or ordinances infringing on the right to keep and bear arms as described under section 1.420.

*Id.* By its terms, that divestment extends even to state officers who have been deputized by the United States to act under color of federal law.

Third, H.B. 85 seeks to induce state agencies' and officials' compliance with those prohibitions by creating two private rights of action against the State's "political subdivision[s]" and "law enforcement agenc[ies]." *Id.*

6

§§ 1.460-1.470.  The first provides that any entity that employs an officer who "knowingly" violates section 1.450 may be held "liable to the injured party" for a penalty of $50,000 "per occurrence," as well as "injunctive relief." *Id.* § 1.460.1.  The second provides that any entity that employs any individual who has ever played any role in enforcing the assertedly invalid federal laws in Missouri shall likewise be liable for penalties of $50,000 "per employee hired" and subject to injunctive relief. *Id.* § 1.470.1.  Specifically, it penalizes employment of any person who "previously acted as an official, agent, employee, or deputy of the government of the United States," or who "otherwise acted under the color of federal law within the borders of this state," and knowingly "[e]nforced or attempted to enforce" any of the federal laws "identified in section 1.420" or "g[a]ve[] material aid and support to the efforts of another who enforces or attempts" those laws. *Id.* § 1.470.1(1)-(2).[2]

To encourage suit under these two provisions, the law authorizes state courts to award successful private plaintiffs their "reasonable attorney's fees and costs," *id.* §§ 1.460.2, 1.470.3; guarantees that "[s]overeign immunity shall not be an affirmative defense," *id.* §§ 1.460.3, 1.470.4; and requires state courts

---

[2] The law contains an expansive definition of the "material aid and support" forbidden by H.B. 85, *see* Mo. Rev. Stat. § 1.480.2, but excludes from liability the provision of aid to federal prosecutors for certain weapons charges that have state-law corollaries provided they are deemed "ancillary" to the federal prosecution.  *See id*. § 1.480.4(1)-(2).  The term "ancillary" is undefined.

7

to promptly adjudicate requests for preliminary relief, *id.* §§ 1.460.1, 1.470.2. Moreover, while section 1.460 allows an "injured" person to sue, section 1.470 authorizes and confers "standing" upon "[*a*]*ny person* residing or conducting business in a jurisdiction who believes that an individual has taken action that would violate the provisions of this section." *Id.* § 1.470.2 (emphasis added).

### 2. Federal Firearms Laws

Congress has long regulated the manufacture, sale, transfer, and possession of firearms in or affecting interstate commerce. Though H.B. 85 does not specifically enumerate the federal laws it purports to invalidate, its categorical pronouncements implicate a wide range of federal statutes, including the National Firearms Act of 1934 as amended, 26 U.S.C. § 5801 *et seq.*, the Gun Control Act of 1968 as amended, 18 U.S.C. § 921 *et seq.*, and their implementing regulations. This federal regulatory scheme is enforced by several federal agencies, including the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Federal Bureau of Investigation (FBI), and the U.S. Marshals Service (USMS), as well as by state and local personnel who are authorized by federal law to assist in federal enforcement. 5 U.S.C. § 3374; 18 U.S.C. §§ 3052, 3107; 21 U.S.C. § 878; 28 U.S.C. §§ 533, 561, 566, 599A; 28 C.F.R. §§ 0.85, 0.111-0.112, 0.130-0.131.

Appellate Case: 23-1457   Page: 20   Date Filed: 08/10/2023 Entry ID: 5304853

The Gun Control Act establishes licensing, marking, transfer, and recordkeeping requirements for firearms transactions and imposes certain prohibitions on firearms possession, all of which may be criminally enforced.[3] The Act provides that any persons who "engage in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition" must receive a license from the Attorney General. 18 U.S.C. § 923(a). Each imported or manufactured firearm must be identified by a serial number and a mark indicating its model, the licensee's name or abbreviation, and the licensee's location. *Id.* § 923(i); 27 C.F.R. § 478.92(a)(1). The Act prohibits anyone other than a licensed importer, manufacturer, or dealer from "engag[ing] in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." 18 U.S.C. § 922(a)(1)(A).

The Gun Control Act also prohibits various categories of persons from possessing firearms or ammunition. These include felons (*i.e.*, any person "convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year"), individuals convicted of misdemeanor crimes of

---

[3] The Gun Control Act applies to all "firearms," defined to include "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3).

Appellate Case: 23-1457    Page: 21    Date Filed: 08/10/2023 Entry ID: 5304853

domestic violence, individuals adjudicated as "mental defective[s]," aliens unlawfully in the United States, unlawful users of controlled substances, and others.  18 U.S.C. § 922(g).

To enforce those prohibitions, federal firearms licensees must maintain records of importation, production, shipment, receipt, sale, or other disposition of firearms.  18 U.S.C. § 923(g)(1)(A); 27 C.F.R. §§ 478.121-478.125. Licensees may not transfer a firearm to an unlicensed person unless they complete a Firearms Transaction Record, ATF Form 4473.  27 C.F.R. § 478.124.  Before such a transaction, the licensee must verify the purchaser's identity and conduct a background check through the National Instant Criminal Background Check System.  18 U.S.C. § 922(t); 27 C.F.R. §§ 478.102, 478.124(c).  Licensees must report the theft or loss of any firearm to both ATF and local law enforcement authorities, and licensees must respond to federal investigators' requests for information concerning the disposition of a firearm.  18 U.S.C. § 923(g)(6)-(7).

The National Firearms Act provides further requirements for certain classes of weapons, including machine guns and certain types of rifles and shotguns, silencers, and "destructive devices."  This Act mandates the registration of these classes of firearms and requires parties who make or

10

transfer those firearms to submit an application and pay tax assessments.
26 U.S.C. §§ 5811-5822, 5841.

**B.    H.B. 85's Effects On Federal Enforcement**

H.B. 85 took full effect on August 28, 2021.  *See* Mo. Rev. Stat.
§ 1.480.5.  The United States thereafter began suffering a variety of harms
directly attributable to the State's adherence to and implementation of H.B. 85.
*See* App. 45-78; R. Doc. 8-2 to 8-5 (evidentiary submissions); App. 25-40;
R. Doc. 1, ¶¶ 34-75 (complaint allegations).

First, many state and local agencies, including the Missouri State
Highway Patrol, limited or rescinded their participation in joint federal-state
partnerships.  ATF's Kansas City Field Division reported that "13—and soon
to be 14—of the 53 state and local officers with federal deputizations" had
"withdrawn from participation in ATF task forces in some capacity" because
of H.B. 85.  App. 49; R. Doc. 8-2, ¶ 15 (Winston Decl.).  These joint task
forces have been "key to holding violent persons and those illegally using
firearms accountable under the law" and to "protecting [the] Missouri
communities" in which they operate.  App. 49-50, R. 8-2, ¶¶ 13, 16 (Winston
Decl.).  Because of the impairment or destruction of these partnerships, ATF
has "no longer [been] able to fulfill its duties as effectively, including

11

preventing, investigating, and assisting in the prosecution of violent offenders."
App. 51; R. Doc. 8-2, ¶¶ 18-19 (Winston Decl.).

Second, the United States has suffered harm from disruption of longstanding information-sharing relationships, both formal and informal. In just the few years prior to H.B. 85's enactment, the National Integrated Ballistic Information Network (NIBIN), a cooperative information-sharing effort between ATF and state and local agencies, had helped law enforcement successfully identify hundreds of suspects and generate thousands of leads for violent-crime investigations in Missouri. Since H.B. 85, however, some state and local agencies stopped inputting data or following up on NIBIN leads, while others will input data only after procedures that compromise the timeliness of the information provided. App. 53-54; R. Doc. 8-2, ¶¶ 24-28 (Winston Decl.). Similarly, the Missouri Information Analysis Center, an expert agency that previously served as a reliable "partner and resource for ATF investigations," ceased providing investigative support to ATF, including by withholding background information on investigative targets and declining to submit firearms trace requests to ATF. App. 52; R. Doc. 8-2, ¶ 22 (Winston Decl.).

Third, H.B. 85 has affected the federal government's relationships with regulated parties, members of the public, and its own employees. Many

12

federal firearms licensees, whose cooperation is "critical in the fight against gun violence," began expressing confusion about how H.B. 85 affected their federal rights and obligations, requiring ATF to direct resources toward resolving this confusion. App. 56; R. Doc. 8-2, ¶¶ 37-38 (Winston Decl.). Federal agents reasonably fear that private citizens purportedly acting in reliance on H.B. 85 could "s[eek] to oppose ATF's lawful authority," posing an "unacceptable and unnecessary risk of violent confrontation, use of force, and serious injury." App. 57; R. Doc. 8-2, ¶ 39 (Winston Decl.). And H.B. 85's civil-penalty provisions risk "undermin[ing] current federal officers' willingness to enforce federal firearm laws" and "make[] becoming a federal officer less attractive by limiting those officers' future job prospects." Add. 37; R. Doc. 1, ¶ 68.

H.B. 85 has also increased dangers in the field. The USMS and other agencies have found it substantially more difficult to cooperate with state and local counterparts to apprehend wanted criminals, even in cases where firearms offenses are not initially implicated. For example, in some fugitive operations, state or local officers initially agreed to participate, but then disengaged at the scene upon the discovery of a firearm—a withdrawal that jeopardizes the safety of other task-force members. *See, e.g.*, App. 61-63; R. Doc. 8-3, ¶¶ 8-13 (Jordan Decl.); App. 68-71; R. Doc. 8-4, ¶¶ 12-19 (Stokes

13

Decl.).  And the USMS has learned of instances where state officers have refused to refer persons to federal authorities, such as a traffic stop where a MSHP trooper knowingly released a federal fugitive rather than risk violating H.B. 85.  In such instances, the USMS then has to expend additional resources to locate and detain the fugitives.  App. 69-70; R. Doc. 8-4, ¶ 16 (Stokes Decl.).

**C.  Procedural History**

**1.**  After months of suffering these effects, in February 2022, the United States brought this suit to enjoin the State and its officials from further implementation and enforcement of H.B. 85.  App. 17-44; R. Doc. 1 (Compl.).[4]  The United States alleged that H.B. 85 is invalid as an attempted nullification of federal law, is preempted by federal law, and infringes the doctrine of intergovernmental immunity, all in violation of the Supremacy Clause.  App. 41-42; R. Doc. 1, ¶¶ 76-87.

---

[4] Two other lawsuits challenging H.B. 85 are pending in state court.  In June 2021, the City of St. Louis and two counties brought a pre-enforcement declaratory action contesting H.B. 85's constitutionality under both federal and state law.  The trial court initially declined to exercise jurisdiction, but the Missouri Supreme Court reversed.  *City of St. Louis v. State*, 643 S.W.3d 295, 297, 302 (Mo. banc 2022).  On remand, the plaintiffs moved for summary judgment, but the trial court stayed the State's obligation to respond until after the close of discovery, which remains ongoing.  *See City of St. Louis v. State*, No. 21AC-CC00237-01 (Mo. 19th Cir. Ct.).  In January 2022, the City of Arnold brought suit seeking a declaration that H.B. 85 is not properly construed to forbid certain forms of cooperation with federal law enforcement.  The parties are still litigating the threshold issue of venue.  *See City of Arnold v. State*, No. 22JE-CC00010 (Mo. 19th Cir. Ct.).

The United States named three defendants—the State of Missouri, its Governor, and its Attorney General—against whom it sought declaratory and injunctive relief. App. 20-21, 42-43; R. Doc. 1, ¶¶ 15-17. The State, which may be sued directly by the United States, "includes all of its officers, employees, and agents." App. 20; R. Doc. 1, ¶ 15; *cf. United States v. Mississippi*, 380 U.S. 128, 140 (1965). The Governor, as "Missouri's chief executive officer," "oversees all of Missouri's executive agencies" bound by H.B. 85, "including the Department of Public Safety and the Missouri State Highway Patrol." App. 20-21; R. Doc. 1, ¶ 16. And the Attorney General, "Missouri's chief legal officer," is vested with multiple forms of authority to enforce Missouri law, App. 21; R. Doc. 1, ¶ 17, including to commence "civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state," Mo. Rev. Stat. § 27.060.

**2.** The United States sought summary judgment, supported by evidence of the numerous harms that Defendants' implementation of H.B. 85 has inflicted. *See supra* pp. 11-14. Defendants filed two motions to dismiss. Defendants did not dispute that they are responsible for implementing H.B. 85 and bound by its terms. Defendants nonetheless argued that the United States lacked standing or a cause of action because it likely would not be a party to any state-court proceedings under H.B. 85's accompanying civil-penalty

15

provisions. On the merits, Defendants did not dispute that States cannot invalidate federal law but sought to recharacterize H.B. 85 as a mere policy statement or direction regarding resource allocation.

**3.** The district court granted summary judgment to the United States and denied Defendants' motions to dismiss. App. 130-153; R. Doc. 88.

As to standing, the court explained that the United States demonstrated "concrete injury" because H.B. 85 has "interfere[d] with the function of federal firearms regulations and public safety objectives." App. 134; R. Doc. 88, at 5. It determined that "[t]he United States' law enforcement operations have been affected" by withdrawals from participation "in joint federal-state task forces, restrictions on sharing information, confusion about the validity of federal law in light of [H.B. 85], and discrimination against federal employees and those deputized for federal law enforcement who lawfully enforce federal law." *Id.* The court concluded that those harms are traceable to the State and its officials, App. 134-35; R. Doc. 88, at 5-6, and that enjoining them from further implementation and enforcement of H.B. 85 would redress the United States' injuries, App. 135-36; R. Doc. 88, at 6-7.

The district court specifically rejected Defendants' assertion that they "do not enforce" H.B. 85 and thus cannot be sued. App. 133; R. Doc. 88, at 4. It explained that H.B. 85 plainly requires state officials "to cease enforcement

16

of federal firearms regulations deemed infringements under § 1.420 and imposes a duty on state courts and state law enforcement agencies to protect citizens against the infringements identified."  App. 135; R. Doc. 88, at 6.  And in addition to being subject to those same duties, the two other named defendants—the Governor and Attorney General—may play further roles in enforcing H.B. 85, such as through removing officials from office or filing civil suits.  *Id.* (citing Mo. Rev. Stat. §§ 1.020(12), 27.060, 106.220).

On the merits, the district court concluded that H.B. 85's "'cornerstone' provision, § 1.420," which declares invalid five categories of federal law, is facially unconstitutional.  App. 142; R. Doc. 88, at 13.  The court explained that H.B. 85 "is an unconstitutional 'interposition' against federal law and is designed to be just that."  App. 143; R. Doc. 88, at 14 (brackets omitted) (quoting *United States v. Louisiana*, 364 U.S. 500, 501 (1960) (per curiam)).  "Though § 1.420 purports to invalidate substantive provisions of the [National Firearms Act] and the [Gun Control Act] within Missouri, such an act is invalid under the Supremacy Clause."  App. 144; R. Doc. 88, at 15.

The district court also found section 1.420 and related provisions invalid under preemption principles.  App. 145-148; R. Doc. 88, at 16-19.  "By attempting to alter the definition of a 'law-abiding citizen' who may possess or own or transfer or use a firearm within Missouri," and by "purporting to

17

invalidate federal registration and tracking requirements," H.B. 85 conflicts directly with provisions of both the Gun Control Act and the National Firearms Act. App. 147-148; R. Doc. 88, at 18-19.

The district court further concluded that all of H.B. 85's "substantive provisions" were unconstitutional under the doctrine of intergovernmental immunity, which prevents states from "sing[ling] out the Federal Government 'for less favorable treatment.'" App. 150; R. Doc. 88, at 21 (quoting *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022)). The court emphasized that "[w]hile Missouri cannot be compelled to assist in the enforcement of federal regulations within the state," it also "may not regulate federal law enforcement or otherwise interfere with its operations." *Id*. Yet H.B. 85 "effectively imposes an affirmative duty to effectuate an obstacle to federal firearms enforcement within the state." App. 151; R. Doc. 88, at 22.

In addition, the district court held that "§§ 1.460 and 1.470"—H.B. 85's auxiliary civil-penalty provisions—are "independently invalid as discriminatory against federal authority." App. 151; R. Doc. 88, at 22. In particular, by expressly penalizing any hiring of former federal employees involved in enforcing federal firearms laws, *see* Mo. Rev. Stat. § 1.470, the statute is "likely to discourage federal law enforcement recruitment efforts." App. 152; R. Doc. 88, at 23.

Appellate Case: 23-1457    Page: 30    Date Filed: 08/10/2023 Entry ID: 5304853

The district court then determined that H.B. 85 is invalid "in its entirety." App. 148; R. Doc. 88, at 19; *see also* App. 152; R. Doc. 88, at 23. All of H.B. 85's "other provisions are rendered meaningless without th[e] definition" of "infring[ing]" federal law set forth in section 1.420. App. 149; R. Doc. 88, at 20. And given the centrality of section 1.420 to H.B. 85 as a whole, "it cannot be said that the legislature would have enacted [the statute] had it known that § 1.420 was unconstitutionally invalid." *Id.*

The district court entered declaratory and injunctive relief against the named Defendants. It declared that H.B. 85 is "unconstitutional in its entirety as violative of the Supremacy Clause" and that "State and local law enforcement officials in Missouri may lawfully participate in joint federal task forces, assist in the investigation and enforcement of federal firearm crimes, and fully share information with the Federal Government" without regard to H.B. 85. App. 153, R. Doc. 88, at 24. And it enjoined "[t]he State[] of Missouri and its officers, agents, and employees and any others in active concert with such individuals … from any and all implementation and enforcement of H.B. 85." *Id.*; *see* App. 154; R. Doc. 89, at 1 (Judgment).

Defendants appealed and sought an immediate stay of the district court's judgment. The district court denied the stay but granted an administrative stay

19

pending resolution of an appellate stay motion.  That motion currently remains pending before this Court.

## SUMMARY OF ARGUMENT

Missouri H.B. 85 improperly purports to declare federal firearms laws invalid and requires state and local officials to act accordingly.  Because this law violates the United States Constitution and inflicts substantial, immediate harms on federal law-enforcement interests, the United States brought suit to enjoin the statute.  The district court properly reached the merits, determined that the state enactment is plainly unconstitutional, and enjoined Defendants from its further implementation.

**I.**  The United States has standing and authority to sue Defendants. As reflected in uncontested evidentiary submissions, the State's ongoing implementation of H.B. 85 has injured the United States in numerous ways, including by limiting resources available for federal law enforcement; depriving federal agencies of essential investigative information; prohibiting or penalizing the exercise of federal authority by federally deputized officials or former federal employees; interfering with the United States' relationships with regulated parties and the public; and formally denying recognition of federal law.  And the United States has a well-established right to sue for those harms.

20

Nearly all of Defendants' contrary arguments rest on the mistaken premise that this is a pre-enforcement lawsuit. The United States brought this suit not because it fears the consequences that might follow if H.B. 85 is violated but, rather, because Missouri officials are currently obeying H.B. 85 and that compliance has caused ongoing injury. That implementation is attributable not only to the Governor and Attorney General but to the State itself, which is a proper defendant that enjoys no immunity from suit here.

**II.** H.B. 85 is patently unconstitutional. Because the Supreme Court—not each State—is the ultimate expositor of the Constitution, state legislatures lack the authority to declare federal law invalid. Even beyond its improper act of nullification, H.B. 85's terms are preempted by federal law and improperly discriminate against federal authority. H.B. 85 is not purely declaratory but rather expressly imposes duties, prohibitions, and penalties on state agencies and officials. That the federal government cannot commandeer state officials to enforce federal law does not authorize States to enact statutes that violate the Supremacy Clause.

The district court properly enjoined Defendants from implementation and enforcement of H.B. 85 in its entirety. Everything in the statute depends upon its unconstitutional cornerstone declaring federal laws to be invalid. Without that declaration, the remainder of the law "would have no practical or

21

legal effect." App. 149; R. Doc. 88, at 20. The court's injunction does not impermissibly operate on "the law itself" but, rather, binds Defendants responsible for H.B. 85's implementation and enforcement and who have undeniably been carrying it into effect.

## STANDARD OF REVIEW

Questions of law are reviewed de novo. *See, e.g.*, *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). The issuance of a permanent injunction is reviewed for abuse of discretion. *Laredo Ridge Wind, LLC v. Nebraska Pub. Power Dist.*, 11 F.4th 645, 649 (8th Cir. 2021).

## ARGUMENT

## I. THE UNITED STATES HAS BOTH STANDING AND AUTHORITY TO SUE.

### A. The United States Has Standing To Redress Existing Harms To Its Law Enforcement And Other Sovereign Interests.

**1.** To establish Article III standing, the plaintiff "must have suffered an 'injury in fact'"; that injury must be "fairly traceable to the challenged action of the defendant"; and it must be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations omitted). In evaluating those factors, the Court assumes the plaintiff will prevail on the merits. *See, e.g.*, *American Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016). Each factor is readily satisfied here.

22

*Injury in Fact.* As the district court found, the United States has suffered multiple kinds of Article III injury from the State's implementation of H.B. 85. These include not only numerous real-world harms to federal law enforcement but also other concrete injuries to the United States' sovereign interests.

The United States sustains "injury … arising from violation of its laws," *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000), and indisputably has standing to invoke federal jurisdiction to penalize such violations, *id.*; *see also, e.g.*, *City of Kansas City v. Yarco Co.*, 625 F.3d 1038, 1040-41 (8th Cir. 2010). The United States has concomitant interests in the efficacy and integrity of the methods it uses to investigate and prosecute such non-compliance. *See, e.g.*, *United States v. Supreme Ct. of N.M.*, 839 F.3d 888, 899 (10th Cir. 2016) (recognizing "United States's interest in the 'effective conduct of federal criminal investigations and prosecutions'"). H.B. 85 has directly impaired those interests in several ways.

First, because of H.B. 85, numerous state and local law-enforcement agencies and officials have substantially restricted participation in (or withdrawn entirely from) joint federal-state task forces—task forces that have proven vital to combat violent crime in Missouri. *See* App. 45-71, R. Docs. 8-2, 8-3 & 8-4 (Winston, Jordan & Stokes Decls.). Those actions have indisputably reduced the resources available for federal enforcement. Just as a

23

State may be injured by threatened withdrawals of federal assistance, the United States suffers injury in fact when a State withdraws its resources from cooperative efforts. *Cf., e.g.*, *Florida ex rel. Att'y Gen. v. U.S. Dep't of Health & Human Servs.*, 648 F.3d 1235, 1243 (11th Cir. 2011) (recognizing state standing to challenge changes to Medicaid program), *rev'd on other grounds by National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012).

Second, the United States has suffered injury from substantial disruptions to previously longstanding information-sharing relationships. For federal and state law enforcement alike, the utility of tools like NIBIN is undermined by the absence of complete and timely data to that system. *See supra* p. 12. The Missouri Information Analysis Center, previously a reliable "partner and resource for ATF investigations," ceased assistance to ATF. App. 52; R. Doc. 8-2, ¶ 22 (Winston Decl.). This loss of investigative information and support impairs the efficacy of federal law enforcement, in turn impairing the United States' ability to protect the public at large.

Third, H.B. 85 constrains and discourages the exercise of authority by persons acting under federal law. Since H.B. 85, many state and local officers who possess formal deputizations of federal authority—deputizations that H.B. 85 does not itself forbid—have been instructed that they are nevertheless forbidden from taking action to enforce specified federal laws, even while

24

acting in a federal capacity. *See, e.g.*, App. 61-63; R. Doc. 8-3 (Jordan Decl.); App. 68-71; R. Doc. 8-4 (Stokes Decl.). The United States is injured when a State purports to instruct officials not to enforce their federal authority. And it is likewise injured when a State interferes with recruitment or supervision of federal employees by "affix[ing] penalties to acts done under the immediate direction of the national government," *Tennessee v. Davis*, 100 U.S. 257, 263 (1879), threatening both to chill current officers' enforcement efforts and to undermine other individuals' willingness to enter federal service in the future.

Fourth, the State's implementation of H.B. 85 has engendered public confusion that, in turn, imposes material costs and risks on federal agencies and officials. Federal firearms licensees, whose cooperation is critical in federal and state criminal investigations, have expressed confusion about how H.B. 85 affects their legal obligations, requiring ATF to divert resources in response. App. 56; R. Doc. 8-2, ¶ 37 (Winston Decl.). Moreover, private citizens acting in mistaken reliance on H.B. 85's declaration of invalidity could "s[eek] to oppose ATF's lawful authority," posing an "unacceptable and unnecessary risk of violent confrontation, use of force, and serious injury." Add. 57; R. Doc. 8-2, ¶ 39 (Winston Decl.). Such mistaken understandings have already repeatedly manifested in federal court, where numerous litigants have attempted to invoke H.B. 85 as a defense to federal criminal liability, a

basis for excluding state officers' testimony, or as grounds for habeas or other relief.[5]

Finally, H.B. 85 injures the United States in more fundamental ways. The federal government, like each State, has cognizable "sovereign interests" not only in its "power to create and enforce a legal code, both civil and criminal" but also in "recognition [of that code] from other sovereigns." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). By declaring that federal law "shall not be recognized by this state," Mo. Rev. Stat. § 1.430, and directing its courts and agencies to act on the premise that federal law is invalid, *id.* §§ 1.440-1.450, H.B. 85 directly impairs the United States' sovereign interest in the recognition of its laws and the preservation of our Nation's federal structure. *Cf. Arizona v. United States*, 567 U.S. 387, 398 (2012) ("Federalism, central to the constitutional design, adopts the principle

---

[5] *See, e.g.*, *Halliday v. Jensen*, No. 4:21-cv-1397, 2022 WL 3541680 (E.D. Mo. Aug. 18, 2022) (civil suit against federal prosecutors); *United States v. Mitchell*, No. 4:21-cr-177 (E.D. Mo. Aug. 31, 2022), Dkt. No. 88 (motion in limine); *Robinson v. United States*, No. 4:23-cv-707 (E.D. Mo. May 30, 2023) (motion to vacate conviction under § 2255); *Wingo v. United States*, No. 4:22-cv-726 (E.D. Mo. July 7, 2022) (same); *United States v. Ganaway*, No. 4:20-cr-271, 2022 WL 1617266 (E.D. Mo. May 23, 2022) (motion to dismiss indictment); *United States v. Thomas*, No. 4:20-cr-825, 2022 WL 1004828 (E.D. Mo. Mar. 29, 2022) (same); *United States v. Gilliam*, No. 4:19-cr-266, 2022 WL 571540 (W.D. Mo. Feb. 3, 2022) (same).

Appellate Case: 23-1457   Page: 38   Date Filed: 08/10/2023 Entry ID: 5304853

that both the National and State Governments have elements of sovereignty the other is bound to respect.").

*Causation*.  All of these injuries flow from Defendants' implementation of H.B. 85.  The conduct of state employees acting in their official capacities is attributable to the State, which is properly sued in its own name.  *See United States v. Mississippi*, 380 U.S. 128, 140 (1965) (States enjoy no immunity from suit by the United States); *Alden v. Maine*, 527 U.S. 706, 755-56, 759-60 (1999) (same).  The Governor—who has supervisory authority over state executive agencies—and the Attorney General—who is the State's chief legal officer— likewise share responsibility for the State's ongoing implementation of H.B. 85, but in any event are necessarily subsumed by the suit against the State itself.

*Redressability*.  The United States' injuries are redressed by the district court's judgment.  Under that judgment, the State of Missouri and its agents and officials are barred from "any and all [further] implementation and enforcement of H.B. 85," App. 153; R. Doc. 88, at 24, thereby restoring the ability of state and local officers to "lawfully participate in joint federal task forces, assist in the investigation and enforcement of federal firearm crimes, and fully share information with the Federal Government without fear of H.B. 85's penalties," *id.*  To establish redressability, it suffices that relief is likely as

27

to even just one "discrete injury," *281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011); here, the judgment provides much broader relief.

**2.** Defendants identify no error in this straightforward logic. They do not dispute that H.B. 85 has had one or more concrete effects on the efficacy of federal law enforcement; that the State's adherence to H.B. 85 is responsible for those effects; and that a judgment eliminating H.B. 85's barriers to voluntary cooperation would provide redress for the United States' harms.

Instead, Defendants' principal attack is upon a pre-enforcement standing theory on which the United States has not relied. One way a person who disputes a statute's constitutionality may establish standing is by demonstrating that he or she "inten[ds] to engage in a course of conduct … proscribed by [the] statute" and fears "a credible threat of prosecution thereunder." *Missouri v. Yellen*, 39 F.4th 1063, 1068 (8th Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). In such a suit, the claimed injury is a future one—the likelihood of enforcement action being taken against the plaintiff for engaging in prohibited conduct.

This is not a pre-enforcement suit. The United States has already sustained injury and is continuing to do so. Its injuries are traceable not merely to threats of future enforcement against state agencies but rather to the State's "official conduct" in implementing H.B. 85. *O'Shea v. Littleton*,

28

414 U.S. 488, 493-94 (1974). Indeed, the more faithfully that state and local agencies implement H.B. 85, the greater the harm to the United States. This infringement upon federal interests is "sufficient to give [the United States] a standing in court." *In re Debs*, 158 U.S. 564, 584 (1895).

That standing need not depend upon any threat that federal officials could be defendants in some future enforcement proceeding. Indeed, even if a state law carries no express enforcement mechanism—*i.e.*, if it is "enforced" only through its faithful implementation by state officials—the United States can establish standing if operation of the law itself causes injury. Here, however, the existence of H.B. 85's accompanying civil-penalty scheme only increases the pressure on state and local agencies to comply with the law, thereby reinforcing—not undermining—the United States' standing to sue.

Importantly, the State of Missouri itself is a Defendant. A State may properly be subjected to "in personam" jurisdiction (Br. 23) unless it has immunity from suit. No such immunity exists here, as "[t]he consent of the States to suit by the United States" is both "inherent in the plan of the constitutional convention" and "necessary to the permanence of the Union." *United States ex rel. Zissler v. Regents of Univ. of Minn.*, 154 F.3d 870, 872-73 (8th Cir. 1998) (alterations and quotation marks omitted); *see also, e.g.*, *Alden*, 527 U.S. at 755; *Mississippi*, 380 U.S. at 140; *United States v. Texas*, 143 U.S.

29

621, 646 (1892). Courts regularly adjudicate lawsuits by the United States to challenge state legislative enactments or executive actions without requiring any showing that the State has threatened to undertake enforcement action against the United States or its officials. *See, e.g.*, *Arizona*, 567 U.S. 387; *United States v. Missouri*, 535 F.3d 844, 846 (8th Cir. 2008); *United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013); *United States v. Alabama Dep't of Mental Health*, 673 F.3d 1320 (11th Cir. 2012).

Defendants' assertion that the State is not "a proper defendant" because a State can act only through its officials (Br. 23-24) is irreconcilable with fundamental precepts establishing the legal personhood of political entities and other juridical persons. Even "entities" can be enjoined to "prevent[] [them] from acting unconstitutionally." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see* Fed. R. Civ. P. 65(d)(2) (providing that an injunction binds not only named parties but also, upon notice, "the parties' officers, agents, servants, employees, and attorneys"). Federal courts thus can and do enjoin States directly. *See, e.g.*, *United States v. Texas*, 340 U.S. 900 (1950); *Pennsylvania v. West Virginia*, 262 U.S. 623, 624 (1923); *United States v. Alabama*, 443 F. App'x 411, 420 (11th Cir. 2011); *United States v. Arizona*, 703 F. Supp. 2d 980, 1008 (D. Ariz. 2010), *aff'd*, 641 F.3d 339 (9th Cir. 2011), *aff'd in part and rev'd in part*, 567 U.S. 387 (2012).

Appellate Case: 23-1457    Page: 42    Date Filed: 08/10/2023 Entry ID: 5304853

Defendants' related assertion that the United States "does not have standing to enjoin a Missouri statute that only applies to Missouri governmental entities," Br. 17, is similarly inconsistent with fundamental principles. "[S]tanding is not precluded" simply because a plaintiff is not the directly regulated party, though it may sometimes be "'more difficult' to establish" in those circumstances. *Lujan*, 504 U.S. at 561-62. Here, however, the federal laws enacted by Congress are the obvious "object" of H.B. 85's duties, prohibitions, and penalties, *id.*, and the United States' harms are directly traceable to Defendants' actions.

The Supreme Court's decision in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), bears no relevance here. That decision concerned a pre-enforcement suit brought by private plaintiffs, and the Texas statute at issue did not impose any duties or prohibitions upon state officials analogous to those here. The United States brought its own suit against Texas founded on distinct theories of sovereign injury, but the only court to issue any reasoned decision in that suit held that the United States had standing to challenge Texas's effort to nullify federal constitutional guarantees. *United States v. Texas*, 566 F. Supp. 3d 605, 633-55 (W.D. Tex.), *cert. dismissed*, 142 S. Ct. 522 (2021). Contrary to Defendants' suggestion (Br. 30), the Fifth Circuit did not hold that the United States lacked standing, *see United States v. Texas*, No. 21-50949, 2021

31

WL 4786458 (5th Cir. Oct. 14, 2021) (per curiam),[6] and the Supreme Court likewise declined to reach that question, *see Texas*, 142 S. Ct. 522. In any event, any doubts about the propriety of the United States' suit challenging Texas SB8 are irrelevant here, because H.B. 85 indisputably imposes obligations directly upon the State and its officials.

The Supreme Court's holding in *California v. Texas*, 141 S. Ct. 2104 (2021), likewise casts no doubt upon the United States' ability to sue in cases of manifest injury. At issue there was a private mandate to purchase health insurance that, as Defendants note, was later "amended by Congress to eliminate any enforcement mechanism" (Br. 19), so the challenged mandate was not being implemented. The Supreme Court held that the plaintiff States lacked standing because they did not—and necessarily could not—identify any extant real-world harms or credible threat of future enforcement. Here, by contrast, H.B. 85 has duly been implemented, thus injuring the United States.

**3.** Given that the State itself may be sued and enjoined, most of Defendants' remaining arguments are irrelevant. But they are also wrong on their own terms, because they rest on a fundamentally incorrect assumption that Article III permits suit against state officials only if those officials possess

---

[6] The Fifth Circuit instead summarily entered a stay "for the reasons stated" in prior rulings in *Whole Woman's Health* and without addressing the United States' standing and authority to sue. *Texas*, 2021 WL 4786458, at *1.

"enforcement" authority in the narrow sense of power to commence a coercive criminal or civil proceeding. *See McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018) (explaining that suits in equity are not "limited to [enjoining] 'enforcement actions' by state officials").

It is true that where a plaintiff's claimed injury is the threat of future penalty or other enforcement action, Article III demands that the plaintiff sue the person who would be responsible for inflicting that future injury. The case on which Defendants principally rely, *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015), illustrates this principle. There, a private plaintiff brought a pre-enforcement suit seeking to shield itself from liability for violating a statute prohibiting use or sale of license-plate-reader technologies. Standing was lacking because the alleged injury—the threat of future enforcement—was attributable solely to potential private plaintiffs, not to any government officials. This Court explained that "[w]hen a plaintiff brings a pre-enforcement challenge," the causation element of standing requires the named defendant "to possess authority to enforce the complained-of provision." *Id.* at 957-58 (quotation marks omitted)

But suits against state officials may proceed for other types of constitutional injury beyond threats of future enforcement. For example, the doctrine of *Ex parte Young* allows "a private party [to] sue a state officer in his

33

official capacity" to enjoin *any* "prospective *action that would violate federal law*," not just a future enforcement proceeding. *Church v. Missouri*, 913 F.3d 736, 747 (8th Cir. 2019) (emphasis added) (quoting *281 Care*, 638 F.3d at 632); *see also Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002).

In *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017), for instance, after explaining that a state official must have "some connection to the enforcement of the challenged laws," this Court held that a plaintiff "plainly ha[d] standing to sue the [state highway patrol] superintendent" because her directive to "*implement* the statute by conducting vehicle inspections cause[d] [the plaintiff's] injury." *Id.* at 869-70 (emphasis added). Indeed, this Court has explained that a state official may be sued even if she does not have "*primary authority* to enforce the challenged law," but instead related forms of authority. *Church*, 913 F.3d at 748 (emphasis added) (quoting *281 Care*, 638 F.3d at 632). Defendants' repeated assertion that H.B. 85 is "enforced only by private civil actions" (Br. 13) thus fails to recognize that courts understand that "enforce[ment]" of a law includes its direct implementation. *See, e.g.*, *Curling v. Secretary of Georgia*, 761 F. App'x 927, 932 n.3 (11th Cir. 2019) (rejecting distinction between "'enforcing the law' (in the sense of administering it) and 'enforcing the law' (in the sense of prosecuting someone)'" because "[b]oth actions can cause harm if they are done in a manner that flouts federal law").

34

Once Defendants' artificially narrow view of "enforcement" is rejected, Defendants' assertions that the Governor and Attorney General lack relevant legal authority necessarily fail. The Governor, as the State's chief executive, and the Attorney General, as the State's chief legal officer, are the officials ultimately responsible for overseeing the State's compliance with its laws. They thus have direct responsibility for implementing H.B. 85's "statutory scheme [to] limit[] Missouri law enforcement activities" (Br. 4). Though a Governor's executive duties may not necessarily render him a proper defendant in a pre-enforcement suit premised on fears of prosecution, *cf. Calzone*, 866 F.3d at 870, they are sufficient where, as here, the injury arises from implementation of a law regulating the state's executive branch itself.

Even under a more circumscribed view of "enforcement," however, the Governor and Attorney General are proper defendants because they have multiple means available to compel adherence to H.B. 85. *See* App. 135; R. Doc. 88, at 6. The Governor may remove appointed state officials when "necessary for the betterment of the public service," Mo. Rev. Stat. § 106.010, and county and municipal officials can be removed for "knowingly or willfully fail[ing] or refus[ing] to do or perform any official act or duty" required by state law, *id.* § 106.220. The Attorney General is authorized to "institute, in the name and on the behalf of the state, all civil suits and other proceedings at

35

law or in equity requisite or necessary to protect the rights and interests of the state" and to "enforce any and all rights, interests or claims." *Id.* § 27.060. Moreover, H.B. 85 allows "[a]ny person," including the Attorney General, to seek injunctive relief or penalties against political subdivisions or State agencies that "knowingly employ[]" any individual who has participated in enforcing relevant federal laws or "[g]iven material aid and support" to another who does. *Id.* § 1.470.1-2.

**4.** Defendants' remaining attacks on standing are equally unpersuasive. Defendants theorize that the United States has not been harmed because it continues to prosecute federal crimes in Missouri (Br. 45-51) and because some entities have continued "input[ting] data into NIBIN" (Br. 45). But Defendants do not dispute that adherence to H.B. 85 by other state entities has made the United States' enforcement efforts more difficult. Even partial implementation of H.B. 85 has proven sufficient to cause substantial injury.

Defendants' efforts to disclaim any direct application by H.B. 85 to the United States are both incomplete and insufficient to eliminate the United States' injuries. Defendants assert that section 1.450, which provides that "[*n*]*o entity or person* … shall have the authority to enforce or attempt to enforce any federal acts[ or] laws … as described under section 1.420," Mo. Rev. Stat. § 1.450 (emphasis added), should be construed not to apply to federal agencies

36

and employees.  Br. 53 & n.5.  That interpretation may mitigate one of the many problems with H.B. 85, though it is the Missouri Supreme Court—not Defendants—who has authority to impose a narrowing construction.  But even if Defendants' preferred construction were adopted by that Court in some future case, H.B. 85 would nonetheless continue to impermissibly regulate the exercise of federal authority by preventing federally deputized officials from enforcing federal law.  And, as discussed, the United States is injured by the State's own adherence to H.B. 85, not simply by the threat that the statute could be construed to apply to federal officials.

Defendants' assertion that the United States lacks a "legally protected interest" in the efficacy of federal law enforcement in Missouri (Br. 14) likewise fails at multiple levels.  Their assertion that H.B. 85 is not unlawful because it permissibly "direct[s] state officials not to enforce certain federal laws" (*id.*) goes to the merits, which the Court must assume in the United States' favor when assessing standing.  *See American Farm Bureau Fed'n*, 836 F.3d at 968 (refusing to "conflate[] the requirements of standing with the merits").  And assuming on the merits that the State lacks authority to issue directives on the premise that federal law is unconstitutional, the State cannot seriously contend that injuries caused by that unlawful action are not judicially cognizable.  Rather, just as a State suffers legally cognizable injury through the

37

threatened withdrawal of federal resources that are not themselves constitutionally compelled, *see Florida*, 648 F.3d at 1243, so too is the federal government injured by a corresponding deprivation.

Finally, Defendants mistakenly urge that the United States has not established redressability because it is "state and local law enforcement" who would "receive th[e] benefit" of the law's invalidation, since they would no longer face suit under sections 1.460-1.470. Br. 14. As already discussed, H.B. 85 does not simply create a private cause of action, but rather imposes direct obligations on the State itself. The United States' standing is not based narrowly on some threat of future enforcement—it is based on the State's implementation of H.B. 85. And in any event, the fact that the State's own agencies would benefit from the injunction (Br. 14, 30) hardly precludes the United States from obtaining redress as well.

In any event, even if H.B. 85 had contained nothing more than the private rights of action in sections 1.460-1.470, the United States still would have standing. The United States properly alleged—and the district court held—that those provisions violate principles of intergovernmental immunity, which prohibit States from "discriminat[ing] against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990). Such discrimination in itself causes injury to the United States'

38

sovereign interests.  A State cannot flout that constitutional prohibition by creating a private right of action to sue persons "with whom [the United States] deals," *id.*, then insulate the law from challenge by disclaiming all responsibility for enacting or enforcing it.

## B.    The United States May Sue In Equity.

Defendants fare no better in seeking to deny the United States' authority to sue.  The Supreme Court has broadly recognized a nonstatutory cause of action in equity "to sue to enjoin unconstitutional actions by state and federal officers."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

The existence of such a cause of action is particularly clear for the United States.  The Supreme Court long ago recognized that "[e]very government, intrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other."  *Debs*, 158 U.S. at 584.  Both the Supreme Court and this Court thus have repeatedly reaffirmed "the general rule that the United States may sue to protect its interests."  *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201-02 (1967); *see, e.g.*, *United States v. Minnesota*, 270 U.S. 181, 194 (1926) (noting United States' "right to invoke the aid of a court of equity in removing unlawful obstacles to the fulfillment of its obligations"); *Sanitary Dist.*

39

*of Chi. v. United States*, 266 U.S. 405, 425-26 (1925) ("The Attorney General by virtue of his office may bring this proceeding and no statute is necessary to authorize the suit."); *Griffin v. United States*, 168 F.2d 457, 459-60 (8th Cir. 1948) ("The United States may lawfully maintain suits in its own courts … for the purpose of protecting and enforcing its governmental rights and to aid in the execution of its governmental policies.") (quoting *United States v. Fitzgerald*, 201 F. 295, 296-97 (8th Cir. 1912)); *see also, e.g.*, *United States v. City of Jackson*, 318 F.2d 1, 9-14 (5th Cir. 1963).

Exercising that well-established authority, the United States may bring suit against States and localities when necessary to vindicate its federal interests. *See supra* p. 30 (citing cases); *see also, e.g.*, *Washington*, 142 S. Ct. 1976; *United States v. State Water Res. Control Bd.*, 988 F.3d 1194 (9th Cir. 2021); *United States v. California*, 921 F.3d 865, 876 (9th Cir. 2019); *United States v. Board of County Comm'rs*, 843 F.3d 1208 (10th Cir. 2016); *United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010).

In district court, Defendants correctly acknowledged that the United States "has an equitable cause of action that allows federal courts to 'grant injunctive relief against state officers who are violating, or planning to violate, federal law.'" R. Doc. 13, at 13-14 (emphasis omitted) (quoting *Armstrong*, 575 U.S. at 326). That is the cause of action invoked here. Defendants'

40

contrary assertions simply repackage their erroneous arguments about standing.

## II. H.B. 85 IS UNCONSTITUTIONAL AND THE DISTRICT COURT PROPERLY ENJOINED DEFENDANTS FROM IMPLEMENTING OR ENFORCING IT.

The district court correctly concluded that H.B. 85 is unconstitutional because it purports to invalidate federal law, that that unlawful declaration is central to the statute's operation, and that the State and other Defendants may be enjoined from implementing and enforcing the law in its entirety.

### A. State Legislatures May Not Invalidate Federal Law Or Regulate On The Premise That Federal Law Is Invalid.

**1.** The Supremacy Clause declares that the "Constitution[] and the Laws of the United States which shall be made in Pursuance thereof" are "the supreme Law of the Land," the "Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "States have no power … to retard, impede, burden, or in any manner control[] the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the [national] government." *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819).

It follows that state legislatures lack authority to invalidate federal statutes or disregard federal law as interpreted by the U.S. Supreme Court. The Supreme Court has unanimously affirmed the "basic principle that the

41

federal judiciary," not an individual State, "is supreme in the exposition of the law of the Constitution." *Cooper v. Aaron*, 358 U.S. 1, 18-19 (1958). "[S]tate statutes" are unconstitutional if they "have the effect" of "nullify[ing] statutes" duly enacted by Congress. *United States v. Reynolds*, 235 U.S. 133, 149 (1914). Even if a State questions the validity of federal law, any attempt to "interpos[e]" itself against that law "is illegal defiance of constitutional authority." *United States v. Louisiana*, 364 U.S. 500, 501 (1960) (per curiam) (quotation marks omitted).

**2.** H.B. 85 plainly transgresses these principles. Upon mistakenly claiming the authority to declare federal law invalid, *see* Mo. Rev. Stat. § 1.410, the legislature announces that five categories of federal law are "infringements on the people's right to keep and bear arms." *Id.* § 1.420. The legislature then effectuates its determination by formally declaring that "[a]ll [such] federal acts, laws, executive orders, administrative orders, rules, and regulations … shall be invalid to this state." *Id.* § 1.430. It imposes upon State "courts and law enforcement agencies" an affirmative "duty" to "protect" citizens "from the infringements defined under section 1.420." *Id.* § 1.440. It expressly divests all "entit[ies] or person[s], including any public officer or employee of this state," of any "authority to enforce or attempt to enforce" the federal laws "described under section 1.420." *Id.* § 1.450. And to reinforce those

42

obligations, H.B. 85 makes state agencies and political subdivisions subject to penalties and injunctive action not only by "injured" parties, *id.* § 1.460.1, but by "[a]ny person," *id.* § 1.470.2.

Other courts of appeals have had no difficulty in concluding that similar schemes were invalid.  In *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975 (9th Cir. 2013), the Ninth Circuit considered the constitutionality of Montana's "Firearms Freedom Act," which purported to declare that any firearm or ammunition manufactured and remaining in that state "'is not subject to federal law or federal regulation, including registration, under the authority of [C]ongress to regulate interstate commerce.'" *Id.* at 978 (quoting Mont. Code Ann. § 30-20-104).  The court held the statute to be "necessarily preempted and invalid," explaining that it was contrary to binding precedent upholding Congress's constitutional authority to regulate interstate commerce. *Id.* at 982-83.

Similarly, in *United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018), the Tenth Circuit addressed Kansas's "Second Amendment Protection Act," a statute that not only declared that firearms, accessories, and ammunition manufactured in Kansas were "not subject to any federal law, treaty, federal regulation, or federal executive action," but also purported to declare federal firearms laws themselves to be "null, void and unenforceable in the state of

43

Kansas." *Id.* at 1188-89 (quoting Kan. Stat. Ann. §§ 50-1204(a), 50-1206(a)). The criminal defendants in that case urged they had relied in good faith on the state statute, thereby either negating their mens rea or supporting a due-process defense to liability. But the court readily rejected those arguments, explaining that the defendants' belief that the Kansas statute had invalidated federal law was a "mistake of law" and that "allowing state legislatures to estop the federal government from prosecuting its laws would upset the balance of powers between states and the federal government and contravene the Supremacy Clause." *Id.* at 1192, 1194.

**3.** Defendants do not seriously dispute that States may not direct their agencies and officials to treat federal law as invalid. Nor do they seek to defend the legislature's assertion that relevant federal firearms laws are beyond Congress's authority to enact. Defendants instead contend that H.B. 85 is not actually a substantive directive, rather, is better understood as a "policy statement" that is "purely declaratory" and without "operative force" (Br. 12, 19, 53).

That argument cannot be squared with the plain text of H.B. 85. The statute does not merely make abstract findings or declarations but imposes substantive duties, rights, and penalties. Indeed, Defendants themselves acknowledge that H.B. 85 contains "substantive," "enforce[able]" provisions

44

and, moreover, that these provisions depend upon the "infringements listed in § 1.420" for their meaning. Br. 5. "The legislature is presumed to have intended every word, provision, sentence, and clause in a statute to be given effect." *State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 585 (Mo. banc 2018); *see also Emery v. Wal-Mart Stores, Inc.*, 976 S.W.2d 439, 449 (Mo. banc 1998) (per curiam) (affirming that a law should be interpreted to "mean[] what it says"). Defendants' assertion that H.B. 85's act of nullification appears in "declarations and definitions" (Br. 8) cannot immunize it from constitutional scrutiny, where, as here, it is that provision that determines the operative bounds of the law's other, indisputably substantive provisions. *Cf., e.g.*, *Willson v. City of Bel-Noir*, 924 F.3d 995, 1000 (8th Cir. 2019) (holding that the plaintiff could properly challenge "definitional sections" that gave content to Code's other substantive sections); *Neighborhood Enters., Inc. v. City of St. Louis*, 644 F.3d 728, 735 (8th Cir. 2011) (same).

Contrary to Defendants' suggestion (*e.g.*, Br. 15, 18, 42), the Missouri Supreme Court did not hold in *City of St. Louis* that H.B. 85 lacks operative effect. At issue there was not the proper characterization or interpretation of H.B. 85's provisions but, rather, the threshold question whether the municipal plaintiffs could proceed with a declaratory action challenging the law as a

45

whole. *See City of St. Louis v. State*, 643 S.W.3d 295, 296-97 (Mo. banc 2022).[7]
The Court's statement about "legislative findings and declarations" appears
solely in the "Factual and Procedural Background" of its opinion and was not
directed to resolving any contested legal issue. *Id.* at 297. In any event, the
Court itself described the remainder of H.B. 85 as containing "substantive
provisions to *enforce these legislative declarations*." *Id.* (emphasis added). Indeed,
the Court's ultimate holding reflects that H.B. 85 is *not* purely a policy
statement: it found that the statute inflicted substantive injuries for which the
plaintiffs "lack[ed] an adequate remedy at law" and, accordingly, reversed and
remanded to allow the suit to proceed. *Id.* at 302-03.

**4.** Defendants' argument that the Tenth Amendment saves H.B. 85
from invalidation is equally unavailing. In *Printz v. United States*, 521 U.S. 898
(1997), the Supreme Court reaffirmed that Congress cannot "command" a
State to "enforce a federal regulatory program," *id.* at 935, and therefore held
invalid a federal statute that directed "state and local law enforcement officers
to conduct background checks on prospective handgun purchasers," *id.* at 902.

---

[7] The Missouri Supreme Court often emphasizes that its "decisions must
be construed with reference to the facts and issues of the particular case" and
the "authority of [its] decision as a precedent is limited to those points of law
which are raised by the record, considered by the court, and necessary to a
decision." *State v. Russell*, 598 S.W.3d 133, 139 (Mo. banc 2020).

As this Court has recognized, *Printz*'s holding has no direct application where there is "no federal law commanding state regulation" and the case is instead "about state law infringing on rights guaranteed by federal law." *Mille Lacs Band of Chippewa Indians v. Minnesota*, 124 F.3d 904, 928 n.44 (8th Cir. 1997), *aff'd*, 526 U.S. 172 (1999). Just so here—this case involves not the validity of any federal statute but rather "application of the Supremacy Clause's provision that federal law 'shall be the supreme Law of the Land,' enforceable in every state." *New York v. United States*, 505 U.S. 144, 178 (1992).

More generally, nothing in *Printz* purported to authorize what the legislature has done in H.B. 85: declare federal law a nullity, impose a "duty" on state employees to "protect" against federal authority, restrict the ability of deputized federal officials to enforce federal law, and enact civil penalties that interfere with and discriminate against those who exercise federal authority. H.B. 85 is not simply a reallocation or denial of state resources on policy grounds—a type of law that the Missouri legislature has enacted on other occasions.[8] Rather, it is a scheme premised on the asserted power to declare

---

[8] *See, e.g.*, Mo. Rev. Stat. § 115.646 ("No contribution or expenditure of public funds shall be made directly by any officer, employee or agent of any political subdivision … to advocate, support, or oppose the passage or defeat of any ballot measure or the nomination or election of any candidate for public office …."); *id.* § 188.205 ("It shall be unlawful for any public funds to be expended for the purpose of performing or assisting an abortion ….").

47

federal law invalid. Though a State may choose to withdraw assistance from federal enforcement efforts, it cannot purport to invalidate federal statutes or impose duties premised on their invalidity. *See Horne v. Department of Agric.*, 576 U.S. 350, 362 (2015) ("[T]he means [a government] uses to achieve its ends must be 'consist[ent] with the letter and spirit of the constitution.'") (third alteration in original) (quoting *M'Culloch*, 17 U.S. at 421); *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2262 (2020) (invalidating State's elimination of educational program based on erroneous understanding of federal law, even though program itself was not required by federal law).

These principles do not prevent a State from expressing views about federal law. A State remains "free to declare its interpretation of the Second Amendment whether by resolution, statute, or any other method." Br. 20. What a State may *not* do—and what "University of Missouri law professor[s]" likewise have no authority to do (Br. 59)—is to direct state agencies, officials, or other regulated persons to assume duties and obligations premised on the invalidity of federal law. In our federal structure, States may voice opinions about federal statutes, but they may not "interpos[e]" themselves against federal law, *Louisiana*, 364 U.S. at 501; "retard, impede, burden, or in any manner control" the operation of federal law, *M'Culloch*, 17 U.S. at 436; or

48

"discriminat[e] against the Federal Government or those with whom it deals," *Washington*, 142 S. Ct. at 1984.

## B. H.B. 85 Is Also Preempted And Violates Principles Of Intergovernmental Immunity.

**1.** As the district court correctly concluded, even if H.B. 85 were not facially invalid as an attempted nullification of federal law, it also fails under traditional preemption analysis. When a federal law "imposes restrictions … on private actors," but "a state law confers rights … that conflict with the federal law," "the federal law takes precedence." *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018). State law is also preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399-400 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

Here, H.B. 85 impermissibly defines its own class of "law-abiding citizens" entitled to acquire, possess, and transfer firearms free from government regulation. *See* Mo. Rev. Stat. § 1.480.1 (defining "law-abiding citizen" as "a person who is not otherwise precluded *under state law* from possessing a firearm" and who is legally present in the United States) (emphasis added). H.B. 85 purports to invalidate all federal laws that forbid the possession, use, ownership, or transfer of firearms by such "law-abiding

49

citizens." *Id.* § 1.420(4)-(5). Yet there are many persons prohibited from possessing a firearm under federal law who are not subject to parallel restrictions under Missouri law. These include persons convicted of misdemeanor crimes of domestic violence, 18 U.S.C. § 922(g)(9); persons subject to certain restraining orders, *id.* § 922(g)(8); and persons dishonorably discharged from the military, *id.* § 922(g)(6). And Missouri's state-law prohibitions apply only firearms, *see* Mo. Rev. Stat. § 571.070.1, while the federal prohibitions also include ammunition, *see* 18 U.S.C. § 922(g). To the extent H.B. 85 purports to authorize actions expressly forbidden by federal law, it is preempted.

Similarly, H.B. 85 impermissibly purports to confer upon Missouri citizens a right to be free from all "registration or tracking" of firearms. Mo. Rev. Stat. § 1.420(2)-(3). That right is contradicted—and thus preempted—by federal laws requiring registration and transfer approval for the classes of weapons subject to the National Firearms Act. 26 U.S.C. §§ 5802, 5812, 5822. It is also preempted by Gun Control Act provisions requiring or authorizing other forms of recordkeeping and related actions by federal firearms licensees. *See, e.g.*, 18 U.S.C. §§ 923(g)(1)(A), (g)(6), (i).

**2.** H.B. 85 also is preempted and violates intergovernmental-immunity principles by penalizing and discriminating against the exercise of federal

50

authority.  *See Washington*, 142 S. Ct. at 1984 (State may not "discriminat[e] against the Federal Government or those with whom it deals") (quoting *North Dakota*, 495 U.S. at 435).  This discrimination, which pervades H.B. 85, is particularly apparent in its provision penalizing agencies that employ persons who previously enforced any law that H.B. 85 purports to invalidate, even while acting "as an official, agent, employee, or deputy of the government of the United States."  Mo. Rev. Stat. § 1.470.1.  Defendants' assertion that this provision contains "no discrimination" because it "treats state officials similarly to federal officials" (Br. 15-16) overlooks the obvious point that the provision applies only when persons exercise or assist with *federal* authority, and thus plainly discriminates against and seeks to obstruct federal law.

**3.**  Defendants otherwise offer no defense of H.B. 85, instead advancing only a general contention that the district court erred in granting summary judgment (Br. 15, 41-44).  But Defendants do not identify any disputed issues of material fact requiring trial.  Defendants therefore have identified no impediment to the district court's ability to decide this case on the "undisputed facts" (Br. 15) and controlling principles of law discussed above.

**C.    H.B. 85 Is Entirely Invalid.**

The district court properly enjoined Defendants from implementation and enforcement of H.B. 85 in its entirety.

51

**1.** The severability of a state statute is governed by state law. *See, e.g.*, *Shrink Mo. Gov't PAC v. Maupin*, 71 F.3d 1422, 1427 (8th Cir. 1995). Under Missouri law, legislative enactments are presumptively "severable." Mo. Rev. Stat. § 1.140. But if one provision of a statute is found unconstitutional, the "remaining provisions of the statute" are also invalid if they are "so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one" or if "standing alone" they would be "incomplete and … incapable of being executed in accordance with the legislative intent." *Id*. H.B. 85 contains a parallel severability provision: "[i]f any provision of sections 1.410 to 1.485 or the application thereof … is held invalid, such determination shall not affect the provisions or applications … that may be given effect without the invalid provision or application." *Id.* § 1.485.

A court "employs a two-part test to determine whether valid parts of a statute can be upheld despite the statute's unconstitutional parts." *Priorities USA v. State*, 591 S.W.3d 448, 456 (Mo. banc 2020). First, it "considers whether, 'after separating the invalid portions, the remaining portions are *in all respects* complete and susceptible of constitutional enforcement.'" *Id.* (emphasis added) (quoting *Dodson v. Ferrara*, 491 S.W.3d 542, 558 (Mo. banc 2016)).

Even if so, second, the Court "considers whether 'the remaining statute is one that the legislature would have enacted if it had known that the rescinded portion was invalid.'" *Id.* (quoting *Dodson*, 491 S.W.3d at 558).

**2.** As the district court concluded, under either or both parts of that test, H.B. 85 is wholly invalid. *See* App. 149; R. Doc. 88, at 20. All of its provisions are textually, logically, and practically inseparable from its purported invalidation of federal law. The legislature did not in general terms forbid state officials from participating in federal enforcement efforts. Instead, H.B. 85 forbids participation only with respect to the "infringing" laws it declares unconstitutional. The statute directs state courts and law enforcement officials to "protect the rights of law-abiding citizens ... from the *infringements defined under section 1.420*," Mo. Rev. Stat. § 1.440 (emphasis added), and deprives state officials of authority to enforce "any federal acts, laws, executive orders, administrative orders, rules, regulations, statutes, or ordinances *infringing on the right to keep and bear arms as described under section 1.420*," *id.* § 1.450 (emphasis added).

The law's penalty provisions likewise are premised on the invalidity of federal law as declared by H.B. 85. *See* Mo. Rev. Stat. § 1.460.1 (imposing penalties on entities employing persons who violate "the provisions of section 1.450," which bars enforcement of "infringing" federal statutes as defined in

53

section 1.420); *id.* § 1.470.1(1)-(2) (imposing penalties on entities employing persons who have "[e]nforced or attempted to enforce," or who have "[g]iven material aid and support" of enforcing, the "infringements identified in section 1.420"). In other words, H.B. 85 is addressed solely to the subject of "infringing" federal laws, and all of its "provisions are rendered meaningless without [section 1.420's] definition." App. 149; R. Doc. 88, at 20. It is therefore impossible for any other provisions to operate "in all respects" on a "complete[ly]" independent basis. *Priorities USA*, 591 S.W.3d at 456; *see Shrink Mo. Gov't PAC*, 71 F.3d at 1427 (holding Missouri statute invalid in its entirety because remaining statutory subsections were "inextricably intertwined" insofar as they all "make[] some reference to the expenditure limits that we have held unconstitutional"); *Missouri Nat'l Educ. Ass'n v. Missouri Dep't of Labor & Indus. Relations*, 623 S.W.3d 585, 595 (Mo. banc 2021) (holding statute "void in its entirety" where the unconstitutional provision was "essentially and inseparably connected with all other provisions" of the statute).

Moreover, even if the constitutional defect did not pervade the entire statute, there is no indication the legislature would have enacted any part of H.B. 85 as freestanding legislation. *See Priorities USA*, 591 S.W.3d at 456 (inquiring whether "'the remaining statute is one that the legislature would have enacted'"). Here, the legislature's intent was not to prohibit all state

54

involvement in enforcing federal law, but instead to effectuate its purported invalidation of the laws described in section 1.420. The legislature thus assures that "[i]t shall not be considered a violation of [H.B. 85]" if a state officer provides certain "material aid to federal prosecution" for federal firearms violations with sufficiently similar state-law offenses and where the federal violations are deemed "ancillary" to the overall prosecution. Mo. Rev. Stat. § 1.480.4(1)-(2). Though the scope of these provisions is not clear, their presence in the statute illustrates that the legislature's focus was not on allocation of state resources generally but, rather, on invalidating particular federal laws.

**3.** Defendants did not seriously contest severability in district court, presenting their argument only in a footnote. *See* R. Doc. 16, at 10 n.1. On appeal, however, they argue that the district court erred in concluding that H.B. 85 was not severable. But their arguments (Br. 60-64) restate the same erroneous assertions made elsewhere in their brief. Defendants nowhere identify any portions of H.B. 85 that could be implemented as written once it is recognized that the legislature lacks authority to declare federal laws unconstitutional.

Defendants argue that the district court was incorrect in separately reasoning that all of H.B. 85 would fail if its civil-penalty provisions were

Appellate Case: 23-1457    Page: 67    Date Filed: 08/10/2023 Entry ID: 5304853

independently held invalid.  Br. 61-62.  But as Defendants elsewhere acknowledge, the focus of the district court's decision was on the statute's cornerstone provision declaring federal law unconstitutional (section 1.420), which forms the necessary predicate for all of H.B. 85's other provisions. And again, the United States' injury is not traceable solely to the civil penalty provisions.  It therefore makes no difference whether the civil-penalty provisions could, in theory, be separately stricken without disrupting the rest of the law's operations.

### D. The District Court Properly Enjoined Defendants, Not "The Laws Themselves."

Finally, the district court did not abuse its discretion in fashioning relief. The district court declared that H.B. 85 is "unconstitutional in its entirety" and accordingly enjoined "[t]he State[] of Missouri and its officers, agents, and employees and any others in active concert with such individuals … from any and all implementation and enforcement of H.B. 85."  *Id.*; *see also* App. 154; R. Doc. 89, at 1 (Judgment) (same).  As a consequence, "State and local law enforcement officials in Missouri may lawfully participate in joint federal task forces, assist in the investigation and enforcement of federal firearm crimes, and fully share information with the Federal Government" without regard to H.B. 85's prohibitions or penalties.  *Id.*  That is the relief the United States established its standing to seek.

Appellate Case: 23-1457     Page: 68     Date Filed: 08/10/2023 Entry ID: 5304853

That judgment does not, as Defendants inexplicably maintain, "purport" to "enjoin[] the law itself." Br. 12; *cf., e.g.*, Br. i, 14, 18, 20. The injunction by its terms operates on Defendants: "[t]he State[] of Missouri and its officers, agents, and employees," including the Governor and Attorney General. App. 154; R. Doc. 89, at 1. The district court's declaration of H.B. 85's unconstitutionality is not an injunction against the law, but rather, the legal justification for the imposition of injunctive relief. If "a statutory provision is unconstitutional on its face, an injunction prohibiting its enforcement is 'proper.'" *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016). And the Constitution "plainly confers th[e] authority on the federal courts" to "order state officials to comply with federal law" without such an injunction constituting impermissible commandeering. *Dakota, Minnesota & E. R.R. Corp. v. South Dakota*, 362 F.3d 512, 518 (8th Cir. 2004) (quoting *New York*, 505 U.S. at 179); *see also Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253, 256 n.3 (8th Cir. 1995) (similar).

57

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

SAYLER A. FLEMING
*United States Attorney*
*Eastern District of Missouri*

TERESA A. MOORE
*United States Attorney*
*Western District of Missouri*

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

SARAH E. HARRINGTON
*Deputy Assistant Attorney General*

MARK B. STERN
MICHAEL S. RAAB
ABBY C. WRIGHT
*/s/ Jeffrey E. Sandberg*
JEFFREY E. SANDBERG
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*202-532-4453*
*jeffrey.e.sandberg@usdoj.gov*

*Counsel for Plaintiff-Appellee United States of America*

58

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,999 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in 14-point Calisto MT, a proportionally spaced typeface.

Under Circuit Rule 28A(h)(2), I further certify that this brief has been scanned for viruses and is virus-free.

/s/ Jeffrey E. Sandberg
Jeffrey E. Sandberg
*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ Jeffrey E. Sandberg
Jeffrey E. Sandberg
*Counsel for the United States of America*