No. 23-1457

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

STATE OF MISSOURI, ET AL.,
*Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI,
NO. 22-CV-04022, HON. BRIAN C. WIMES, PRESIDING

**BRIEF OF *AMICUS CURIAE* THE MISSOURI COALITION AGAINST
DOMESTIC AND SEXUAL VIOLENCE IN SUPPORT OF PLAINTIFF-APPELLEE
AND AFFIRMANCE OF THE DECISION BELOW**

Lee R. Crain
Mark J. Cherry
Erica Sollazzo Payne
Seton Hartnett O'Brien
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Alexander Southwell
    *Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
asouthwell@gibsondunn.com
Telephone:  (212) 351-3981
Facsimile:  (212) 817-9421

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the Missouri Coalition Against Domestic and Sexual Violence states it is a nonprofit 501(c)(3) organization. The Missouri Coalition Against Domestic and Sexual Violence has no corporate parent and is not owned in whole or in part by any publicly held corporation.

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT .......................................................i

IDENTITY AND INTEREST OF AMICUS CURIAE.............................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................2

ARGUMENT ..................................................................................................5

I. THE SECOND AMENDMENT PRESERVATION ACT WOULD
DEMOLISH CRITICAL PROTECTIONS FOR DOMESTIC
VIOLENCE SURVIVORS......................................................................6

    a. Congress Has Protected Domestic Violence Survivors In
Missouri And Nationwide For Three Decades. ...................................6

    b. The Second Amendment Preservation Act Would Reopen
Missouri's "Domestic Violence Loophole."......................................10

II. INCREASED ACCESS TO FIREARMS MAKES DOMESTIC
VIOLENCE DEADLY.................................................................................15

III. INCREASED ACCESS TO FIREARMS WILL EXACERBATE
MISSOURI'S DOMESTIC VIOLENCE CRISIS. .......................................19

CONCLUSION ................................................................................................21

CERTIFICATE OF COMPLIANCE........................................................................23

CERTIFICATE OF SERVICE ...............................................................................24

Appellate Case: 23-1457    Page: 3    Date Filed: 08/17/2023 Entry ID: 5307231

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Doss v. State,*
    376 S.W.3d 719 (Mo. Ct. App. 2012) .................................................9

*State v. Fields,*
    2023 WL 4711674 (Mo. Ct. App. July 25, 2023) ..............................9

*United States v. Missouri,*
    2023 WL 2390677 (W.D. Mo. Mar. 7, 2023) ...............................6, 21

**Statutes**

18 U.S.C. § 921 .................................................................................8

18 U.S.C. § 925 .................................................................................7

18 U.S.C. § 925B ...............................................................................8

Mo. Ann. Stat. § 1.420 ....................................................................10

Mo. Ann. Stat. § 1.430 ....................................................................10

Mo. Ann. Stat. § 1.450 ....................................................................11

Mo. Ann. Stat. § 1.460 ....................................................................11

Mo. Ann. Stat. § 1.480.1 .................................................................10

Mo. Ann. Stat. § 455.050 ..................................................................9

Mo. Ann. Stat. § 571.070.1 ...............................................................9

Pub. L. No. 104-208, § 658, 110 Stat. 3009 (1996).........................7

**Legislative Materials**

142 Cong. Rec. S26675 (daily ed. Sept. 30, 1996) (statement of Sen.
    Frank Lautenberg).........................................................................4

**Other Authorities**

Aaron J. Kivisto & Megan Porter, *Firearm Use Increases Risk of
Multiple Victims in Domestic Homicides*, 48 J. Am. Acad.
Psychiatry & L. 26 (2020),
    https://pubmed.ncbi.nlm.nih.gov/31753965 .................................17

Aaron J. Kivisto, et al., *Firearm Ownership and Domestic Versus
Nondomestic Homicide in the U.S.*, 57 Am. J. Preventative Med.
311 (2019)....................................................................................16

Appellate Case: 23-1457   Page: 4   Date Filed: 08/17/2023 Entry ID: 5307231

Abigail Hall, *Ending Intimate Partner Homicide: A Call for Reform of Kansas Protective Order Statutes*, 63 U. Kan. L. Rev. 1087 (2015) ...................7

April M. Zeoli, Multiple Victim Homicides, Mass Murders, and Homicide-Suicides as Domestic Violence Events 4 (Battered Women's Justice Project 2018), https://bit.ly/3memrm3 ...................................17

Amici Curiae Brief of Missouri Firearms Coalition et al. in Support of Appellants and Reversal, United States v. State of Missouri, No. 23-1457 (8th Cir. May 17, 2023) ...................................................6, 15

Eleanor Sheahan, *Missouri Ranks in Top Three States for Domestic Violence Reports*, KOMU (Apr. 14, 2023), https://www.komu.com/news/state/missouri-ranks-in-top-three-states-for-domestic-violence-reports/article9e0b46be-dafa-11ed-8884-872900270326.html ...............................................................3, 19

Emma E. Fridel & James A. Fox, *Gender Differences in Patterns and Trends in U.S. Homicide, 1976-2017*, 6 Violence & Gender 27 (2019) .........................................................................................................16

*Fact Sheet: Reauthorization of the Violence Against Women Act (VAWA)*, White House (Mar. 16, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/16/fact-sheet-reauthorization-of-the-violence-against-women-act-vawa ...............................................................8

*Guns and Violence Against Women: America's Uniquely Lethal Intimate Partner Violence Problem*, Everytown for Gun Safety Support Fund (Apr. 10, 2023), https://everytownresearch.org/report/guns-and-violence-against-women-americas-uniquely-lethal-intimate-partner-violence-problem ...............................................................................................2, 16

Jacquelyn C. Campbell, et al., *Risk Factors for Femicide in Abusive Relationships: Results From a Multisite Case Control Study*, 93 Am. J. Pub. Health 1089 (2003), https://ajph.aphapublications.org/doi/full/10.2105/AJPH.93.7.1089 .............2, 15

Jennifer Mascia, *Missouri's 'Second Amendment Sanctuary' Law Could Complicate Police Efforts to Solve Gun Crimes*, The Trace (Sept. 20, 2021), https://bit.ly/31UQp7P ...........................................12

Kalista Mitrisin, *Child, 9, Left Without Mother, Siblings After Quadruple Shooting*, Fox 2 News (July 4, 2023), https://fox2now.com/news/missouri/child-9-left-without-mother-siblings-after-quadruple-shooting ...........................................................2

Appellate Case: 23-1457     Page: 5     Date Filed: 08/17/2023 Entry ID: 5307231

# TABLE OF AUTHORITIES

*(continued)*

Page(s)

Kathy Sweeney, *Southeast Mo. Law Enforcement Leaders Say Second Amendment Preservation Act Misses the Mark*, KFVS12 (Aug. 31, 2021, 8:05 PM), https://bit.ly/31VwRjI ................................................................ 14

Kerry Breen, *"Mass Killers Practice at Home": How Domestic Violence and Mass Shootings Are Linked*, CBS News (July 27, 2023, 8:14 AM), https://www.cbsnews.com/news/mass-shootings-domestic-violence-abuse-connection-research ................................... 18

Kimberly A. Randell, et al., *Risk of Intimate Partner Homicide Among Caregivers in an Urban Children's Hospital*, 173 JAMA Pediatrics 97 (2018) ................................................................................................... 20

Leila Mitchell, *Law Enforcement in Missouri Is Unsure of How the Second Amendment Preservation Act Will Affect Their Department*, ABC17News (July 7, 2021, 6:15 PM), https://bit.ly/3pTvMAA .......................................................................... 14

*Local Domestic Violence Advocate Receives Award for Her Work With a Tool Preventing Domestic Violence Homicides*, Rose Brooks (Oct. 28, 2021), https://www.rosebrooks.org/press-release-rose-brooks-center-advocate-wins-award ............................................. 20

Mark Slavit, *Missouri Law on Federal Gun Rules Creates Obstacles For Columbia Police Chief*, 13 KRCG (Dec. 2, 2021, 6:36 PM), https://krcgtv.com/news/local/missouri-law-on-federal-gun-rules-creates-obstacles-for-columbia-police-chief ...................................... 14

Memorandum and Order, United States v. Reuter, No. 21-CR-00425 (E.D. Mo. Aug. 20, 2021), ECF No. 39, https://ecf.moed.uscourts.gov/doc1/10719969513 ............................ 13

*National Violent Death Reporting System (NVDRS)*, Centers for Disease Control & Prevention (2019), https://www.cdc.gov/violenceprevention/datasources/nvdrs/index.html .................................................................................................... 2

Norah O'Donnell, *Missouri's Second Amendment Preservation Act Outlaws Local Enforcement of Federal Gun Laws*, CBS News (Nov. 7, 2021. 6:59 PM), https://www.cbsnews.com/news/missouri-gun-law-second-amendment-preservation-act-60-minutes-2021-11-07 .................... 10, 12, 13, 14

Norma Espinosa, *The Fight to Reauthorize the Violence Against Women Act*, American Progress (May 3, 2012), https://www.americanprogress.org/article/the-fight-to-reauthorize-the-violence-against-women-act ........................................................... 7

Appellate Case: 23-1457      Page: 6      Date Filed: 08/17/2023 Entry ID: 5307231

Plea Agreement, *United States v. Collier*, No. 20-CR-00774 (E.D. Mo. July 8, 2021), ECF No. 41, https://storage.courtlistener.com/recap/gov.uscourts.mowd.149918/gov.uscourts.mowd.149918.47.0.pdf .................................................................13

Plea Agreement, *United States v. Washington*, No. 20-CR-00011 (W.D. Mo. Aug. 31, 2021), ECF No. 47, https://storage.courtlistener.com/recap/gov.uscourts.mowd.149918/gov.uscourts.mowd.149918.47.0.pdf.................................................................12

Press Release, Missouri Governor Michael L. Parson, Governor Parson Signs HB 85 Establishing Second Amendment Preservation Act (June 14, 2021), https://governor.mo.gov/press-releases/archive/governor-parson-signs-hb-85-establishing-second-amendment-preservation-act#:~:text=%E2%80%9CHB%2085%20puts%20those%20in,firearms%2C%E2%80%9D%20Governor%20Parson%20said ...............................21

Press Release, U.S. Attorney's Office for the Eastern District of Missouri, Judge Sentences Jefferson County Man to Statutory Maximum of 10 Years for Being a Felon in Possession of a Firearm (Jan. 27, 2021), https://www.justice.gov/usao-edmo/pr/judge-sentences-jefferson-county-man-statutory-maximum-10-years-being-felon-possession.........................................................13

Rachel Treisman, *The Senate gun bill would close the 'boyfriend loophole.' Here's what that means*, NPR (June 23, 2022), https://www.npr.org/2022/06/23/1106967037/boyfriend-loophole-senate-bipartisan-gun-safety-bill-domestic-abuse...............................................8

Robert Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 LAW & CONTEMP. PROBS. 55 (Nov. 2, 2017) .................6

Rose Brooks, https://www.rosebrooks.org (last visited Aug. 11, 2023) .................20

Sam Clancy & Dori Olmos, *Man Who Killed Himself After Standoff Identified as Suspect in Deadly Christmas Shooting*, KSDK (Dec. 29, 2020, 5:41 PM), https://www.ksdk.com/article/news/crime/christmas-shooting-mother-daughter-ex-boyfriend-house-surrounded/63-108c3f9d-5dc0-4f5b-baab-b0787266c5c2 ...............................................................8

Sam Clancy, *Mother, Young Daughter Found Shot to Death in North St. Louis County Home on Christmas*, KSDK (Dec. 26, 2020, 7:34 AM), https://www.ksdk.com/article/news/crime/st-louis-county-child-killed-christmas/63-acb850de-c981-4884-a32c-23c385d684ff .................8

Appellate Case: 23-1457    Page: 7    Date Filed: 08/17/2023 Entry ID: 5307231

Page(s)

Susan B. Sorensen & Rebecca A. Schut, *Nonfatal Gun Use in Intimate Partner Violence: A Systematic Review of the Literature*, 19 Trauma, Violence & Abuse 431 (2018) ............................................................16

*Ten Years of Mass Shootings in the United States*, Everytown for Gun Safety Support Fund (Nov. 21, 2019), https://everystat.org/massshootingsreports/mass-shootings-in-america-2009-2019 ......................................................................................18

Violence Pol'y Ctr., American Roulette: Murder-Suicide in the United States 7 (7th ed. 2020), https://vpc.org/studies/amroul2020.pdf........................17

Violence Pol'y Ctr., When Men Murder Women: An Analysis of 2019 Homicide Data 4 (2021), https://www.vpc.org/studies/wmmw2021.pdf....................................................19

Appellate Case: 23-1457    Page: 8    Date Filed: 08/17/2023 Entry ID: 5307231

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

The Missouri Coalition Against Domestic and Sexual Violence ("the Coalition") is a nonprofit membership organization comprising 124 community-based domestic violence agencies and more than 20,000 advocates and volunteers throughout Missouri. The Coalition is the state's sole provider of no-cost expertise and training for members, and it remains the only organization in Missouri that collects data and information on all of the services domestic and sexual violence programs provide throughout the state.

The Coalition has a special interest in this case, as well as expertise on the impact of state and federal gun legislation on domestic violence survivors. The Coalition respectfully submits that this Court should affirm the district court in this case. That court enjoined a Missouri law that would directly place in harm's way domestic violence survivors throughout Missouri, including many of the Coalition's members.

The Coalition files this brief in support of Appellee pursuant to FRAP 29(a)(3). The Coalition has obtained consent from all parties to the appeal.

---

[1] No party's counsel authored this brief in whole or in part. No party, its counsel, or other person contributed money intended to fund the brief's preparation or submission.

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

Domestic violence is all too common. Throughout the country, people live in fear that their spouses or partners will harm them and their children. Guns exacerbate the problem. When abusers have access to a firearm, domestic violence escalates dramatically. It turns deadly. As a study in the *American Journal of Public Health* concluded, domestic abusers who have access to a firearm are *five* times more likely to kill their partners during domestic violence episodes.[2] An average of 70 women are shot and killed by an intimate partner every month in the United States.[3] Each one of those statistics represents a tragedy with traumatic butterfly effects. Just last month, in fact, a Missouri man shot and killed his girlfriend, her 14-year-old son, and her five-year-old daughter in their home after she tried to stop him from driving drunk.[4] The man then turned the gun on himself. The sole survivor of the

---

[2] Jacquelyn C. Campbell, et al., *Risk Factors for Femicide in Abusive Relationships: Results From a Multisite Case Control Study*, 93 Am. J. Pub. Health 1089 (2003), https://ajph.aphapublications.org/doi/full/10.2105/AJPH.93.7.1089 (concluding from this data that "abusers who possess guns tend to inflict the most severe abuse")*.*

[3] *Guns and Violence Against Women: America's Uniquely Lethal Intimate Partner Violence Problem*, Everytown for Gun Safety Support Fund (Apr. 10, 2023), https://everytownresearch.org/report/guns-and-violence-against-women-americas-uniquely-lethal-intimate-partner-violence-problem [hereinafter *Guns and Violence against Women*] (citing *National Violent Death Reporting System (NVDRS)*, Centers for Disease Control & Prevention (2019), https://www.cdc.gov/violenceprevention/datasources/nvdrs/index.html).

[4] Kalista Mitrisin, *Child, 9, Left Without Mother, Siblings After Quadruple Shooting*, Fox 2 News (July 4, 2023), https://fox2now.com/news/missouri/child-9-left-without-mother-siblings-after-quadruple-shooting.

2

massacre was the woman's nine-year-old daughter, who watched it all happen. The responding police officer later told reporters: "To witness her mom and mom's boyfriend arguing, because he's intoxicated and drunk, pull out a firearm and shoot her [mom] right in the face, she's going to have to live with that for the rest of her life." *Id.*

The problem of lethal domestic violence is especially acute in Missouri. The state has the third-highest rate of domestic violence in the country.[5] Yet Missouri's state laws broadly permit many domestic abusers to purchase and possess guns. Federal law has stepped in to fill that gap. For the past 30 years, federal law has prohibited the purchase and possession of firearms by anyone who has been convicted of a misdemeanor crime of domestic violence or who is subject to a domestic violence order of protection. In other words, under federal law, after a judge or jury has concluded that an individual has committed or poses a real risk of committing domestic violence, federal law restricts that individual's access to firearms. That commonsense, bipartisan restriction represents Congress's recognition that "anyone who attempts or threatens violence against a loved one has demonstrated that he or she poses an unacceptable risk, and should be prohibited

---

[5] Eleanor Sheahan, *Missouri Ranks in Top Three States for Domestic Violence Reports*, KOMU (Apr. 14, 2023), https://www.komu.com/news/state/missouri-ranks-in-top-three-states-for-domestic-violence-reports/article9e0b46be-dafa-11ed-8884-872900270326.html.

from possessing firearms."[6]  It has saved untold lives—both in Missouri and throughout the nation.

Missouri's Second Amendment Preservation Act would change all that.  The statute redefines many domestic abusers—including those convicted of domestic violence misdemeanors—as "law-abiding citizens."  And it forbids government officials from enforcing any restriction that would prevent these supposedly "law-abiding citizens" from possessing firearms.  The Second Amendment Preservation Act has real force:  It contains a private right of action and purports to impose significant monetary penalties on state and local law enforcement who violate it.  Any police department that assists in the investigation and prosecution of federal firearms offenses committed by domestic abusers could even have to pay the *abuser* monetary damages.

Disarming domestic abusers should be uncontroversial.  But the Second Amendment Preservation Act would reopen the armory to many domestic abusers and risk the lives of thousands of domestic abuse survivors throughout the State of Missouri.  And it would discourage and prevent police departments and law enforcement officers from doing their job.  This Court cannot allow that to happen.

---

[6] 142 Cong. Rec. S26675 (daily ed. Sept. 30, 1996) (statement of Sen. Frank Lautenberg).

4

The Coalition therefore submits this amicus brief in support of the district court's order invalidating the Second Amendment Preservation Act and preserving critical, longstanding, and bipartisan federal protections for domestic violence survivors in Missouri. In this brief, the Coalition shares its unique, on-the-ground perspective and experience with domestic violence, as well as key statistics and facts confirming that the Act would have devastating consequences for the Missourians who currently face or who are at risk of facing domestic violence. The Coalition urges this Court to affirm the district court's order and invalidate the Second Amendment Preservation Act.

## ARGUMENT

Decades of social science research confirms that access to firearms turns domestic violence deadly. For that reason, federal law keeps guns out of the hands of adjudged abusers. But the Second Amendment Preservation Act would restore that access. It would make domestic violence survivors and their children vulnerable to an increased risk of being threatened, shot at, or murdered at home or in public. And it would aggravate the risk of lethal domestic abuse by forbidding any Missouri law enforcement officials from enforcing federal firearms laws as they apply to domestic abusers.

The district court held that the Second Amendment Preservation Act "is an unconstitutional 'interposition' against federal law" and—indeed—was "designed

5

to be just that." *United States v. Missouri*, 2023 WL 2390677, at *8 (W.D. Mo. Mar. 7, 2023) (alteration omitted); *see id.* at *13 (invalidating the Second Amendment Preservation Act "as unconstitutional in its entirety as violative of the Supremacy Clause" of the U.S. Constitution). The district court was right. This Court should affirm the district court's order in its entirety and prevent the foreseeable tragedies the Second Amendment Preservation Act would cause.

## I. THE SECOND AMENDMENT PRESERVATION ACT WOULD DEMOLISH CRITICAL PROTECTIONS FOR DOMESTIC VIOLENCE SURVIVORS.

### a. Congress Has Protected Domestic Violence Survivors In Missouri And Nationwide For Three Decades.

For 30 years, Congress has recognized on a bipartisan basis the danger of combining firearms with domestic violence situations.[7] The Second Amendment Preservation Act rejects that bipartisan consensus. As the Missouri Firearms Coalition freely admits to this Court, the law would allow "thousands—perhaps *tens of thousands*—of Missourians" who have been convicted of domestic violence crimes to purchase and possess firearms at their pleasure. Amici Curiae Brief of Missouri Firearms Coalition et al. in Support of Appellants and Reversal at 6, United States v. State of Missouri, No. 23-1457 (8th Cir. May 17, 2023) (emphasis added). It would therefore put domestic violence survivors at increased risk of harm.

---

[7] *See* Robert Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 57–68 (Nov. 2, 2017).

Over several decades, federal law has charted a clear path toward shielding domestic violence victims from lethal force. The Violence Against Women Act of 1994 prohibited the purchase and possession of firearms by any individual subject to a qualifying domestic violence restraining order. *See* 18 U.S.C. § 925. The statute passed the House and Senate by wide margins.[8] Two years later, Congress amended the Gun Control Act of 1968 to prohibit the purchase and possession of firearms by any individual convicted of a domestic violence misdemeanor where that individual is a current or former spouse, parent, or guardian of the victim or shares a child with the victim.[9] That amendment was similarly bipartisan.[10] More recently, Congress adopted the Violence Against Women Reauthorization Act of 2022 and the Bipartisan Safer Communities Act of 2022, instituting reporting requirements and closing the "boyfriend loophole" in prior statutes limited to marital domestic

---

[8] Norma Espinosa, *The Fight to Reauthorize the Violence Against Women Act*, American Progress (May 3, 2012), https://www.americanprogress.org/article/the-fight-to-reauthorize-the-violence-against-women-act.

[9] Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 658, 110 Stat. 3009 (1996).

[10] *See* Abigail Hall, *Ending Intimate Partner Homicide: A Call for Reform of Kansas Protective Order Statutes*, 63 U. Kan. L. Rev. 1087, 1097 (2015) ("The amendment received overwhelming support, passing with a vote of ninety-seven to two in the Senate.").

7

violence situations.  *See* 18 U.S.C. §§ 921(a)(33), 925B.  Both statutes were adopted without significant controversy and with support from both major political parties.[11]

Real-life accounts of what happens when domestic violence and access to firearms collide demonstrate the severity of the problem Congress was attempting to solve in a bipartisan fashion.  In 2020, Charese Garvin, a paraprofessional for the St. Louis Special School District, and her 23-month-old daughter were shot and killed on Christmas Day by Charese's ex-boyfriend.[12]  Charese's ex-boyfriend had previously "threatened that if he could not have Charese Garvin, no one would."[13]  His access to firearms allowed him to make good on that threat.  And in 2007, a man named Steven Doss choked his girlfriend before he retrieved a loaded shotgun and

---

[11] *See generally* Rachel Treisman, *The Senate gun bill would close the 'boyfriend loophole.' Here's what that means*, NPR (June 23, 2022), https://www.npr.org/2022/06/23/1106967037/boyfriend-loophole-senate-bipartisan-gun-safety-bill-domestic-abuse (discussing bipartisan support); *see also Fact Sheet: Reauthorization of the Violence Against Women Act (VAWA)*, White House (Mar. 16, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/16/fact-sheet-reauthorization-of-the-violence-against-women-act-vawa (discussing bipartisan support).

[12] Sam Clancy & Dori Olmos, *Man Who Killed Himself After Standoff Identified as Suspect in Deadly Christmas Shooting*, KSDK (Dec. 29, 2020, 5:41 PM), https://www.ksdk.com/article/news/crime/christmas-shooting-mother-daughter-ex-boyfriend-house-surrounded/63-108c3f9d-5dc0-4f5b-baab-b0787266c5c2 [hereinafter Clancy & Olmos]; Sam Clancy, *Mother, Young Daughter Found Shot to Death in North St. Louis County Home on Christmas*, KSDK (Dec. 26, 2020, 7:34 AM), https://www.ksdk.com/article/news/crime/st-louis-county-child-killed-christmas/63-acb850de-c981-4884-a32c-23c385d684ff.

[13] Clancy & Olmos, *supra* note 12 (internal quotation marks omitted).

Appellate Case: 23-1457     Page: 16     Date Filed: 08/17/2023 Entry ID: 5307231

threatened her with it. *See Doss v. State*, 376 S.W.3d 719, 723 (Mo. Ct. App. 2012). Even where there is no gun directly involved in a specific domestic violence incident, domestic violence victims often live in terror that their abuser might one day use a firearm to hurt them and their children. In one recent Missouri murder case, the victim had attested in a petition for a protective order that her partner, who ultimately went on to kill her, had "repeatedly punched [her] in [her] face several times" and "ha[d] been physically and verbally abusing [her]." *State v. Fields*, 2023 WL 4711674, at *2 (Mo. Ct. App. July 25, 2023). Before he killed her, she attested: "*I am afraid of him because he has access to firearms.* And I have children in my home." *Id.* (emphasis added).

Federal law is critical to protect people who endure domestic violence in Missouri. Unlike federal law, Missouri law prohibits only four categories of individuals from possessing firearms: felons, fugitives from justice, certain drug users, and persons "currently adjudged mentally incompetent." Mo. Ann. Stat. § 571.070.1 (West). Missouri law does *not* prohibit individuals who have been convicted of misdemeanor crimes of domestic violence or individuals subject to domestic violence protection orders from purchasing or possessing firearms. *See* Mo. Ann. Stat. § 455.050. For that reason, Missouri law enforcement and domestic

9

violence survivors have historically relied on federal law to neutralize this dangerous "domestic violence loophole" in Missouri.[14]

### b. The Second Amendment Preservation Act Would Reopen Missouri's "Domestic Violence Loophole."

The Second Amendment Preservation Act would reopen the domestic violence loophole in Missouri. The statute deems any law that prohibits the "possession, ownership, use, or transfer of a firearm, firearm accessory, or ammunition" by so-called "law-abiding citizens" as an "infringement[] on the people's right to keep and bear arms." Mo. Ann. Stat. §§ 1.420, 1.420(4). The statute declares that any such laws "shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state." *Id.* § 1.430. Critically, the Second Amendment Preservation Act defines a "law-abiding citizen" as "a person who is not otherwise precluded under *state* law from possessing a firearm." *Id.* § 1.480.1 (emphasis added). Because many domestic abusers— including those who have been convicted of domestic violence misdemeanors—are

---

[14] *See* Norah O'Donnell, *Missouri's Second Amendment Preservation Act Outlaws Local Enforcement of Federal Gun Laws*, CBS News (Nov. 7, 2021, 6:59 PM), https://www.cbsnews.com/news/missouri-gun-law-second-amendment-preservation-act-60-minutes-2021-11-07 [hereinafter "O'Donnell"] (quoting Kansas City Mayor Quinton Lucas: the only "saving grace" protecting domestic violence survivors "was that there was a federal law that a police officer could say they're violating").

not "precluded under state law from possessing a firearm," the Second Amendment Preservation Act classifies them as "law-abiding citizens."

The Second Amendment Preservation Act would also obstruct the efforts of law enforcement to prevent crime and keep communities safe. The statute would prohibit anyone from enforcing, or assisting in the enforcement of, any law it defines as an "infringement"—which, again, includes all laws that impose additional protections for domestic violence victims beyond the (nearly nonexistent) protections provided by Missouri law. *See* Mo. Ann. Stat. § 1.450.

What's more, the Second Amendment Preservation Act provides a private right of action against law enforcement agencies that enforce federal law. *See* Mo. Ann. Stat. § 1.460. The statute authorizes any allegedly "injured party" to bring suit against "[a]ny political subdivision or law enforcement agency that employs a law enforcement officer" who knowingly violates the Act. *Id.* Each infraction would result in up to $50,000 in liability. *Id.* The Act also purports to strip defendants of sovereign immunity "in any [such] action." *Id.* The Second Amendment Preservation Act thus not only allows *adjudged domestic abusers* to sue law enforcement agencies; it also paves the way for them to recover the law's steep monetary penalties. *See id.*

This statutory scheme is potentially devastating for domestic violence survivors. Before the Second Amendment Preservation Act, Missouri and federal

11

law enforcement agencies often collaborated to disarm domestic abusers and to solve gun crimes.[15]  As the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") has explained, local law enforcement in Missouri is often key to investigating federal gun cases where the perpetrator had been previously convicted of a domestic violence misdemeanor.  *See* O'Donnell, *supra* note 14.

Cooperation between state and federal authorities has regularly resulted in prosecutions of dangerous abusers.  For example, in August 2021, a Kansas City man pleaded guilty to a federal charge of possessing a firearm after two previous convictions for domestic violence misdemeanors.[16]  That prosecution resulted from a Kansas City Police Department arrest based on the defendant's involvement in a street fight and his possession of a pistol that had recently been trafficked from Georgia.  And in December 2019, federal law enforcement initiated a prosecution against a man from St. Louis County for unlawful possession of a firearm while subject to a domestic violence restraining order after he extended his abusive and

---

[15]  Jennifer Mascia, *Missouri's 'Second Amendment Sanctuary' Law Could Complicate Police Efforts to Solve Gun Crimes*, The Trace (Sept. 20, 2021), https://bit.ly/31UQp7P.

[16]  Plea Agreement, United States v. Washington, No. 20-CR-00011 (W.D. Mo. Aug. 31, 2021), ECF No. 47, https://storage.courtlistener.com/recap/gov.uscourts.mowd.149918/gov.uscourts.mowd.149918.47.0.pdf.

threatening behavior towards his wife into threats to state court judges.[17] That same month, a St. Louis man was indicted on a federal felon-in-possession charge after the St. Louis Metropolitan Police Department investigated a report that the man threatened his ex-girlfriend with a rifle as two accomplices assaulted her.[18] As the Victim's Advocate for the U.S. Attorney's Office for the Eastern District of Missouri has explained, federal firearms possession charges often "come to fruition as a result of law enforcement responding to a domestic violence call and discovering the abuser is a previously convicted felon who is in possession of a firearm."[19] In other words, federal-state cooperation is critical to reducing crime and keeping the community safe.

The Second Amendment Preservation Act would destroy this critical collaborative effort. Just before and after the statute passed, law enforcement officials throughout Missouri expressed hesitation about working with the federal government given the penalties they could face for doing so. *See* O'Donnell, *supra*

---

[17] Memorandum and Order, United States v. Reuter, No. 21-CR-00425 (E.D. Mo. Aug. 20, 2021), ECF No. 39, https://ecf.moed.uscourts.gov/doc1/10719969513.

[18] Plea Agreement, United States v. Collier, No. 20-CR-00774 (E.D. Mo. July 8, 2021), ECF No. 41, https://ecf.moed.uscourts.gov/doc1/10719896695.

[19] Press Release, U.S. Attorney's Office for the Eastern District of Missouri, Judge Sentences Jefferson County Man to Statutory Maximum of 10 Years for Being a Felon in Possession of a Firearm (Jan. 27, 2021), https://www.justice.gov/usao-edmo/pr/judge-sentences-jefferson-county-man-statutory-maximum-10-years-being-felon-possession.

note 14. For instance, the police chief of Poplar Bluff, Danny Whiteley, stated in 2021 that he would not work with federal prosecutors on gun cases in light of the Second Amendment Preservation Act. *See id.* He pointed to a recent incident involving a man who shot at his ex-girlfriend, and stated that he would not refer the shooter for federal prosecution because of the $50,000 penalty. *Id.* Another Missouri police chief advised his officers that any requests from federal agencies "must go all the way up the chain of command."[20] The Missouri State Highway Patrol also suspended its participation in joint state-federal task forces concerning weapons violations, including one with ATF.[21] Similarly, the Columbia Police Chief has said the Second Amendment Preservation Act changed the way his department interacts with ATF, while the former Columbia Mayor has said "[t]here's very little cooperation [local police] can have with the federal government in terms of enforcing federal gun crimes here in the State of Missouri."[22]

---

[20] Kathy Sweeney, *Southeast Mo. Law Enforcement Leaders Say Second Amendment Preservation Act Misses the Mark*, KFVS12 (Aug. 31, 2021, 8:05 PM), https://bit.ly/31VwRjI.

[21] Leila Mitchell, *Law Enforcement in Missouri Is Unsure of How the Second Amendment Preservation Act Will Affect Their Department*, ABC17News (July 7, 2021, 6:15 PM), https://bit.ly/3pTvMAA.

[22] Mark Slavit, *Missouri Law on Federal Gun Rules Creates Obstacles For Columbia Police Chief*, 13 KRCG (Dec. 2, 2021, 6:36 PM), https://krcgtv.com/news/local/missouri-law-on-federal-gun-rules-creates-obstacles-for-columbia-police-chief.

Appellate Case: 23-1457   Page: 22   Date Filed: 08/17/2023 Entry ID: 5307231

Reviving the Second Amendment Preservation Act would chill cooperation among state, local, and federal authorities. Law enforcement authorities in Missouri must have all available tools at their disposal to prevent domestic abusers from obtaining and using firearms against their victims.

## II. INCREASED ACCESS TO FIREARMS MAKES DOMESTIC VIOLENCE DEADLY.

The Second Amendment Preservation Act would allow potentially *tens of thousands* of domestic abusers in Missouri to arm themselves and therefore presents a clear and present danger to Missouri domestic abuse survivors. *See* Amici Curiae Brief of Missouri Firearms Coalition et al. in Support of Appellants and Reversal at 6, United States v. State of Missouri, No. 23-1457 (arguing that "federal and Missouri law distinguish between thousands—perhaps tens of thousands—of Missourians" who have been convicted of a domestic violence misdemeanor). Access to firearms dramatically increases the risk of domestic violence becoming deadly. The statistics are staggering:

- A woman is *five* times more likely to be killed by an abusive partner if that partner has access to a gun. *See* Campbell, *supra* note 2.

15

- The states with the highest rates of gun ownership have a 65% higher rate of domestic violence homicides than the states with the lowest rates of gun ownership.[23]

- Approximately 4.5 million American women have reported that an intimate partner has threatened them, and almost 1 million American women have survived being shot or shot at by an intimate partner.[24]

- An average of 70 women are shot and killed by an intimate partner every month in the United States.[25]

- Since 2010, the rate at which armed, violent partners kill their partner with a firearm increased by 26%—even while the rate of intimate-partner homicides involving all other weapons has declined.[26]

Domestic violence victims are often not the only casualties when an abuser has access to a gun. The use of firearms in domestic violence situations also

---

[23] Aaron J. Kivisto, et al., *Firearm Ownership and Domestic Versus Nondomestic Homicide in the U.S.*, 57 Am. J. Preventative Med. 311 (2019).

[24] Susan B. Sorensen & Rebecca A. Schut, *Nonfatal Gun Use in Intimate Partner Violence: A Systematic Review of the Literature*, 19 Trauma, Violence & Abuse 431 (2018).

[25] *Guns and Violence Against Women*, *supra* note 3.

[26] Emma E. Fridel & James A. Fox, *Gender Differences in Patterns and Trends in U.S. Homicide*, *1976–2017*, 6 Violence & Gender 27, 29 (2019).

Appellate Case: 23-1457    Page: 24    Date Filed: 08/17/2023 Entry ID: 5307231

increases the risk of *multiple* fatalities.[27]   When a male perpetrator uses a gun in a domestic homicide, he is nearly twice as likely to kill at least one additional victim. *See* Kivisto & Porter, *supra* note 27, at 29–30.  Those victims often include children, other family members, or the primary victim's new romantic partner.  *See id.* at 27. And when a gun is used in a fatal domestic violence incident, the risk that the abuser will commit suicide also increases.[28]   In murder-suicides with more than one homicide victim, "[t]he presence of a gun allows the offender to quickly and easily kill a greater number of victims."[29]

Armed domestic violence situations often turn into mass shootings.  Over half of the mass shootings that occurred between 2009 and 2018 were domestic violence-related (54%), and 72% of children and teens killed in mass shootings during this

---

[27] Aaron J. Kivisto & Megan Porter, *Firearm Use Increases Risk of Multiple Victims in Domestic Homicides*, 48 J. Am. Acad. Psychiatry & L. 26, 29 (2020), https://pubmed.ncbi.nlm.nih.gov/31753965.

[28] April M. Zeoli, Multiple Victim Homicides, Mass Murders, and Homicide-Suicides as Domestic Violence Events 4 (Battered Women's Justice Project 2018), https://bit.ly/3memrm3 ("Two studies found that when intimate partner homicides were committed by men with guns, suicide followed in 46% to 56% of cases, but when it was committed by men without guns, suicide followed in only 7% to 13% of cases.").

[29] Violence Pol'y Ctr., American Roulette: Murder-Suicide in the United States 7 (7th ed. 2020), https://vpc.org/studies/amroul2020.pdf.

17

same time frame "died in an incident connected to intimate partner or family violence."[30]

In sum, a robust body of social science research and academic literature supports the common-sense conclusion that the availability and presence of firearms leads to an increased number of fatalities and other tragic outcomes. The Second Amendment Preservation Act would make it easier for domestic abusers to acquire and keep firearms, putting domestic abuse survivors at severe risk.

---

[30] *Ten Years of Mass Shootings in the United States*, Everytown for Gun Safety Support Fund (Nov. 21, 2019), https://everystat.org/massshootingsreports/mass-shootings-in-america-2009-2019; *see generally* Kerry Breen, *"Mass Killers Practice at Home": How Domestic Violence and Mass Shootings Are Linked*, CBS News (July 27, 2023, 8:14 AM), https://www.cbsnews.com/news/mass-shootings-domestic-violence-abuse-connection-research (quoting Dr. April Zeoli, associate professor and the policy core director for the Institute for Firearm Injury Prevention at the University of Michigan).

## III. INCREASED ACCESS TO FIREARMS WILL EXACERBATE MISSOURI'S DOMESTIC VIOLENCE CRISIS.

Restoring domestic abusers' access to firearms will uniquely injure domestic violence survivors in Missouri. The State is facing an acute (and worsening) domestic violence crisis. Out of all 50 States, Missouri has the third-highest percentage of people who have experienced a form of domestic abuse. *See* Sheahan, *supra* note 5. Missouri experienced a 10.3% increase in domestic violence incidents between 2014 and 2018, and there were 45,548 domestic violence incidents reported to Missouri law enforcement in 2018 alone. *Id.* Almost 42% of Missouri women experience physical violence, sexual violence, or stalking by an intimate partner in their lifetimes. *Id.*

Domestic violence survivors in Missouri are also at a particularly high risk of gun homicide. In 2019, Missouri had the seventh-highest rate in the nation of homicides committed by men against women.[31] Out of the 57 such homicides where the type of deadly force was identified, 81% involved female victims who were killed with guns. *See When Men Murder Women*, *supra* note 31, at 18. Overwhelmingly, these female victims were murdered by someone they knew. *See id.*

---

[31] Violence Pol'y Ctr., When Men Murder Women: An Analysis of 2019 Homicide Data 4 (2021), https://www.vpc.org/studies/wmmw2021.pdf [hereinafter When Men Murder Women] (showing that 64 women were killed by men in 2019).

19

Data collected in Kansas City, Missouri paints a stark picture. Among a group of Kansas City individuals who self-identified as having experienced domestic violence, 42.5% had been threatened or attacked by an abuser wielding a weapon, and 58% of abusers had a gun or could easily access a gun.[32] The Kansas City-based Rose Brooks Center provides additional data. Rose Brooks Center provides emergency shelter to domestic violence survivors (among other services).[33] It reports that police officers in its community use a "Lethality Assessment Protocol" pursuant to which officers who respond to domestic violence calls ask a series of standard questions to determine whether a victim is "high-lethality"—i.e., at high risk of being killed.[34] If so, officers connect the victim to an advocate at the Center. *See* Lethality Assessment Protocol, *supra* note 34. The Center reports that it received more than 2,583 "high-lethality" calls from four Kansas City patrol stations in 2022. In 62% of these calls, the victim stated that the abuser had a gun or could get one easily—an 11% increase from 2016.

---

[32] Kimberly A. Randell, et al., *Risk of Intimate Partner Homicide Among Caregivers in an Urban Children's Hospital*, 173 JAMA Pediatrics 97, 97 (2018).

[33] *See* Rose Brooks, https://www.rosebrooks.org (last visited Aug. 11, 2023).

[34] *See Local Domestic Violence Advocate Receives Award for Her Work With a Tool Preventing Domestic Violence Homicides*, Rose Brooks (Oct. 28, 2021), https://www.rosebrooks.org/press-release-rose-brooks-center-advocate-wins-award [hereinafter Lethality Assessment Protocol].

Appellate Case: 23-1457     Page: 28     Date Filed: 08/17/2023 Entry ID: 5307231

If allowed to take effect, the Second Amendment Preservation Act will inevitably result in more fatalities on top of the already crisis-level domestic violence situation Missouri faces. The women and children who live with those abusers will bear the brunt of that change.

## CONCLUSION

Upon signing the Second Amendment Preservation Act, Missouri's Governor explained that the statute "puts those in Washington D.C. on notice that here in Missouri we support responsible, law-abiding gun owners."[35] There is nothing responsible or law-abiding about domestic violence. And there is nothing responsible or law-abiding about increasing domestic abusers' access to firearms.

The district court in this case recognized that the Second Amendment Preservation Act "exposes citizens to greater harm" by obstructing federal firearms laws. *United States*, 2023 WL 2390677, at *13. The district court got it exactly right. This Court should affirm in full and "put[]" Missouri lawmakers "on notice" that the Supremacy Clause and decades of bipartisan federal law forbid Missouri from arming domestic abusers and placing survivors directly in harm's way.

---

[35] Press Release, Missouri Governor Michael L. Parson, Governor Parson Signs HB 85 Establishing Second Amendment Preservation Act (June 14, 2021), https://governor.mo.gov/press-releases/archive/governor-parson-signs-hb-85-establishing-second-amendment-preservation-act#:~:text=%E2%80%9CHB%2085%20puts%20those%20in,firearms%2C%E2%80%9D%20Governor%20Parson%20said.

Respectfully submitted,

DATED:  August 16, 2023          */s/ Alexander Southwell*
                                 Alexander Southwell
                                   *Counsel of Record*
Lee R. Crain                     GIBSON, DUNN & CRUTCHER LLP
Mark Cherry                      200 Park Avenue
Erica Sollazzo Payne             New York, NY  10166
Seton Hartnett O'Brien           asouthwell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP      Telephone:  (212) 351-3981
200 Park Avenue                  Facsimile:  (212) 817-9421
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

22

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation, as provided in Fed. R. App. P. 32(g) and Fed. R. App. P. 29(b)(4), because, exclusive of the exempted portions of the petition, the petition contains 4,519 words.

2.      This brief complies with the typeface requirements, as provided in Fed. R. App. P. 32(a)(5), and the type-style requirements, as provided in Fed. R. App. P. 32(a)(6), because the brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

3.      As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

4.      The electronic version of this amicus brief has been scanned for viruses and is virus-free.

Dated:  August 16, 2023       */s/ Alexander Southwell*
                                 Alexander Southwell
                                 *Counsel for Amicus Curiae*

Appellate Case: 23-1457    Page: 31    Date Filed: 08/17/2023 Entry ID: 5307231

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on August 16, 2023. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: August 16, 2023

*/s/ Alexander Southwell*

Alexander Southwell

*Counsel for Amicus Curiae*