# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1457
_____

United States of America,

*Plaintiff - Appellee*,

v.

State of Missouri; Michael L. Parson, Governor of the State of Missouri, in his official capacity; Andrew Bailey, Attorney General of the State of Missouri, in his official capacity,

*Defendants - Appellants*.

------------------------------

Missouri Firearms Coalition; American Firearms Association; Iowa Gun Owners; Ohio Gun Owners; Minnesota Gun Rights; Georgia Gun Owners; Wyoming Gun Owners,

Amici Curiae - *Amici on Behalf of Appellant(s)*,

Gun Owners of America, Inc.; Gun Owners Foundation; Gun Owners of California; Heller Foundation; America's Future; DownsizeDC.org; Downsize DC Foundation; Conservative Legal Defense and Education Fund; Virginia Delegate David LaRock; The Freedom Center of Missouri,

*Amici on Behalf of Appellant(s)*,

Brady Center to Prevent Gun Violence; Everytown for Gun Safety; March For Our Lives; Giffords Law Center to Prevent Gun Violence; Missouri Coalition Against Domestic and Sexual Violence; Jackson County Missouri; St. Louis County Missouri,

*Amici on Behalf of Appellee(s)*.

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: February 23, 2024
Filed: August 26, 2024
_____

Before LOKEN, COLLOTON,[1] and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Missouri's Second Amendment Preservation Act classifies various federal laws regulating firearms as "infringements on the people's right to keep and bear arms, as guaranteed by Amendment II of the Constitution of the United States and Article I, Section 23 of the Constitution of Missouri." The Act declares that these federal laws are "invalid to this state," "shall not be recognized by this state," and "shall be specifically rejected by this state."

The United States sued the State of Missouri, the governor, and the attorney general, alleging that the Act violates the Supremacy Clause of the Constitution of the United States. The district court[2] denied Missouri's motions to dismiss for lack of standing and failure to state a claim, granted the motion of the United States for

---

[1] Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

[2] The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

summary judgment, and enjoined implementation and enforcement of the Act. On this appeal by the State, we agree that the United States has standing to sue. Because the Act purports to invalidate federal law in violation of the Supremacy Clause, we affirm the judgment.

I.

In 2021, the State of Missouri enacted a law entitled, "Second Amendment Preservation Act." Mo. Rev. Stat. §§ 1.410-1.485 (2021). The Act states:

> The following federal acts, laws, executive orders, administrative orders, rules, and regulations shall be considered infringements on the people's right to keep and bear arms, as guaranteed by Amendment II of the Constitution of the United States and Article I, Section 23 of the Constitution of Missouri, within the borders of this state including, but not limited to:
>
> (1) Any tax, levy, fee, or stamp imposed on firearms, firearm accessories, or ammunition not common to all other goods and services and that might reasonably be expected to create a chilling effect on the purchase or ownership of those items by law-abiding citizens;
>
> (2) Any registration or tracking of firearms, firearm accessories, or ammunition;
>
> (3) Any registration or tracking of the ownership of firearms, firearm accessories, or ammunition;
>
> (4) Any act forbidding the possession, ownership, use, or transfer of a firearm, firearm accessory, or ammunition by law-abiding citizens; and

-3-

> (5) Any act ordering the confiscation of firearms, firearm accessories, or ammunition from law-abiding citizens.

*Id.* § 1.420.

The Act declares that these federal laws "shall be invalid to this state, shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state." *Id.* § 1.430. The Act imposes a "duty" on "the courts and law enforcement agencies of this state to protect the rights of law-abiding citizens . . . from the infringements defined under section 1.420." *Id.* 1.440. The Act also mandates that "[n]o entity or person, including any public officer or employee of this state or any political subdivision of this state, shall have the authority to enforce or attempt to enforce" a federal law that "infring[es] on the right to keep and bear arms." *Id.* § 1.450.

Private persons may sue to enforce the Act. The Act creates a cause of action against "[a]ny political subdivision or law enforcement agency" that either (1) "employs a law enforcement officer who acts knowingly . . . to violate the provisions of section 1.450," or (2) "knowingly employs an individual acting or who previously acted as an official, agent, employee, or deputy of the government of the United States, or otherwise acted under the color of federal law within the borders of this state, who has knowingly . . . [e]nforced," "attempted to enforce," or "[g]iven material aid and support . . . to enforce any of the infringements identified in section 1.420." *Id.* §§ 1.460.1, 1.470.1. Each violation of the Act is punishable by a $50,000 penalty. *Id.* Prevailing parties, "other than the state of Missouri or any political subdivision of the state," may recover reasonable attorney's fees and costs. *Id.* §§ 1.460.2, 1.470.3.

In 2022, the United States sued Missouri to enjoin implementation and enforcement of the Act. The United States alleged that the Act impeded the federal

Appellate Case: 23-1457   Page: 4   Date Filed: 08/26/2024 Entry ID: 5428072

government's ability to enforce federal law by causing state officials to withdraw from joint task forces with federal law enforcement, by disrupting information sharing between state and federal officers, and by causing confusion about the status of federal firearm regulations in the State.

Missouri moved to dismiss. First, the State asserted that the United States lacked standing to sue Missouri because the law is enforced by private citizens rather than state actors. Second, the State argued that the United States failed to state a claim because the Act is a constitutional exercise of state power under *Printz v. United States*, 521 U.S. 898 (1997).

The district court ruled that the United States has standing because the federal government was injured by the withdrawal of state resources, and that injury was attributable to the State. On the merits, the district court ruled that the Act violates the Supremacy Clause because it purports to invalidate federal law. The district court enjoined "any and all implementation and enforcement" of the Act. We review the district court's rulings *de novo*. *Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001).

II.

A.

We first consider whether the United States has standing to challenge the Act. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

-5-

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Defs. of Wildlife*, 504 U.S. at 560). The United States has a legally protected interest in enforcing federal law. *See United States v. Colo. Sup. Ct.*, 87 F.3d 1161, 1165 (10th Cir. 1996); *cf. Crow Indian Tribe v. United States*, 965 F.3d 662, 676 (9th Cir. 2020). The United States presented uncontroverted evidence that implementation of the Act impaired that interest, because state officials withdrew resources and manpower that further the enforcement of federal law. The federal government's injury was thus "concrete and particularized" and "actual or imminent." *Colo. Sup. Ct.*, 87 F.3d at 1165.

Missouri argues that the federal government's interest is not legally protected because the United States is not entitled to the State's assistance with the enforcement of federal law. *See Printz*, 521 U.S. at 935. That argument confuses standing with the merits of the dispute. To say that the United States was injured by the withdrawal of state assistance "is not to say that [it] is entitled" to that assistance. *McDaniel v. Precythe*, 897 F.3d 946, 950 (8th Cir. 2018). A "plaintiff can have standing . . . even though the interest would not be protected by the law in that case." *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1172 (10th Cir. 2006); *see Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 (3d Cir. 2017). Interference with the federal government's interest in enforcing federal law is sufficient to establish that the Act's implementation injured the United States. Whether the United States is entitled to relief from that injury is a question on the merits of the dispute.

The injury of the United States is both traceable to Missouri and redressable by a favorable decision. The Act makes it unlawful for state officials to "enforce or attempt to enforce any federal acts, laws, executive orders, administrative orders, rules, regulations, statutes, or ordinances infringing on the right to keep and bear arms as described" in the Act. Mo. Rev. Stat. §§ 1.1450-1.1460. To comply with the Act,

-6-

Appellate Case: 23-1457     Page: 6     Date Filed: 08/26/2024 Entry ID: 5428072

state officials have withdrawn resources that were devoted to assisting federal law enforcement. An injunction enjoining the State from implementing the Act would prevent state officials from treating federal law as invalid and withdrawing from participation in federal law enforcement on that basis.

Missouri argues that the United States lacks standing to challenge the Act's purported invalidation of federal law because that portion of the Act "has no means of enforcement." *California v. Texas*, 593 U.S. 659, 669 (2021). The State relies on the Supreme Court of Missouri's description of sections 1.410, 1.420, 1.430, and 1.440 of the Act as "legislative findings and declarations." *City of St. Louis v. State*, 643 S.W.3d 295, 297 (Mo. 2022). The United States responds that this description is dicta because it appears in a section of the court's opinion titled, "Factual and Procedural Background." Whatever the status of the cited language, we fail to see how the state court's decision renders the Act's purported invalidation of federal law unenforceable. The supreme court explained that the "five remaining sections [of the Act] comprise the substantive provisions to *enforce* these legislative declarations." *Id.* (emphasis added).

Missouri also argues that the federal government's injury is not redressable by any named defendant because the Act is enforced only by private-citizen suits. A federal court cannot enjoin private citizens who are not parties to the case on the grounds that they may someday file a lawsuit under the Act. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021); *cf. Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015). But "[s]o long as a state official is giving effect to a state statute in a manner that allegedly injures a plaintiff and violates [the plaintiff's] constitutional rights, an action to enjoin implementation of the statute . . . is available against the state official." *McDaniel*, 897 F.3d at 952. State officials have a duty under the Act to refrain from enforcing certain federal firearms laws. These officials give effect to the Act by withdrawing from participation in federal law enforcement activities, and a favorable decision would

-7-

enjoin them from withdrawing on that basis. The requested injunction would redress the federal government's injury. The United States thus has standing.

B.

The Supremacy Clause states that federal law is "the supreme Law of the Land, . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "By this declaration, the states are prohibited from passing any acts which shall be repugnant to a law of the United States." *McCulloch v. Maryland*, 7 U.S. (4 Wheat.) 316, 361 (1819). The "Second Amendment Preservation Act" states that certain federal laws are "invalid to this state," Mo. Rev. Stat. § 1.430, but a State cannot invalidate federal law to itself. Missouri does not seriously contest these bedrock principles of our constitutional structure. The State instead advances two arguments.

First, the State argues that the United States cannot sue to enforce the Supremacy Clause because it lacks a cause of action. While there is no implied right of action under the Supremacy Clause, there is an equitable tradition of suits to enjoin unconstitutional actions by state actors. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015). Based on that equitable tradition, the United States has sued in other cases to enjoin a state law's implementation and enforcement or for other appropriate relief. *See, e.g.*, *United States v. Washington*, 596 U.S. 832, 837 (2022); *United States v. Minnesota*, 270 U.S. 181, 194 (1926); *Sanitary Dist. of Chi. v. United States*, 266 U.S. 405, 425-26 (1925). We see no reason why the United States cannot proceed similarly in this case.

Second, Missouri contends that the Act is constitutional because the State may constitutionally withdraw the authority of state officers to enforce federal law. The State argues that the *reason* why it withdrew its authority—*i.e.*, because the State declared federal law invalid—is immaterial.

-8-

That Missouri may lawfully withhold its assistance from federal law enforcement, however, does not mean that the State may do so by purporting to invalidate federal law. In this context, as in others, the Constitution "is concerned with means as well as ends." *Horne v. Dep't of Agric.*, 576 U.S. 350, 362 (2015). Missouri has the power to withhold state assistance, "but the means it uses to achieve its ends must be 'consist[ent] with the letter and spirit of the constitution.'" *Id.* (quoting *McCulloch*, 7 U.S. (4 Wheat.) at 421) (alteration in original). Missouri's assertion that federal laws regulating firearms are "invalid to this State" is inconsistent with both. If the State prefers as a matter of policy to discontinue assistance with the enforcement of *valid* federal firearms laws, then it may do so by other means that are lawful, and assume political accountability for that decision.

Because Missouri's attempt to invalidate federal law is unconstitutional, we must determine whether this portion of the law is severable from the rest of the Act. Whether one provision of a statute is severable from the remainder is a question of state law. *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996). Under Missouri law, the statute is not severable if "the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one." Mo. Rev. Stat. § 1.140. The Act itself states:

> If any provision of sections 1.410 to 1.485 or the application thereof to any person or circumstance is held invalid, such determination shall not affect the provisions or applications of sections 1.410 to 1.485 that may be given effect without the invalid provision or application, and the provisions of sections 1.410 to 1.485 are severable.

*Id.* § 1.485.

We conclude that the law is not severable because the entire Act is founded on the invalidity of federal law. Section 1.410 purports to limit the supremacy of federal

-9-

Appellate Case: 23-1457    Page: 9    Date Filed: 08/26/2024 Entry ID: 5428072

law by stating that federal "supremacy does not extend to various federal statutes, executive orders, administrative orders, court orders, rules, regulations, or other actions that collect data or restrict or prohibit the manufacture, ownership, or use of firearms, firearm accessories, or ammunition exclusively within the borders of Missouri." Section 1.420 lists the federal laws that "shall be considered infringements on the people's right to keep and bear arms," and section 1.430 declares that those laws are "invalid to this state." Because these federal laws are "infringements" and thus "invalid to this state," the Act imposes a "duty" upon "law enforcement agencies of this state to protect the rights of law-abiding citizens to keep and bear arms." *Id.* §§ 1.420-1.440.

The Act's command that state law enforcement officers must not enforce "invalid" federal law, and the Act's creation of causes of action against state entities that employ officers who do so, are means to "enforce" sections 1.410, 1.420, 1.430, and 1.440. *City of St. Louis*, 643 S.W.3d at 297. The court thus cannot give effect to any provision of the Act without enforcing Missouri's attempt to invalidate federal law. Accordingly, the district court's order enjoining state officials from implementing and enforcing the Act was proper. *See Missouri v. United States*, 144 S. Ct. 7, 7 (2023) (statement of Gorsuch, J.).

The judgment of the district court is affirmed.

_____

-10-

Appellate Case: 23-1457    Page: 10    Date Filed: 08/26/2024 Entry ID: 5428072