## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

THE STATE OF MISSOURI, *et al.*,

*Defendants-Appellants*.

_____

## OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL

_____

SAYLER A. FLEMING
  *United States Attorney*
  *Eastern District of Missouri*

TERESA A. MOORE
  *United States Attorney*
  *Western District of Missouri*

ALAN T. SIMPSON
  *Assistant United States Attorney*
  *Western District of Missouri*

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

SARAH E. HARRINGTON
  *Deputy Assistant Attorney*
  *General*

MARK B. STERN
MICHAEL S. RAAB
ABBY C. WRIGHT
JEFFREY E. SANDBERG
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *202-532-4453*

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

STATEMENT ..................................................................... 2

A.     Legal Background ..................................................... 2

    1.     H.B. 85 ....................................................... 2

    2.     Federal Firearms Laws ................................. 4

B.     Procedural History ................................................. 5

ARGUMENT .................................................................... 8

I.     DEFENDANTS HAVE NOT SHOWN ANY LIKELIHOOD
    OF SUCCESS ON APPEAL. ............................................ 9

    A.     The United States Has Both Standing And Authority To
        Sue. ............................................................... 9

    B.     H.B. 85 Was Properly Enjoined In Its Entirety. ........................ 14

II.     THE BALANCE OF THE EQUITIES WEIGH DECIDEDLY
    AGAINST A STAY ..................................................... 21

CONCLUSION .................................................................. 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ATTACHMENTS:

  [Exhibits A-D attached to Defendants' motion for stay pending appeal]

  Exhibit E (text of H.B. 85)

  Exhibits F, G, H, and I (declarations accompanying United States' motion
  for summary judgment)

  Exhibit J (district court judgment)

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*281 Care Comm. v. Arneson*,
   638 F.3d 621 (8th Cir. 2011) ................................................................9, 13

*Alden v. Maine*,
   527 U.S. 706 (1999) ................................................................................ 9

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
   458 U.S. 592 (1982) ................................................................................ 9

*Arizona v. United States*,
   567 U.S. 387 (2012) .............................................................................. 11

*Armstrong v. Exceptional Child Ctr.*,
   575 U.S. 320 (2015) .............................................................................. 14

*Calzone v. Hawley*,
   866 F.3d 866 (8th Cir. 2017) ................................................................ 11

*City of St. Louis v. State*,
   643 S.W.3d 295 (Mo. banc 2022) ....................................................20, 21

*Cooper v. Aaron*,
   358 U.S. 1 (1958) ..............................................................................15, 18

*Debs, In re*,
   158 U.S. 564 (1895) .............................................................................. 14

*Digital Recognition Network, Inc. v. Hutchinson*,
   803 F.3d 952 (8th Cir. 2015) ..............................................................12, 13

*Hispanic Interest Coal. of Ala. v. Governor of Ala.*,
   691 F.3d 1236 (11th Cir. 2012) ............................................................ 22

*Horne v. Dep't of Agric.*,
   576 U.S. 350 (2015) .............................................................................. 17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................ 9

Appellate Case: 23-1457    Page: 3    Date Filed: 03/17/2023 Entry ID: 5256484

*Maryland v. King*,
    567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ................................... 22

*Massachusetts v. Mellon*,
    262 U.S. 447 (1923) .................................................................................. 18

*McDaniel v. Precythe*,
    897 F.3d 946 (8th Cir. 2018) ..................................................................... 10

*M'Culloch v. Maryland*,
    17 U.S. 316 (1819) ............................................................................... 15, 17

*Missouri Nat'l Educ. Ass'n v. Missouri Dep't of Labor & Indus. Relations*,
    623 S.W.3d 585 (Mo. banc 2021) .............................................................. 20

*Montana Shooting Sports Ass'n v. Holder*,
    727 F.3d 975 (9th Cir. 2013) ..................................................................... 17

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    138 S. Ct. 1461 (2018) .............................................................................. 18

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................... 8, 22

*North Dakota v. Dole*,
    495 U.S. 423 (1990) .................................................................................. 12

*Printz v. United States*,
    521 U.S. 898 (1997) .................................................................................. 17

*Priorities USA v. State*,
    591 S.W.3d 448 (Mo. banc 2020) .............................................................. 19

*Sanitary Dist. of Chicago v. United States*,
    266 U.S. 405 (1925) .................................................................................. 14

*Shrink Mo. Gov't PAC v. Maupin*,
    71 F.3d 1422 (8th Cir. 1995) ..................................................................... 20

*United States v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ................................................................. 17

*United States v. Fitzgerald*,
    201 F. 295 (8th Cir. 1912) ........................................................................ 14

- iii -

Appellate Case: 23-1457    Page: 4    Date Filed: 03/17/2023 Entry ID: 5256484

*United States v. Louisiana*,
364 U.S. 500 (1960) (per curiam) ........................................................15, 18

*United States v. McCabe Co.*,
261 F.2d 539 (8th Cir. 1958) ........................................................ 14

*United States v. Reynolds*,
235 U.S. 133 (1914)........................................................ 15

*United States v. Texas*,
No. 1:21-cv-796 (W.D. Tex.) .................................................... 13

*Whole Woman's Health v. Hellerstedt*,
136 S. Ct. 2292 (2016) .................................................... 21

*Wyandotte Transp. Co. v. United States*,
389 U.S. 191 (1967)........................................................ 14

*Ex parte Young*,
209 U.S. 123 (1908)........................................................ 14

**Constitution:**

U.S. Const. art. VI, cl. 2 ........................................................ 15

**Statutes:**

18 U.S.C. § 922(g) ........................................................ 5

18 U.S.C. § 922(t) ........................................................ 5

18 U.S.C. § 923(a) ........................................................ 5

18 U.S.C. § 923(g) ........................................................5, 19

18 U.S.C. § 923(i) ........................................................5, 19

26 U.S.C. §§ 5811-5822, 5841 ........................................................ 5

H.B. 85 (Mo. Rev. Stat. §§ 1.410-1.485):
§ 1.410 ........................................................ 16
§ 1.420 ........................................................*passim*
§ 1.430 ........................................................3, 16

Appellate Case: 23-1457    Page: 5    Date Filed: 03/17/2023 Entry ID: 5256484

§ 1.440 ......................................................................... 3, 10, 16

§ 1.450 ...................................................................... 3, 4, 10, 16

§ 1.460 ......................................................................... 4, 11, 16

§ 1.470 ......................................................................... 4, 11, 16

§ 1.480 ............................................................................. 3, 18

§ 1.485 ................................................................................ 19

Mo. Rev. Stat. § 1.140 ...................................................... 19

Mo. Rev. Stat. § 27.060 .................................................... 11

Mo. Rev. Stat. § 106.010 .................................................. 11

Mo. Rev. Stat. § 106.220 .................................................. 11

## Other Authorities:

*Encyclopedia of the American Constitution* (Levy & Karst eds., 2d ed. 2000) ....... 16

# INTRODUCTION

H.B. 85 is an undisguised attempt to nullify and impede enforcement of federal law. It purports to invalidate whole swaths of federal firearms law, requires State agencies and courts to "protect" citizens from those laws, and bars all State participation in their enforcement. The district court properly declared the statute unconstitutional and enjoined its further implementation. Missouri has failed to justify its request for a stay pending appeal.

In asserting that the United States lacks standing, Defendants mistakenly characterize H.B. 85 as merely creating a private right of action. That is self-evidently incorrect: the text of H.B. 85 imposes affirmative requirements on State officials, whose implementation of the statute has caused direct and ongoing harm to the United States—harm that will be remedied when the district court's order takes effect. Even operating from Defendants' faulty premise, their theory of standing would yield absurd results that would allow a State to discriminate openly against the United States without affording it any means of judicial redress. Nor can Defendants properly reframe their argument in cause-of-action terms; the United States has a well-established right in equity to sue to enjoin State laws that unconstitutionally interfere with federal interests.

Defendants make little attempt on the merits to defend the statute, and with good reason: H.B. 85 plainly violates the Supremacy Clause. The statute makes express its intention to invalidate federal law, and it is likewise preempted and contrary to intergovernmental immunity.

Defendants also have not shown that equity favors them. Unable to point to any tangible harms, the State stands on the principle that one of its laws has been enjoined. Even accepting that enjoining an unconstitutional statute could constitute irreparable injury, that abstract harm plainly cannot outweigh the significant and ongoing harms to public safety caused by H.B. 85.

## STATEMENT

### A.    Legal Background

#### 1.    H.B. 85

Missouri H.B. 85 & 310—the Second Amendment Preservation Act (H.B. 85 or SAPA)—declares that all "federal acts, laws, executive orders, administrative orders, rules, and regulations" in five broad categories "shall be considered infringements on the people's right to keep and bear arms, as guaranteed by [the Second Amendment] and Article I, Section 23 of the Constitution of Missouri, within the borders of this state." Mo. Rev. Stat. § 1.420. The categories of federal law it "invalid[ates]" include, among others, fees or taxes "on firearms, firearm accessories, or ammunition" that "might

2

reasonably be expected to create a chilling effect on the purchase or ownership of those items by law-abiding citizens"; any "registration or tracking" of firearms or their owners; and "[a]ny act forbidding the possession, ownership, use, or transfer of a firearm, firearm accessory, or ammunition by law-abiding citizens." *Id.* § 1.420(1)-(5). And H.B. 85 defines "law-abiding citizen" as someone "not otherwise precluded *under state law* from possessing a firearm." *Id.* § 1.480.1 (emphasis added).

H.B. 85 does not stop with that purported constitutional interpretation. It announces that all such federal laws "shall be invalid to this state, shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state." *Id*. § 1.430. And it declares that "[i]t shall be the duty of the courts and law enforcement agencies of this state to protect the rights of law-abiding citizens to keep and bear arms within the borders of this state and to protect these rights from the infringements defined under section 1.420." *Id.* § 1.440. It thus directs State officials and courts to "protect" against federal law.

H.B. 85 then purports to divest all persons—"including," but not limited to, State and local "officer[s] [and] employee[s]"—of all lawful authority to enforce federal firearms laws. *Id.* § 1.450. That divestment extends even to State officers lawfully deputized to act under color of federal law.

3

Moreover, H.B. 85 provides for civil penalties of $50,000 "per occurrence" against any political subdivision or law-enforcement agency that employs an officer who "knowingly" violates § 1.450. *Id.* § 1.460. It also confers standing upon, and provides fee-shifting awards to, "[a]ny person injured under this section" to "pursue an action for injunctive relief … with respect to the actions of such individual." *Id.*

Finally, H.B. 85 imposes penalties on public entities that employ any person (State or federal) who ever played any role in enforcing federal firearms laws following H.B. 85's enactment. *Id.* § 1.470. It permits "[a]ny person" within the relevant jurisdiction to sue for both civil penalties and injunctive relief, again with fee-shifting incentives. *Id.*

### 2. Federal Firearms Laws

Congress has long regulated the manufacture, sale, transfer, and possession of firearms. H.B. 85's categorical pronouncements implicate several federal statutes, including the National Firearms Act of 1934; the Gun Control Act of 1968; and their amendments and implementing regulations. These laws are enforced by, *inter alia*, the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), the Federal Bureau of Investigation (FBI), the U.S. Marshals Service (USMS), and State and local personnel authorized to assist by and under federal law.

4

The Gun Control Act establishes licensing, transfer, and recordkeeping requirements for firearms transactions and imposes certain prohibitions on firearms possession. Persons engaged in the business of trading in firearms must be licensed. 18 U.S.C. § 923(a). Firearms must be marked by serial number, *id*. § 923(i), and licensees must maintain records of sales, *id.* § 923(g)(1)(A). Various persons are prohibited from possessing firearms or ammunition, including felons, individuals committed to a mental institution, noncitizens unlawfully in the United States, unlawful users of controlled substances, and others. *Id.* § 922(g). To administer those prohibitions, a licensee must verify a purchaser's identity and conduct a background check. *Id.* § 922(t).

Additionally, the National Firearms Act mandates the registration of certain classes of firearms and requires parties who make or transfer those firearms to submit an application and pay tax assessments. 26 U.S.C. §§ 5811-5822, 5841. Regulated firearms include, *inter alia*, machine guns and certain types of rifles and shotguns, as well as silencers and "destructive devices."

**B.  Procedural History**

**1.**  In February 2022, after months of detrimental effects to federal law enforcement, the United States brought this suit challenging H.B. 85 under the Supremacy Clause and seeking to restrain its further implementation.

5

The United States named three defendants: the State of Missouri, its Governor, and its Attorney General. By naming the State, this suit encompasses "all of its officers, employees, and agents." Compl. ¶ 15 (ECF No. 1). The Governor "oversees all of Missouri's executive agencies, including the Department of Public Safety and the Missouri State Highway Patrol," which are bound by H.B. 85. *Id.* ¶ 16. And the Attorney General is vested with multiple forms of relevant authority under Missouri law, including to seek civil relief against persons who violate H.B. 85; to pursue removal of public officials; and to intervene in litigation to defend its constitutionality.

The United States sought summary judgment, supported by evidence of the numerous harms that H.B. 85 has inflicted on federal enforcement and public safety. *See* Exs. G, H, I, and J (attached); *infra* pp. 23-24.

Defendants moved to dismiss. Defendants did not dispute that States cannot regulate on a premise that federal law is invalid, nor did they dispute that they are responsible for implementing H.B. 85 and expressly bound by its terms. Instead, Defendants argued that the United States lacked standing and a cause of action—or cannot succeed on the merits—because the United States likely would not be a party to any state-court proceedings ultimately filed under H.B. 85's private rights of action.

6

**2.**  The district court granted summary judgment to the United States. Ex. B (Op.).  As to standing, the court explained that the United States had plainly demonstrated "concrete injury" insofar as H.B. 85 has "interfere[d] with the function of federal firearms regulations and public safety objectives." Op. 5.  It found that "[t]he United States' law enforcement operations have been affected" by restricted participation "in joint federal-state task forces, restrictions on sharing information, confusion about the validity of federal law in light of SAPA, and discrimination against federal employees and those deputized for federal law enforcement who lawfully enforce federal law." *Id.* The court concluded that those harms are traceable to Defendants, whose implementation of H.B. 85 has inflicted those harms.  Op. 5-6.  And the court found that enjoining the State and its officials from further implementation and enforcement of H.B. 85 would redress those harms.  Op. 6-7.

In so holding, the district court rejected Defendants' assertion that they "do not enforce SAPA" and cannot be sued.  Op. 4.  It explained that H.B. 85 plainly requires Defendants "to cease enforcement of federal firearms regulations deemed infringements" and "imposes a duty on state courts and state law enforcement agencies to protect citizens against the infringements identified."  Op. 6.

7

The district court entered both declaratory and injunctive relief. It declared that H.B. 85 is "unconstitutional in its entirety as violative of the Supremacy Clause." Op. 24. It further declared that "State and local law enforcement officials may lawfully participate in joint federal task forces, assist in the investigation and enforcement of federal firearm crimes, and fully share information with the Federal Government" without regard to H.B. 85. *Id.* And it enjoined "[t]he State[] of Missouri and its officers, agents, and employees and any others in active concert with such individuals … from any and all implementation and enforcement of H.B. 85." Op. 24; *see* Ex. J (Judgment) (repeating same).

## ARGUMENT

Contrary to Defendants' contention (Mot. 5), a stay pending appeal is never "a matter of right," but one of discretion. *Nken v. Holder*, 556 U.S. 418, 433 (2009). Defendants "bear[] the burden of showing that the circumstances justify an exercise of that discretion" in "th[is] particular case." *Id.* at 433-34. The Court considers (1) whether the party seeking relief has "made a strong showing" of success on the merits; (2) whether it "will be irreparably injured absent a stay"; (3) whether issuance of the stay would injure the opposing party; and (4) "where the public interest lies." *Id.* at 434. Each factor weighs decidedly against a stay.

8

# I.   DEFENDANTS HAVE NOT SHOWN ANY LIKELIHOOD OF SUCCESS ON APPEAL.

## A.   The United States Has Both Standing And Authority To Sue.

**1.**  The Article III analysis is straightforward.  The United States has suffered injuries in fact caused by Defendants' implementation of H.B. 85 that will be redressed by the district court's judgment.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  It suffers "concrete injury" from Defendants' "withdrawals from and/or limitations on cooperation in joint federal-state task forces" and "restrictions on sharing information"; the "confusion about the validity of federal law" their actions have engendered; and the "discrimination against federal employees and those deputized for federal law enforcement" that H.B. 85 invites.  Op. 5.  The United States also has suffered injury to its "power to create and enforce a legal code" and demand "recognition [of that code] from other sovereigns."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982).

The United States likewise has established causation and redressability. "When a statute is challenged as unconstitutional, the proper defendants are the officials" or entities "whose role it is to administer and enforce the statute." *281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011).  States enjoy no immunity from suit by the United States, *see Alden v. Maine*, 527 U.S. 706, 755-56, 759-60 (1999); this suit against the State of Missouri therefore reaches all of

9

its agencies and officials who implement H.B. 85. The United States' harms are caused by that implementation. Op. 5-6. And those harms will be redressed by the district court's injunction, inasmuch as it will enable willing State and local partners to resume cooperation with federal counterparts without threat of removal, suit, or penalty premised on H.B. 85. Op. 6-7.

**2.** Defendants' arguments against standing (Mot. 9-13) rest on their fundamental mischaracterization of H.B. 85 as nothing more than its civil-penalty provisions. But H.B. 85 does not merely create a cause of action, or otherwise regulate only private actors. It imposes direct obligations on the State itself, requiring its officials both to take some actions, *see* H.B. 85 § 1.440, and refrain from others, *see id.* § 1.450. Defendants have indisputably implemented these provisions, causing the United States' harms.

Defendants' preoccupation with "enforce[ment]" against "violations of the Act" (Mot. 11) reflects not only their misconception of H.B. 85 and the source of the United States' injuries, but also a misunderstanding of constitutional suits in equity. Plaintiffs are not limited to seeking injunctions against the initiation of a prosecution or other judicial proceedings. This Court has squarely held that suits in equity are not "limited to [enjoining] 'enforcement actions' by state officials." *McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018). Similarly, the United States may sue to enjoin the

10

operation of state laws that injure federal interests, regardless whether those laws contain any judicial enforcement mechanisms. *Cf., e.g.*, *Arizona v. United States*, 567 U.S. 387 (2012). Indeed, even if §§ 1.460 and 1.470 had been omitted, the United States would still have standing. The United States is injured when H.B. 85's substantive duties are obeyed, not when they are violated. *See, e.g.*, *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (plaintiff "plainly ha[d] standing to sue the [state highway patrol] superintendent," whose directive to "implement the statute by conducting vehicle inspections cause[d] [plaintiff's] injury").

Moreover, even if (contrary to precedent) proof of a defendant's "enforcement" authority were needed for standing, the Governor and Attorney General have multiple means of compelling adherence to H.B. 85. *See* Op. 6. The Governor may remove appointed State officials whenever he deems it "necessary for the betterment of the public service," Mo. Rev. Stat. § 106.010, and county and municipal officials can be removed for "knowingly or willfully fail[ing] or refus[ing] to do or perform any official act or duty" required by State law, *id.* § 106.220. The Attorney General is authorized to "institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state" and to "enforce any and all rights, interests or claims." *Id.* § 27.060.

11

And H.B. 85 allows "[a]ny person" to seek injunctive relief or money penalties against political subdivisions or State agencies that "knowingly employ[]" any individual who has participated in enforcing relevant federal laws or "[g]iven material aid and support" to another who does. *Id.* § 1.470.1-2.

Even if H.B. 85 were merely a private right of action, Defendants still offer no basis for concluding that the United States would lack standing. The U.S. Constitution prohibits States from "discriminat[ing] against the Federal Government or those with whom it deals." *North Dakota v. Dole*, 495 U.S. 423, 435 (1990). Under Defendants' theory, a State could flout that prohibition by creating a private right of action to sue any persons "with whom [the United States] deals," then insulate that law from challenge by the United States by disclaiming all responsibility for enacting or enforcing it. Defendants offer no basis in precedent for this result.

**3.** The cases cited by Defendants are inapposite. Defendants place particular emphasis (Mot. 12-13) on *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015), but that case did not involve a scheme regulating State officials themselves. Rather, the private plaintiff sought an injunction seeking to preclude liability for violating a state law prohibiting license-plate-reader technologies. *Id.* at 955-56. Here, the United States does not seek an injunction against its potential liability; rather, it seeks

12

an injunction to protect federal interests from harms imposed by Defendants'
faithful implementation of H.B. 85's substantive duties and prohibitions.
*See 281 Care Comm.*, 638 F.3d at 631 (injunction against government officials
"would redress a discrete injury to plaintiffs" as necessary for standing, even
though challenged statute could also be enforced by "any other individual or
organization").  Defendants' reliance on *Digital Recognition Network* is
unavailing for the additional reason that resolution of that case was guided by
principles of State sovereign immunity inapplicable here (*supra* pp. 9-10).

The recent Texas SB8 litigation (Mot. 3, 11) likewise affords Defendants
no support.  In *United States v. Texas*, No. 1:21-cv-796 (W.D. Tex.), the United
States brought suit to vindicate a claimed sovereign interest in ensuring that
States cannot evade judicial review of unconstitutional laws.  The case did not
involve injuries to federal law enforcement, and SB8 did not impose any clear
duties on State agencies or officials.  The Supreme Court declined to decide
whether the United States was authorized to sue.  142 S. Ct. 522 (2021).  But
any doubts about the propriety of that suit would have no bearing here, where
H.B. 85 indisputably imposes obligations upon Defendants whose performance
of those obligations injures the United States.

**4.**  Defendants fare no better in repackaging their arguments as a
supposed lack of cause of action.  The United States has well-established

authority to sue in equity to protect its federal interests, even without express statutory authorization. *E.g.*, *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201-02 (1967); *Sanitary Dist. of Chicago v. United States*, 266 U.S. 405, 425-26 (1925); *In re Debs*, 158 U.S. 564, 584-85 (1895); *United States v. McCabe Co.*, 261 F.2d 539, 543 (8th Cir. 1958); *United States v. Fitzgerald*, 201 F. 295, 296-97 (8th Cir. 1912). Indeed, as Defendants previously acknowledged, the United States "has an equitable cause of action that allows federal courts to 'grant injunctive relief against state officers who are violating, or planning to violate, federal law.'" Defs. MTD 13-14 (ECF No. 13) (quoting *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326-27 (2015)); *cf. Ex parte Young*, 209 U.S. 123 (1908) (recognizing comparable cause of action for private parties).

That is the cause of action invoked here—one to enjoin the State and its officials from implementation of an unconstitutional statute. Nothing about this cause of action depends on whether H.B. 85 contains any "enforcement" mechanisms or whether the United States would be the object of enforcement.

### B.    H.B. 85 Was Properly Enjoined In Its Entirety.

The district court correctly concluded that H.B. 85 is unconstitutional and should be enjoined. Indeed, once Defendants' mischaracterization of H.B.

14

85 as nothing more than a civil-penalty scheme is rejected, Defendants offer little defense of the statute at all.

**1.** The Supremacy Clause declares that the "Constitution[] and the Laws of the United States which shall be made in Pursuance thereof" are "the supreme Law of the Land," the "Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "[S]tates have no power … to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by [C]ongress to carry into effect the powers vested in the national government." *M'Culloch v. Maryland*, 17 U.S. 316, 322 (1819).

State legislatures lack authority to invalidate federal statutes or to disregard federal law as interpreted by the U.S. Supreme Court. *See, e.g.*, *Cooper v. Aaron*, 358 U.S. 1, 18-19 (1958) (reaffirming "basic principle that the federal judiciary," not an individual State, "is supreme in the exposition of the law of the Constitution"); *United States v. Reynolds*, 235 U.S. 133, 149 (1914) ("If such state statutes … have the effect … to nullify statutes passed in pursuance [to the Constitution], they must fail."). A State legislature's attempt to "interpos[e]" itself against federal law "is illegal defiance of constitutional authority." *United States v. Louisiana*, 364 U.S. 500, 501 (1960) (per curiam) (quotation marks omitted).

Appellate Case: 23-1457    Page: 21    Date Filed: 03/17/2023 Entry ID: 5256484

H.B. 85 contravenes this fundamental design. Its central provision unilaterally declares that five categories of federal law are "infringements on the people's right to keep and bear arms." H.B. 85 § 1.420. The statute in turn declares that "[a]ll [such] federal acts, laws, executive orders, administrative orders, rules, and regulations … shall be invalid to this state." *Id.* § 1.430. It imposes upon State "courts and law enforcement agencies" an affirmative "duty" to "protect" citizens "from the infringements defined under section 1.420." *Id.* § 1.440. And it expressly divests all "entit[ies] or person[s], including any public officer or employee of this state," of any "authority to enforce or attempt to enforce" the federal laws "described under section 1.420." *Id.* § 1.450. At the back end, to deter any violation of these substantive obligations, H.B. 85 renders law-enforcement agencies and political subdivisions subject to money penalties or injunctive action not only by those "injured," *id.* § 1.460.1, but by "[a]ny person," *id.* § 1.470.2. H.B. 85 must be interpreted "as meaning what it says," *Emery v. Wal-Mart Stores, Inc.*, 976 S.W.2d 439, 449 (Mo. banc 1998), and its constitutionality judged accordingly.[1] Other courts of appeals have had no hesitation declaring similar

---

[1] If there were any doubts as to the legislature's intent, they are erased by the statute's clear invocation and paraphrase of pre-Civil War nullification theories. *See* H.B. 85 § 1.410.2; *see Encyclopedia of the American Constitution* 1832-33 (Levy & Karst eds., 2d ed. 2000).

Appellate Case: 23-1457    Page: 22    Date Filed: 03/17/2023 Entry ID: 5256484

laws invalid. *See Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 982-83

(9th Cir. 2013) (invalidating Montana's "Firearms Freedom Act"); *United*

*States v. Cox*, 906 F.3d 1170, 1189 (10th Cir. 2018) (holding Kansas's "Second

Amendment Protection Act" did not provide defense to federal firearms

prosecution).

Contrary to Defendants' suggestions (Mot. 3-4, 14-15), the Tenth

Amendment does not save H.B. 85. It is undisputed—and irrelevant—

that neither Congress nor federal agencies can "command" a State to "enforce

a federal regulatory program." *Printz v. United States*, 521 U.S. 898, 935 (1997).

H.B. 85 is not a mere reallocation of State resources or declaration of State

policy. Instead, it expressly declares federal laws "invalid"; directs State

agencies and officials to act on that premise; and penalizes them if they fail to

obey. Although a State may withdraw certain assistance from federal

enforcement efforts, it cannot reject the very existence of federal authority or

purport to invalidate federal statutes. *See Horne v. Dep't of Agric.*, 576 U.S. 350,

362 (2015) ("[T]he means [a government] uses to achieve its ends must be

'consist[ent] with the letter and spirit of the constitution.'") (quoting *M'Culloch*,

17 U.S. at 421). The fact a State believes it could have enacted a constitutional

statute does not save an unconstitutional one from invalidation.

17

Defendants' substantive "disagreement" (Mot. 1) with federal firearms laws is beside the point. It is the U.S. Supreme Court, not the Missouri legislature, that is "supreme in the exposition of the law of the Constitution." *Cooper*, 358 U.S. at 18. States have no lawful ability to "interpos[e]" themselves against federal law. *Louisiana*, 364 U.S. at 501; *see Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923) ("[It] is no part of [a State's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government."). Our federal structure does not permit a State to treat federal law as a nullity or to issue commands to its officials premised on such nullification.

**2.** As the district court also concluded, even if H.B. 85 were not facially invalid as an attempted nullification, it would also fail under traditional preemption analysis. When a federal law "imposes restrictions … on private actors," but "a state law confers rights … that conflict with the federal law," "the federal law takes precedence." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018). Here, H.B. 85 impermissibly defines its own class of "law-abiding citizens" who are deemed entitled to acquire, possess, and transfer firearms free from federal law. *See* § 1.480.1. Likewise, H.B. 85 purports to confer a right to be free from any and all "registration or tracking" of firearms, *id.* § 1.420(2)-(3), which is directly contradicted—and thus

18

preempted—by federal laws requiring specified forms of recordkeeping by federal firearms licensees.  *See, e.g.*, 18 U.S.C. §§ 923(g)(1)(A), & (6), 923(i).

**3.**  The district court properly enjoined H.B. 85 in its entirety, and Defendants make no serious effort to argue otherwise.  As the court explained (Op. 19), Missouri law holds that when one or more statutory provisions are unconstitutional, the "remaining provisions of the statute" also are invalid either if "standing alone" they would be "incomplete and … incapable of being executed in accordance with the legislative intent," or if they are otherwise "so essentially and inseparably connected with … the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one."  Mo. Rev. Stat. § 1.140, *accord* H.B. 85 § 1.485; *see Priorities USA v. State*, 591 S.W.3d 448, 456 (Mo. banc 2020) (two-part severability analysis).

Here, everything in H.B. 85 expressly depends upon its unconstitutional cornerstone:  § 1.420's declaration that five categories of federal law are invalid.  All successive provisions of the statute impose legal duties upon State officials and courts, or create rights in private parties, only with respect to the "infringing" laws identified in § 1.420.  As the district court explained, "without § 1.420," the remainder of H.B. 85 "would have no practical or legal effect and the Missouri General Assembly would have had no basis to enact SAPA's other provisions."  Op. 20.

19

Defendants' repeated assertion (Mot. 3, 9) that § 1.420 and surrounding provisions are merely "declaratory" does nothing to alter this analysis. As the district court explained, "SAPA's other provisions are rendered meaningless without [§ 1.420's] definition." Op. 20. *See, e.g.*, *Shrink Mo. Gov't PAC v. Maupin*, 71 F.3d 1422, 1427 (8th Cir. 1995) (applying Missouri severability law and invalidating entire statute, finding that remaining subsections were "inextricably intertwined" insofar as all "make[] some reference to the expenditure limits that we have held unconstitutional"); *Missouri Nat'l Educ. Ass'n v. Missouri Dep't of Labor & Indus. Relations*, 623 S.W.3d 585, 595 (Mo. banc 2021) (similar).

Contrary to Defendants' assertions, the Missouri Supreme Court's decision in *City of St. Louis v. State*, 643 S.W.3d 295 (Mo. banc 2022), did not issue any "authoritative" or "binding interpretation" (Mot. 15, 21) of specific H.B. 85 provisions. That appeal presented the threshold question whether a pre-enforcement challenge to H.B. 85 could even proceed. The language Defendants cite (Mot. 5, 9, 14) is simply a summary characterization in the "Factual and Procedural Background" of the Court's opinion. To the extent the Court "held" anything relevant (Mot. 9), it was that H.B. 85 is *not* purely a declaration of policy: the Court found that it inflicted substantive injuries for which plaintiffs "lack[ed] an adequate remedy at law," and accordingly,

20

reversed the trial court's dismissal and remanded for the suit against H.B. 85 to proceed. 643 S.W.3d at 302-03.

**4.** As a last-ditch effort, Defendants lodge a procedural objection (Mot. 17-18) that the district court did not expressly recapitulate its discussion of the United States' harms under the rubric of the four-prong test for injunctive relief. But the court already had discussed those same harms earlier in its opinion when addressing standing. Moreover, in opposing summary judgment, Defendants argued only that the case should be dismissed or result in a merits judgment in their favor, not that any element of the relief sought by the United States would be inappropriate should it prevail. Defendants cannot fairly complain that the district court failed to address objections to injunctive relief that they did not make, and they certainly cannot demand a stay for alleged procedural error that both the law and the evidentiary record here show to be harmless. *See, e.g.*, *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016) ("[I]f … a statutory provision is unconstitutional on its face, an injunction prohibiting its enforcement is 'proper.' ").

## II. THE BALANCE OF THE EQUITIES WEIGH DECIDEDLY AGAINST A STAY

In addition to the absence of any "strong showing" that Defendants will succeed on the merits, the balance of the equities weighs heavily against a stay.

Defendants rest principally on the assertion that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). But a stay is "not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433. It is not enough for Defendants to assert an abstract injury and declare victory; they must also demonstrate that this abstract injury outweighs harm to the United States and the public interest. This they cannot do—particularly where, as here, they make little effort to defend the statute's constitutionality. *Cf. Hispanic Interest Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1249 (11th Cir. 2012) (reasoning that State "has no interest in enforcing a state law that is unconstitutional").

Defendants nowhere explain how the district court's order imposes any concrete harm on State operations, and it is hardly obvious how it could. The order rightly undoes the State's attempt to nullify federal law and impede federal law enforcement. But it does not *require* State or local agencies to participate in federal enforcement; it simply guarantees that they may voluntarily cooperate without threat of interference or penalty from H.B. 85.

Indeed, Defendants' contentions on this score are difficult to square with their insistence elsewhere (Mot. 2) that H.B. 85 is nothing more than "a tool

22

Missourians may use" to sue for purported violations of the Second Amendment. Citizens may bring constitutional suits to challenge firearms laws that affect them regardless of H.B. 85, and the district court's order does not purport to change that. Nor do Defendants explain how, if State officials lack any significant role in implementing or enforcing H.B. 85 (Mot. 9), those officials would be affected (much less irreparably harmed) by its invalidation.

Defendants also wholly fail to explain how any intangible injury could possibly outweigh the real-world injuries to the United States and public exacted by H.B. 85. The United States did not file this suit solely to vindicate some point of principle, but rather to redress manifest harms to federal enforcement and public safety that have arisen since the statute's enactment.

As federal law-enforcement officials explained in their summary-judgment declarations, H.B. 85 has had "an extremely negative effect on successful law enforcement and public safety within the State of Missouri." Ex. F, ¶ 41 (Winston declaration). Those harms have included disruptions to longstanding information-sharing relationships, both informal and formal; reduced evidence in the National Integrated Ballistic Information Network (NIBIN); increased dangers in the field when State and local officials fail to detain known federal fugitives, suddenly disengage at the scene during joint federal-state operations, or potentially refuse to respond to firearms in sensitive

places like airports; and the creation of confusion and risk of violent confrontation with private citizens who may believe that H.B. 85 entitles them to resist lawful federal authority. *See* Exs. F, G, H, I. Those harms translate into less effective law enforcement and reduced public safety. There can be no serious dispute that the balance of the equities and public interest warranted injunctive relief, and weigh against a stay now.

## CONCLUSION

The motion for stay pending appeal, or alternatively for administrative stay, should be denied.

Respectfully submitted,

SAYLER A. FLEMING
*United States Attorney*
*Eastern District of Missouri*

TERESA A. MOORE
*United States Attorney*
*Western District of Missouri*

ALAN T. SIMPSON
*Assistant United States Attorney*
*Western District of Missouri*

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

SARAH E. HARRINGTON
*Deputy Assistant Attorney General*

MARK B. STERN
MICHAEL S. RAAB
ABBY C. WRIGHT
*/s/ Jeffrey E. Sandberg*
JEFFREY E. SANDBERG
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*202-532-4453*
*jeffrey.e.sandberg@usdoj.gov*

*Counsel for Plaintiff-Appellee United States of America*

24

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Calisto MT, a proportionally spaced font. I further certify that this filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,193 words, according to the count of Microsoft Word.

*/s/ Jeffrey E. Sandberg*
Jeffrey E. Sandberg
*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 17, 2023, I electronically filed the foregoing opposition with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

*/s/ Jeffrey E. Sandberg*
Jeffrey E. Sandberg
*Counsel for the United States of America*
