# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

United States of America,
   *Plaintiff-Appellee*,

v.

State of Missouri, et al.,
   *Defendants-Appellants*.

Appeal from the United States District Court for the Western District of Missouri, The Honorable Brian C. Wimes

## APPELLANTS' REPLY SUPPORTING THEIR MOTION FOR STAY OF JUDGMENT AND INJUNCTION PENDING APPEAL

The United States' concessions greatly narrow the scope of this case. The United States concedes (at 4) that the operative provisions of the Act apply *both* to former "State or federal" employees. So there can be no argument that Missouri law singles out federal officials. The United States now agrees (at 10–11) that its "injuries" do not flow from "enforcement" against it or its officers. So the United States lacks standing and a cause of action. And the United States even concedes (at 17) that, under *Printz v. United States*, 521 U.S. 898 (1997), Missouri can instruct its entities not to help enforce certain provisions in the National Firearms Act and Gun Control Act.

These concessions make clear that the United States' simply does not like the legislature's declared *reason* for telling state officials not to enforce certain federal laws. The United States is fine with Missouri instructing its political subdivisions not to enforce these laws. The United States simply dislikes that the Missouri legislature also stated its opinion that these laws are unconstitutional. Expressing an opinion goes too far, the United States says, because it creates "confusion about the validity of federal law." Opp. at 9, 17.

But the United States cannot sue over a statute simply because it expresses an opinion. *Whole Woman's Health* prohibits the United States from challenging statutes themselves, and there is no exception to *Printz* or *Whole Woman's Health* for state statutes that print opinions the United States does not like. This Court has no jurisdiction to hear this abstract dispute, and the United States has no legal claim to press it.

The United States also has not shown that the named defendants enforce SAPA, the primary reason its suit against Texas failed. *See United States v. Texas*, No. 21-50949, 2021 WL 4786458, at *1 (5th Cir. Oct. 14, 2021), *cert. dismissed*, 142 S. Ct. 522 (2021). And the United States admits that the district court failed to make the required findings before issuing an injunction, claiming the error is harmless. Opp. at 21. So yes, here the "analysis is straightforward." Opp. at 9. The

district court's injunction is wrong and harms the people of Missouri. It should be enjoined pending appeal and likely reversal by this Court.

## I. On appeal, the State is likely to succeed on the merits.

The district court got one issue correct: without the private right of actions in "§§ 1.460 and/or 1.470, SAPA has no practical or legal effect." R. Doc. 88, at 23. It is thus telling that the United States focuses not on those provisions, but the provision—§ 1.420—that simply declares the Missouri legislature's interpretation of the Second Amendment. Indeed, the United States distances itself from the district court's holding that § 1.450 directly regulates the United States, Doc. 88, at 22, arguing instead that its claim centers on § 1.420 and that its "injuries" do not stem from "enforcement" against the United States, Opp. at 10, 16, 19 (brackets omitted).

### A. The federal government has no cognizable injury and has failed to sue a proper defendant.

The United States strives to reformulate the district court's incorrect holding that state officials enforce SAPA. Finally conceding that "enforcement" of SAPA is *not* "the source of the United States' injuries," Opp. at 10 (brackets omitted), the United States now argues that it has standing because state officials "implement" (or "obey[]") state law, Opp. at 6, 9–11, and that Missouri's Governor and Attorney General "have multiple means of compelling adherence" with SAPA, *id.* at 11–12. These arguments fail for three reasons.

Appellate Case: 23-1457    Page: 3    Date Filed: 03/20/2023 Entry ID: 5256801

*First*, wordplay cannot disguise that the United States seeks not to "enjoin named defendants from taking specified unlawful actions," but to "enjoin challenged laws themselves." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021). Forced to concede that *Printz* allows States to prevent state entities from enforcing federal laws (which is what §§ 1.450–1.470 do), the United States focuses its fire on the provision—§ 1.420—that does nothing more than announce the legislature's interpretation of the Second Amendment. Opp. at 16, 19 (describing this section as the "cornerstone" and "central provision" that is challenged). For all the United States' talk of "nullification," it cannot point to a single instance of SAPA preventing the United States from enforcing statutes. Section 1.420 certainly does no such thing. Because this provision is purely declaratory and not enforced by anyone, as the Missouri Supreme Court has held, *City of St. Louis v. State*, 643 S.W.3d 295, 297 (Mo. 2022), the United States improperly seeks to "enjoin challenged laws themselves."

*Second*, as to the provisions of SAPA that are operative, the United States cannot sue simply because regulated entities "implement" or "obey" state law. Tellingly, the United States fails to address the case most on point, *Whole Woman's Health*, which expressly rejected the plaintiffs' theory that federal courts can enjoin state courts from docketing cases. *Id.* at 534. The Supreme Court reasoned that implementing a state law by docketing cases does not make state courts "adverse to

4

the [parties]" involved. *Id.* at 533. So too here, no political subdivision becomes "adverse to" the United States under Article III simply by obeying SAPA and not enforcing certain federal statutes.

The United States' use of "implement" here is foreign to Eighth Circuit precedent. The United States cites *Calzone v. Hawley*, which found standing to sue a state official who "implement[ed] the statute by conducting vehicle inspections." 866 F.3d 866, 870 (8th Cir. 2017). But unlike here (where "implementation" is just complying with a prohibition), the "implementation" there was *enforcement* conducted administratively (through vehicle inspections) rather than judicially. Similarly, *McDaniel v. Precythe* found standing as "long as a state official is giving effect to a state statute in a manner that allegedly injures a plaintiff and violates his constitutional rights." 897 F.3d 946, 952 (8th Cir. 2018). *McDaniel* stands for nothing more than the unremarkable proposition that potentially regulated parties can generally bring pre-enforcement challenges. *Id.* Both decisions, which precede *Whole Woman's Health*, simply note that a state official can enforce a law for purposes of Article III without bringing a formal judicial proceeding. Neither decision supports the argument that a State can be sued simply because state law imposes liability on state agencies.

In the end, the United States offers the same "nullification" argument and the same "radical answer" rejected in *Whole Woman's Health*. 142 S. Ct., at 535. The

5

United States tries to distinguish the Texas SB8 litigation by arguing (at 13) that "SB8 did not impose any clear duties on State agencies or officials," but SB8 prohibited state officials from aiding or abetting abortion. Tex. Health & Safety Code Ann. § 171.208. Plaintiffs could not sue there simply because Texas officials "implemented" state law by obeying it. So too, here.

*Third,* the argument that the Governor and Attorney General have authority to enforce SAPA fails. The Attorney General's generic authority to maintain the State's interests in litigation does not make the Attorney General a proper party, because the challenged law provides only for private enforcement. *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015); *accord Calzone*, 866 F.3d at 870 (dismissing Missouri Attorney General and Governor because they did not have specific statutory grant of authority similar to highway superintendent). The United States fails (at 12–13) to distinguish *Digital Recognition Network* on the ground that the challenged Arkansas law did not govern state officials because it did: "the State of Arkansas, its agencies, and political subdivisions to use an automatic license plate reader system." 803 F.3d at 955. The other statutory hooks the United States cites also fail. Section 106.110 merely confirms that all governor-appointed officers are subject to his control. And § 106.220 says that municipal officials who neglect their job enforcing state criminal laws are subject to removal—by the local circuit attorney. Mo. Rev. Stat. § 106.230.

6

## B. The federal government fails to state a claim (or even identify a cause of action).

The United States does no better with its contention that it has identified a cause of action and stated a claim. It says it has an equitable cause of action because "federal courts [may] grant injunctive relief against state officers who are violating, or planning to violate, federal law." Opp. at 14. But it fails to identify any state officer who is violating or planning to violate federal law.

For example, the United States casts away its claim about intergovernmental immunity. It concedes (at 4) that the provisions of the Act that regulate employment apply *both* to former "State or federal" employees. Because any costs imposed indirectly on former federal officials are also imposed on former state officials, the law does not violate the intergovernmental immunity doctrine, as it "imposes those costs in a neutral, nondiscriminatory way." *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022). Thus, no state official is "violating, or planning to violate, federal law." Opp. at 14.

The United States instead challenges the mere expression of the legislature's policy about state law enforcement. To avoid the glaring *Whole Woman's Health* problem, the United States starts to suggest that § 1.420 is *not* purely declaratory. But the United States never commits, saying only that "H.B. 85 is not purely a declaration of policy." Opp. at 20. Of course, the *whole* statute is not declaratory. But § 1.420 is, as the Missouri Supreme Court has held. True, the state court said

7

this in its "Factual and Procedural Background" section, *City of St. Louis*, 643 S.W.3d at 297–98, but the two paragraphs detailing what each provision means binds this Court.

The United States is thus forced to try to create a new cause of action. But no case it cites helps. The United States insists, for example, that it "may sue to enjoin the operation of state laws that injure federal interests, regardless whether those laws contain any judicial enforcement mechanisms." Opp. at 10–11 (citing *Arizona v. United States*, 567 U.S. 387 (2012). But *Arizona* involved state officials *enforcing* federal immigrations laws over which the United States had exclusive authority, while SAPA instructs state entities *not* to enforce federal law. *Arizona*, 567 U.S. at 394, 400–11. *Arizona* certainly does not support the United States' attempt to create roving authority to sue whenever. In fact, *Arizona* rejected the attempt to construe state law to conflict with federal law when no state court had done so—exactly what the district court did here. 567 U.S. at 415. The United States also contends that courts have held other Second Amendment laws unconstitutional. But Missouri's law does not purport to give anyone rights against the federal government, end all federal licensing requirements, *see Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 978 (9th Cir. 2013), or attempt to prosecute federal law enforcement, *United States v. Cox*, 906 F.3d 1170, 1189 (10th Cir. 2018) (citing Kan. Stat. § 50-1207). SAPA requires Missouri entities to follow Missouri law.

8

As a last-ditch effort, the United States expresses concern that Missouri's theory would mean states could pass laws that would be "insulate[d] … from challenge by the United States." Opp. at 12. But the United States has lost that argument, too. *Whole Woman's Health*, 142 S. Ct. at 537–538 (historical practice shows no "unqualified right to pre-enforcement review of constitutional claims in federal court." The United States disagrees with Missouri's interpretation of the Second Amendment and its decision to restrict its law enforcement agencies accordingly. But if it wants to challenge that interpretation, it can wait until an actual controversy arises.

## II. The remaining stay factors similarly favor Missouri.

Starting with irreparable harm, the United States expresses doubt (at 2) that an injunction against a statute imposes irreparable harm. But this Court has held that a State experiences irreparable harm when it is "precluded from applying its duly enacted legislation." *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020). This newfound doubt is not genuine: three months ago, it advocated the same position Missouri now presses. Brief for U.S., *Department of Education v. Brown*, No. 22A489, 2022 WL 17548386, *35 (U.S. 2022).

The United States' contention that the injunction imposes no additional harm beyond enjoining a statute is equally baseless. The injunction puts political subdivisions and law enforcement agencies at great risk. Because an injunction can

9

only prohibit defendants from enforcing a law, not enjoin the law itself, an injunction cannot provide immunity. A political subdivision that takes the district court's opinion as license to violate SAPA risks private civil enforcement when Missouri is ultimately successful.

Similarly, the injunction inhibits the ability of the people of Missouri to hold their own government accountable. At this moment, there are several suits by Missouri citizens to vindicate their rights granted under SAPA. *E.g.*, *Quentin L. Davis v. St. Louis Metro. Pol. Dep't*, No. 21AC-CC00280 (Cole Cnty. Cir. Ct. July 26, 2021) The General Assembly sought to give the people tools to promote accountability. The injunction frustrates that effort.

In contrast, the United States identifies no real harms, and certainly none that overcomes these harms. The United States complains that state officials are reluctant to assist the federal government with enforcing federal laws. *E.g.*, Jordan Decl. ¶ 13. But these are not cognizable harms because the United States admits that Missouri can instruct its officials not to assist with enforcement of certain federal laws. In any event, this lack of assistance has not obstructed federal law enforcement. Agent Winston explains that in 2021, "177 prosecutions were initiated (of which the vast majority involved firearms crime), defendants numbered 230, and the number of charges was 365." Winston Decl. ¶ 19. Local law enforcement provides assistance to ATF in emergency situations, *id.* ¶ 23, and some jurisdictions

continue to input data into crime databases, *id.* ¶ 25. Marshal Jordan explains that his Fugitive Task Force has not lost any members due to SAPA, Jordan Decl. ¶ 12, and that in FY 2021 the Eastern District's Marshals had 421 federal related weapons warrants for new charges, 320 warrants related to supervised release and felon-in possession charges that were prosecuted federally, *id.* at ¶ 10. Additionally, the Task Force has made 1,201 arrests for state and federal weapons offenses and "arrested 470 additional persons for homicide, assault, and robbery, which all involved firearms." *Id.* at ¶ 11. Marshal Supervisor Stokes similarly explained that his task force continued to apprehend "30 individuals for federal firearms related charges" and seized 51 firearms in 2021. Stokes Decl. ¶¶ 10 11. TSA Director Brooks similarly explained that TSA in Missouri had "183 firearm discoveries in 2021." Brooks Decl. ¶ 10.

Where the balance of harms show irreparable injury to Missouri and mere inconvenience to the United States' law enforcement efforts, the public interest undoubtedly favors Missouri.

## CONCLUSION

Missouri respectfully requests that this Court stay the district court's judgment and injunction pending a final ruling on appeal, or in the alternative, a temporary administrative stay to permit the Supreme Court of the United States to act on the State's forthcoming request for a stay.

11

Respectfully submitted,

**ANDREW BAILEY**
Attorney General

*/s/ Jeff P. Johnson*

Jeff P. Johnson, MO #73294
*Deputy Solicitor General*
Joshua M. Divine, MO # 69875
*Solicitor General*
Office of the Missouri Attorney General
Supreme Court Building
P.O. Box 899
Jefferson City, Missouri 65102
Phone: 314-340-7366
Fax: 573-751-0774
Jeff.johnson@ago.mo.gov

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

      */s/ Jeff P. Johnson*
      Jeff P. Johnson

## CERTIFICATE OF COMPLIANCE

I hereby certify that this response complies with the typeface and formatting requirements of Fed. R. App. P. 27 and 32, and that it contains 2,524 words as determined by the word-count feature of Microsoft Word.

      */s/ Jeff P. Johnson*